UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICAH FIALKA-FELDMAN

Plaintiff,

v.

OAKLAND UNIVERSITY BOARD
OF TRUSTEES

Defendant.

_____/

Case No. 2:08-cv-14922-PJD-VMM
Hon. Patrick J. Duggan

**EXPEDITED CONSIDERATION
REQUESTED**

Chris E. Davis (P52159)
Michigan Protection & Advocacy Service, Inc.
29200 Vassar Blvd., Suite 200
Livonia, MI 48152
Phone: (248) 473-2990
Email: cdavis@mpas.org
Attorney for Plaintiff

_____/

## **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED CONSIDERATION**

Plaintiff respectfully requests a preliminary injunction pursuant to the Fair Housing

Act, 42 USC § 3613(c)(1) and Fed. R. Civ. P., 65, enjoining Defendant to admit, rent to,

and otherwise make available to the Plaintiff a space in one of its on-campus dormitory

living spaces. In support of this motion, Plaintiff states:

1. Plaintiff is likely to succeed on the merits. This case challenges the

   discriminatory practices of the Defendant, a refusal to provide a reasonable

   accommodation, which has resulted in the denial of renting a dwelling space to

   the Plaintiff.

2. Because this case involves a violation of a civil rights statute that provides for injunctive relief, it is presumed Plaintiff will suffer irreparable harm without injunctive relief.

3. Plaintiff's need for the injunction outweighs the potential harm to Defendant. The Plaintiff's need is substantial and will impose no cost on the Defendant, in that Plaintiff is willing, ready and able to pay the usual and reasonable rent for the housing unit.

4. The public interest would be served by issuing preliminary injunctive relief. Plaintiff's counsel has prepared a Brief in Support, attached, that further explains the legal and factual grounds for the preliminary injunction.

5. Plaintiff requests expedited consideration of his motion.

6. The start of the new semester is January 5, 2009, less than a month from now.

7. Without expedited consideration, Plaintiff will suffer irreparable injury by having his rights abridged and/or denied.

Plaintiff's counsel has prepared a Brief in Support, attached, that further explains the legal and factual grounds for the preliminary injunction.

WHEREFORE, Plaintiff respectfully requests this honorable Court issue a preliminary injunction.

Respectfully submitted,

Dated: December 15, 2008        s/Chris E. Davis
                                MICHIGAN PROTECTION &
                                ADVOCACY SERVICE, INC.
                                Attorney for Plaintiff
                                29200 Vassar Blvd., Suite 200
                                Livonia, MI 48152
                                (248) 473-2990
                                cdavis@mpas.org
                                P52159

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICAH FIALKA-FELDMAN

Plaintiff,

v.

Case No. 2:08-cv-14922-PJD-VMM
Hon. Patrick J. Duggan

OAKLAND UNIVERSITY BOARD
OF TRUSTEES

**EXPEDITED CONSIDERATION
REQUESTED**

Defendant.

_____/

Chris E. Davis (P52159)
Michigan Protection & Advocacy Service, Inc.
29200 Vassar Blvd., Suite 200
Livonia, MI 48152
Phone: (248) 473-2990
Email: cdavis@mpas.org
Attorney for Plaintiff

_____/


**BRIEF IN SUPPORT OF
PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
AND EXPEDITED CONSIDERATION**

TABLE OF CONTENTS

INDEX OF AUTHORITIES..............................................................................................ii, iii

ISSUES PRESENTED........................................................................................................iv

INTRODUCTION...............................................................................................................1

I. JURISDICTION...............................................................................................................1

II. PROCEDURAL BACKGROUND..................................................................................1

III. FACTUAL BACKGROUND........................................................................................1

IV. STANDARD OF REVIEW...........................................................................................5

V. ARGUMENT..................................................................................................................6

      A.     THERE IS A LIKELIHOOD OF SUCCESS ON THE MERITS WHEN
            THE PLAINTIFF HAS REQUESTED AS A REASONABLE
            ACCOMMODATION, PURSUANT TO THE FAIR HOUSING ACT,
            THAT THE UNIVERSITY WAIVE A HOUSING POLICY THAT IN
            DOING SO WILL NOT CREATE ANY UNDUE FINANCIAL OR
            ADMINISTRATIVE BURDAN ON THE DEFENDANT. .....................6

      B.     THE REQUESTED ACCOMMODATION TO WAIVE THE
            MATRICULATING STUDENT REQUIREMENT IS NOT A
            FUNDAMENTAL ALTERATION OF THE UNIVERSITY'S HOUSING
            PROGRAM........................................................................................10

      C.     THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION
            WHERE THE PLAINTIFF HAS DEMONSTRATED A LIKELIHOOD
            OF SUCCESS ON THE MERITS, THE BALANCE OF EQUITIES IS IN
            HIS FAVOR, AND IT IS IN THE PUBLIC'S INTEREST......................11

CONCLUSION.................................................................................................................13

# INDEX OF AUTHORITIES

*Bryant Woods Inn, Inc. v. Howard County,* 124 F.3d 597 (4th Cir.1997) .............7

*California Mobile Home Park,* 29 F.3d at 1418.....................................................7

*CSX Transportation v. Tennessee State Board of Equalization,* 964 F.2d 548 (6th Cir.1992) .............................................................................................................11

*Good Shepherd Manor Foundation, Inc. v. City of Momence,* 323 F.3d 557 (7th Cir.2003)...........................................................................................................6

*Groner v. Golden Gate Gardens Apartments,* 250 F.3d 1039 (6th Cir.2001)......7, 8

*Hamad v. Woodcrest Condominium Ass'n,* 328 F.3d 224, (6th Cir.2003)..............6

*Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096, 1104 (3d Cir.1996).................7

*Illinois Bell Telephone v. Illinois Commerce Comm'n,* 740 F.2d 566 (7th Cir.1984) ..............................................................................................................11

*Meyer v. Holley,* 537 U.S. 280, 290, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) .......13

*Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1183 (6th Cir.1996) ..................8

*Price v. Pelka,* 690 F.2d 98, 102 (6th Cir.1982)......................................................13

*Smith & Lee Assocs., Inc. v. City of Taylor, 102 F.3d 781 (6th Cir.1996)*..........7, 8

*United States v. California Mobile Home Park Mgmt. Co.,* 29 F.3d 1413 (9th Cir.1994) ................................................................................................................7

*U.S. v. California Mobile Home Park Management Co.,* 107 F.3d 1374 (9th Cir.1997)...........................................................................................................6

*U.S. v. Edward Rose & Sons,* 384 F.3d 258, (6th Cir.2004) ...................................11

*United States v. Diapulse,* 457 F.2d 25, 27-28 (2d Cir.1972)................................11

*United States v. Microsoft Corp.,* 147 F.3d 935 (D.C.Cir.1998)...........................11

## Statutes

28 U.S.C. §1331.................................................... ....................................................1

28 U.S.C. § 1343.............................................................................................1

29 U.S.C. § 791...............................................................................................8

42 U.S.C. § 1983 ............................................................................................1

42 U.S.C. § 3604 ....................................................................................6, 7, 9

2 U.S.C. § 3613 ..........................................................................1, 5, 11, 14

42 U.S.C. § 3614.............................................................................................11

MCL 390.151 ..................................................................................................2

Fed. R. Civ. P 65 ................................................................................. 1, 5, 14

## Other Authorities

H.R.Rep. No. 100-711 at 25 (1988)...................................................................7

*U.S. Code Cong. & Admin. News* at 2173, 2186................................................7

## ISSUES PRESENTED

A.   IS THERE LIKELIHOOD OF SUCCESS ON THE MERITS WHEN
     THE PLAINTIFF HAS REQUESTED AS A REASONABLE
     ACCOMMODATION, PURSUANT TO THE FAIR HOUSING ACT,
     THAT THE UNIVERSITY WAIVE A HOUSING POLICY THAT IN
     DOING SO WILL NOT CREATE ANY UNDUE FINANCIAL OR
     ADMINISTRATIVE BURDAN ON THE DEFENDANT?

     PLAINTIFF'S ANSWER:  YES

     THE COURTS ANSWER SHOULD BE:  YES

B.   IS THE REQUESTED ACCOMMODATION TO WAIVE THE
     MATRICULATING STUDENT REQUIREMENT A FUNDAMENTAL
     ALTERATION OF THE UNIVERSITY'S HOUSING PROGRAM?

     PLAINTIFF'S ANSWER:  YES

     THE COURTS ANSWER SHOULD BE:  YES

C.   SHOULD THE COURT ISSUE A PRELIMINARY INJUNCTION
     WHERE THE PLAINTIFF HAS DEMONSTRATED A LIKELIHOOD
     OF SUCCESS ON THE MERITS, BALANCE OF EQUITIES IS IN HIS
     FAVOR, AND IT IS IN THE PUBLIC'S INTEREST?

     PLAINTIFF'S ANSWER:  YES

     THE COURTS ANSWER SHOULD BE:  YES

## INTRODUCTION

Plaintiff requests this Court issue a preliminary injunction pursuant to the Fair Housing Act, 42 U.S.C. § 3613(c)(1), and Fed. R. Civ. P. 65 (West 2008), enjoining Defendant to admit, rent to, and otherwise make available to the plaintiff a space in one of its on-campus dormitory living spaces. Plaintiff requests the Court consider this motion on an expedited basis due to the new semester starting in January 5, 2009. Plaintiff has been denied housing by Defendant by its refusal to provide a reasonable accommodation and Plaintiff cannot obtain full relief if injunctive relief is not provided.

## I.    JURISDICTION

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Plaintiff's claim for injunctive relief is authorized under 42 U.S.C. § 1983 and 42 U.S.C. § 3613(c)(1).

## II.    PROCEDURAL BACKGROUND

This action was filed in the U.S. District Court for the Eastern District of Michigan on Novembers 25, 2008. Defendant was served December 1, 2008. Concurrence on this motion was sought and denied on December 11, 2008, in a telephone conversation with Victor Zambardi, General Counsel for Oakland University.

## III.    FACTUAL BACKGROUND

The Plaintiff, Micah Fialka-Feldman, is a 24-year-old man with cognitive impairments that substantially limit a major life activity. Specifically, they limit his ability to learn and are the reason he was not admitted to Oakland University through its normal admissions process. However, he is a student in the OPTIONS program at Oakland University. EXHIBIT # 1.

The Defendant, Oakland University Board Of Regents, is the governing body of Oakland University (Oakland). The Board's authority to act is done pursuant to state law, MCL 390.151 et. seq., which grants the board full authority to make all decision relevant to this matter.

Mr. Fialka-Feldman has attended classes at Oakland since 2003. Beginning in the fall term of 2007, Mr. Fialka-Feldman was admitted to Oakland's OPTIONS Program. The OPTIONS program was a new program at that time and Mr. Fialka- Feldman was one of the original members. EXHIBIT # 1.

The OPTIONS program is part of the School of Education and Human Services at the University. The program was designed for students with cognitive impairments that could not be admitted to Oakland through the regular admissions process. "The OPTIONS Program at Oakland University is designed to provide a fully inclusive, age appropriate post-secondary education experience for students with mild cognitive Impairments." EXHIBIT # 2.

Mr. Fialka-Feldman was admitted as a student in the program and, like all students in the program, takes at least 12 credit hours of courses each semester at Oakland. EXHIBIT # 2.

On April 25, 2008, Mr. Fialka-Feldman's parents paid his tuition for the Winter Term 2008 to the University. They also paid his tuition for the Fall 2008 semester. EXHIBIT # 3. In fact, all students in the program pay tuition;"OPTIONS is a tuition-based program. Students are required to take a minimum of 12 credits per semester. Credits are billed at the regular OU tuition rate for undergraduate students." EXHIBIT #2.

Additionally, Mr. Fialka-Feldman as a student at Oakland participates in numerous school activities, the same as do other students admitted to other programs at Oakland, including: attending over 25 courses at the university, member of Alpha Phi Omega fraternity, member of Hillel student organization, member of the leadership retreats at Oakland University, Up Until Dawn, Peace Group, active in the student government election 2008, and Social Work Club. EXHIBIT # 1. The University issued him a student identification card once he entered the OPTIONS Program. EXHIBIT # 4.

Mr. Fialka-Feldman must take several buses each day from his home in Huntington Woods, Michigan, to Oakland's campus in Rochester, Michigan. Because of the long commute and because he wanted a complete university experience the same as other students, Mr. Fialka-Feldman began making inquires about living on-campus in the spring of 2006. EXHIBIT # 1.

In the spring of 2007, Micah Fialka-Feldman and his father, Rich Feldman, took a pre-arranged tour of the dormitory housing at Oakland that was arranged by the Director of Housing, Lionel Matten. EXHIBIT # 1.

In the fall of 2007, Micah Fialka-Feldman applied for on-campus housing in the dormitories at Oakland. On October 6, 2007, Rich Feldman submitted a check for $100.00 to Oakland for deposit on a dormitory room for Micah.

On November 14, 2007, Rich Feldman received an e-mail confirming Micah Fialka-Feldman was approved and he could begin living in a dorm room on-campus on January 6, 2008. EXHIBIT # 5.

Then, on November 29, 2007, Micah Fialka-Feldman and his family were informed, by e-mail, that he was not eligible to live in the dorm. EXHIBIT # 6. This was

3

the first time he was told he was not eligible, despite the fact that he and his family had been speaking with University officials for over six months about living on-campus. EXHIBIT # 1.

On December 3, 2007, the $100.00 was refunded to Rich Feldman from the student account. EXHIBIT # 7.

On May 5, 2008, Mr. Fialka-Feldman and his family provided Oakland officials with numerous letters of support, which resulted in a meeting being arranged with Oakland's Vice President for Student Affairs, Mary Beth Snyder. On May 23, 2008, Ms. Snyder sent a letter that stated: "The University maintains resident halls for individuals who meet our admissions requirements and are enrolled in coursework leading to a degree. From time to time we do house students from other universities who are earning credits for transfer to another institution . . ." EXHIBIT # 8.

In August 2008, Mr. Fialka-Feldman's parents met with Vice President Snyder but were unable to persuade her to change her mind.

At a meeting of the Board of Trustees on September 17, 2008, Mr. Fialka-Feldman presented a petition to the Board asking that the University change its decision and allow him to live on campus. On September 24, 2008, Vice President Snyder sent a letter to Mr. Fialka-Feldman informing him that she would not change her decision. EXHIBIT # 9.

On October 7, 2008, legal counsel for Mr. Fialka-Feldman, contacted legal counsel for Oakland University, Victor A. Zimbardi, by letter advising him that it was Plaintiff's belief that Oakland's housing policy was discriminatory due to its disparate impact on persons with disabilities, specifically persons with cognitive impairments.

4

Plaintiff's counsel requested as a reasonable accommodation that the university waive the housing program's policy for Mr. Fialka-Feldman because he could not enroll in a program leading to a degree due to his disability. EXHIBIT # 10.

In a letter on November 7, 2008, Oakland's legal counsel denied the request for reasonable accommodation and denied the policy was discriminatory. EXHIBIT # 11.

In a letter dated and faxed on November 14, 2008, Plaintiff's counsel repeated the request for a reasonable accommodation on behalf of Mr. Fialka-Feldman and clarified the fact that the accommodation request related to the housing policy not the nature or requirement of the OPTIONS program. EXHIBIT # 12.

Oakland's legal counsel again denied the requested reasonable accommodation by letter dated November 17, 2008. EXHIBIT # 13.

## IV.    STANDARD OF REVIEW

The Fair Housing Act authorizes this Court to issue "permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate.)" 42 U.S.C. § 3613(c)(1).

This Court may issue a preliminary injunction pursuant to Fed. Rule Civ. Pro., Rule 65. When doing so there are four factors the court must consider: "(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." Additionally, "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites

that must be met." *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, (6th

Cir.2003) [citations omitted].

## V.  ARGUMENT

A.  THERE IS A LIKELIHOOD OF SUCCESS ON THE MERITS
WHEN THE PLAINTIFF HAS REQUESTED AS A REASONABLE
ACCOMMODATION, PURSUANT TO THE FAIR HOUSING ACT, THAT
THE UNIVERSITY WAIVE A HOUSING POLICY THAT IN DOING SO
WILL NOT CREATE ANY UNDUE FINANCIAL OR ADMINISTRATIVE
BURDAN ON THE DEFENDANT.

1.  Reasonable Accommodations Under FHA & Section 504

The failure to provide reasonable accommodations is discrimination under the

Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B), and is unique in that it does not require a

showing of animus toward the plaintiff.

> . . . we consider that reasonable accommodation is a theory of liability
> separate from intentional discrimination. . . . The theory would be entirely
> redundant if it required proof that the defendants' actions were motivated
> by animus towards the handicapped. Indeed for the reasonable
> accommodation theory to be meaningful, it must be a theory of liability
> for cases where we assume there is a valid reason behind the actions of the
> [defendant], but the [defendant] is liable nonetheless if it failed to
> reasonably accommodate the handicap of the plaintiff. *Good Shepherd
> Manor Foundation, Inc. v. City of Momence,* 323 F.3d 557, 562 (7th
> Cir.2003)

There are four elements to a claim under 42 U.S.C. § 3604(f)(3)(B). They are as

follows: (1) the plaintiff is a person with a disability; (2) the defendant knew or should

have reasonably known of the disability; (3) the requested accommodation is necessary to

afford the plaintiff equal opportunity to use and enjoy the dwelling; and (4) the defendant

refused to make the accommodation. *U.S. v. California Mobile Home Park Management

Co.*, 107 F.3d 1374, 1380 (9th Cir.1997)

The two leading cases in the United States Sixth Circuit Court Of Appeals that discuss reasonable accommodations under the Fair Housing Act are *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781 (6th Cir.1996) and *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039. What follows is an extensive quote from *Groner* discussing the interplay between reasonableness, undue burden and which party bares the burden of proof.

Discrimination prohibited by the Act includes the refusal to make reasonable accommodations in "rules, policies, practices, or services, when such accommodations may be necessary to afford [the handicapped individual an] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Moreover, the Act "imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons." *United States v. California Mobile Home Park Mgmt. Co.,* 29 F.3d 1413, 1416 (9th Cir.1994); *see also* H.R.Rep. No. 100-711 at 25 (1988), *U.S. Code Cong. & Admin. News* at 2173, 2186.

Accommodations required under the Act must be both reasonable and necessary to afford the handicapped individual an equal opportunity to use and enjoy a dwelling. *See Smith & Lee Assocs., Inc. v. City of Taylor,* 102 F.3d 781, 795-96 (6th Cir.1996) (holding that the city had violated the Fair Housing Act by failing to allow adult foster care homes to operate in areas zoned for single-family neighborhoods). An accommodation is reasonable when it imposes no "fundamental alteration in the nature of a program" or "undue financial and administrative burdens." *Id. at 795.*

Whether a requested accommodation is required by law is "highly fact-specific, requiring case-by-case determination." *California Mobile Home Park,* 29 F.3d at 1418; *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096, 1104 (3d Cir.1996). Courts generally balance the burdens imposed on the defendant by the contemplated accommodation against the benefits to the plaintiff. *See Smith & Lee Assocs.,* 102 F.3d at 795. In determining whether the reasonableness requirement has been met, a court may consider the accommodation's functional and administrative aspects, as well as its costs. *See Bryant Woods Inn, Inc. v. Howard County,* 124 F.3d 597, 604 (4th Cir.1997).

. . . this court in *Smith & Lee Associates* stated in a footnote that "[p]laintiffs bear the burden of demonstrating that the desired accommodation is necessary to afford equal opportunity." *Smith & Lee*

7

*Assoc., 102 F.3d at 796 n. 11*. Although *Smith & Lee Associates* limited its discussion to the *necessity* of an accommodation, it follows that the same analysis applies to our *reasonableness* determination.

Because the Fair Housing Act adopted the concept of a "reasonable accommodation" from § 504 of the Rehabilitation Act, 29 U.S.C. § 791, cases interpreting that term under the Rehabilitation Act also apply to claims under the Fair Housing Act. *See Smith & Lee Assocs., 102 F.3d at 795*. Under the Rehabilitation Act, our circuit requires a plaintiff seeking an accommodation to show that it is reasonable. *See Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1183 (6th Cir.1996) ("[T]he disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable.") (emphasis in original). The employer then has the burden of persuasion on whether the proposed accommodation would impose an undue hardship. *See id.* at 1183-84. *Groner v. Golden Gate Gardens Apartments,* 250 F.3d 1039, 1044. (6th Cir.2001).

In the present case, Mr. Fialka-Feldman is a person with cognitive impairments that substantially limit his ability to learn. In fact, the University has admitted him to a university program specifically designed and intended for persons with disabilities. EXHIBIT # 2.

Mr. Fialka-Feldman is a full time student at the University, taking 12 – 15 credits a semester. EXHIBIT # 1. His family pays the same amount of tuition as other students at the University. EXHIBIT # 3. He has done what is expected of him as a student of the University and under the requirements of the OPTIONS Program. He is committed to his studies and is determined to continue them. He is prepared, ready, and able to live on-campus. He has met his responsibilities to the University and demonstrated a commitment to the University's community through various student activities. EXHIBIT # 1.

Oakland University has an "affirmative duty" to provide reasonable accommodations to students with disabilities and in this case it has failed to meet its responsibility under the Fair Housing Act.

Mr. Fialka-Feldman, through his counsel requested that the University's housing program drop its requirement that students living in the dormitories be enrolled in coursework leading toward a degree. Additionally, if the University would not drop this requirement of the housing program completely, then the University was asked to waive the housing requirement for Mr. Fialka-Feldman as a reasonable accommodation.

This requested accommodation was necessary and related directly to his disability. Its due to Mr. Fialka Feldman's disability that he cannot be admitted to the University through its regular admissions process or be in a program that leads toward a degree. Students without disabilities choose for a variety of legitimate reasons to enroll in course work that does not lead toward a degree. But for Mr. Fialka Feldman and other students in the OPTIONS program, they do not have a choice. The OPTIONS program is the only program available to them at the University and it does not offer a degree. Without this requested accommodation Mr. Fialka-Feldman is denied any opportunity to live in the dormitory residence much less have an "equal opportunity to use and enjoy a dwelling" as is required by the law. The University's denial of this requested accommodation therefore is a violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B).

2.     The Reasonableness of the Requested Accommodation.

Additionally, the requested accommodation is reasonable because it creates no additional expense or administrative burden for the University. Mr.

9

Fialka-Feldman is not asking to pay less in rent then non-disabled students, or for the University to waive any of its usual application fees for the housing program. He has not asked and at this time we do anticipate needing the University to provide any services that are not provided for non-disabled students. EXHIBIT # 1. This requested accommodation is reasonable because it does not create any additional financial or administrative burdens for the University and should have been granted as the Fair Housing Act requires.

### B. THE REQUESTED ACCOMMODATION TO WAIVE THE MATRICULATING STUDENT REQUIREMENT IS NOT A FUNDAMENTAL ALTERATION OF THE UNIVERSITY'S HOUSING PROGRAM.

The accommodation requested by the plaintiff does not fundamentally alter Oakland University's housing program. Mr. Fialka-Feldman is a student enrolled in a program of the University. He is required to take a minimum of 12 credit hours each semester to remain in the program. He is a full-time student at the University. He is not asking the University to open the housing program to students taking only a minimal or cursory amount of classes at the University. This past semester he took 15 credit hours and paid full rate of tuition at the University. EXHIBITS # 1 & 3.

The University claims the reasonable accommodation requested by Plaintiff, if granted, would be a fundamental alteration of the University's OPTIONS Program. EXHIBIT # 11. But Plaintiff's request was to waive a requirement of the housing program not the OPTIONS Program. Plaintiff is not requesting any alterations in the OPTIONS Program. The University's claim is a poor attempt to divert attention from the real issue – its failure to provide a reasonable accommodation regarding its housing program that was requested pursuant to the Fair Housing Act.

C.     THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION
WHERE THE PLAINTIFF HAS DEMONSTRATED A LIKELIHOOD OF
SUCCESS ON THE MERITS, THE BALANCE OF EQUITIES IS IN HIS
FAVOR, AND IT IS IN THE PUBLIC'S INTEREST.

In addition to the likelihood of success on the merits, discussed above, there are

three additional factors for the Court to consider when issuing a preliminary injunction

and each is discussed below.

1.     **Threat Of Irreparable Harm**

The Sixth Circuit has suggested in one case, that if the Plaintiff makes a showing

that the Fair Housing Act has likely been violated the court should issue an injunction

and that the traditional equity principals do not necessarily apply.

> Under the FHA, the court "may award" a temporary injunction "for a
> violation" of the statute "as is necessary to assure the full enjoyment of the
> rights granted." 42 U.S.C. § 3614(d)(1)(A). Some circuits have ruled that
> when a federal statute specifically provides for injunctive relief, traditional
> equity principles do not apply, and a showing of irreparable harm is not
> required. *See, e.g., United States v. Diapulse,* 457 F.2d 25, 27-28 (2d
> Cir.1972). Other circuits find that the statute must have language
> specifically changing the traditional standards, such as language
> mandating that the court "shall" enjoin the activity if an agency order is
> disobeyed. *See, e.g., Illinois Bell Telephone v. Illinois Commerce Comm'n,*
> 740 F.2d 566, 571 (7th Cir.1984). Under this second approach, if a statute
> confers a right to an injunction once a certain showing is made, the
> plaintiff need show no more than the statute specifies. *United States v.*
> *Microsoft Corp.,* 147 F.3d 935, 943 (D.C.Cir.1998). In *CSX*
> *Transportation v. Tennessee State Board of Equalization,* 964 F.2d 548
> (6th Cir.1992), the court found that "since Congress has expressly
> authorized the granting of injunctive relief to halt or prevent a violation of
> [the statute], traditional equitable criteria do not govern the issuance of
> preliminary injunctions." *Id.* at 551. Like the FHA, the statute read that
> courts "may" grant preliminary injunctions "as may be necessary to
> prevent, restrain, or terminate" any violations of the statute. *Id.* at 550.
> *U.S. v. Edward Rose & Sons,* 384 F.3d 258, (6th Cir.2004) *This was dicta.*

**This court should follow the dicta in *Edward Rose & Sons* and apply its**

**reasoning to the Fair Housing Act in this case. 42 U.S.C. § 3613(c)(1) specifically**

authorizes the Court to grant injunctive relief to halt a violation of the Fair Housing Act. It permits the Court to order the Defendant to take affirmative action the Court deems appropriate to halt or remedy violation of the act. As discussed below, enforcement of civil rights law serve an important public interest. The Court should issue an injunction when there is showing of a likelihood of success on the merits involving a violation of the Plaintiff's civil rights under the Fair Housing Act.

Additionally, because Mr. Fialka-Feldman must take two buses each day to school, we believe there is considerable risk of harm to him both due to inclement weather, the loss of time, and considerable inconvenience. The public transportation system in Southeast Michigan is notorious for its inefficiency and during inclement weather it can pose a considerable health risk.

2.      There Is No Threat Of Substantial Harm To Others

Plaintiff is not aware of any risk of harm to anyone if this court issues an injunction. The Plaintiff is ready and able to live on-campus. At this time he does not require any special supports to live on-campus and we do not anticipate he will need any. Exhibit #1.

Additionally, the University's housing program was advertising in the student paper as late as November that they still have living spaces available on-campus and was encouraging students to apply. EXHIBIT # 14.[1] Therefore, we do not believe there would be any need to displace any students already living on-campus. If there is no

---

[1] The advertisement mentions the many benefits to living on-campus and states; "if you are looking for the ultimate college experience, then place yourself in the heart of all the excitement. Living on campus puts you only minutes away from all the activity, and eliminates the time and anxiety that accompany your long commute. Choose to live in the residence halls and find yourself only steps away from classrooms, the library, the RAC and the Oakland Center. Along with the independence and freedom that come with residence life, residents enjoy endless opportunities for campus involvement, recreation and academic success."

current space available Plaintiff would alter his request to this Court by requesting the Court issue an injunction that would place him at the top of any waiting list for on-campus dormitory housing.

**3.    Issuing An Injunction Would Be In The Public Interest**

Finally, on the public interest factor, the United States Supreme Court has found the Fair Housing Act serves an "overriding societal priority." *Meyer v. Holley,* 537 U.S. 280, 290, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003). Additionally the U.S. Sixth Circuit has found that eradicating housing discrimination serves the "public interest." *Price v. Pelka,* 690 F.2d 98, 102 (6th Cir.1982).

Also attached is an affidavit from Richard Bernstein, Vice-Chairman of the Board of Governors for Wayne State University, which speaks to the importance of diversity in our state universities. He, as a statewide elected official, identifies diversity as being in the public interest. Diversity plays an important role in preparing students for their future and therefore serves an important public interest. EXHIBIT # 15.

## CONCLUSION

Plaintiff has demonstrated a likelihood of success on the merits on at least one of its claims in his complaint. Additionally, a balancing of the equities of this case would call for an injunctive relief before Mr. Fialka-Feldman suffers irreparable harm and to stop the continuing contravention of his civil rights.

WHEREFORE, Plaintiff requests the Court consider this motion on an expedited basis due to the new semester starting on January 5, 2009. Plaintiff has been denied housing by Defendant by its refusal to provide a reasonable accommodation and Plaintiff can be made whole only if injunctive relief is provided promptly.

13

Additionally, Plaintiff requests this Honorable Court to issue a preliminary injunction pursuant to the Fair Housing Act, 42 USC § 3613(c)(1), and Fed. R. Civ. P. 65, enjoining Defendant to admit, rent to, and otherwise make available to the Plaintiff a space in one of its on-campus dormitory living spaces.

Plaintiff further requests any additional relief the Court deems just, appropriate, and equitable under the circumstances.

Respectfully submitted,

Dated: December 15, 2008        s/Chris E. Davis
MICHIGAN PROTECTION &
ADVOCACY SERVICE, INC.
Attorney for Plaintiff
29200 Vassar Blvd., Suite 200
Livonia, MI 48152
(248) 473-2990
cdavis@mpas.org
P52159

MICAH FIALKA-FELDMAN

Plaintiff,

Case No. 2:08-cv-14922-PJD-VMM

v.                                              Hon. Patrick J. Duggan

OAKLAND UNIVERSITY BOARD
OF TRUSTEES

Defendant.

_____/

Chris E. Davis (P52159)
Michigan Protection & Advocacy Service, Inc.
29200 Vassar Blvd., Suite 200
Livonia, MI 48152
Phone: (248) 473-2990
Email: cdavis@mpas.org
Attorney for Plaintiff

_____/

## PROOF OF SERVICE

STATE OF MICHIGAN     )
                      )SS
COUNTY OF WAYNE       )

Daniel Cooper being first duly sworn, deposes and says that on the 15th day of

December, 2008, he served Plaintiff's Motion for Preliminary Injunction and Expedited

Consideration, Brief in Support of Plaintiff's Motion for Preliminary Injunction, and

Proof of Service on the following:

Victor Zambardi
Oakland University General Counsel
203 Wilson Hall
Rochester, MI 48309

by facsimile and by placing same in a sealed envelope, properly addressed as indicated

above with postage fully prepaid for First Class Mail and depositing same in a United

States Postal Service mail receptacle located in Livonia, Michigan.

Daniel Cooper

Subscribed and sworn to before me on
December 15, 2008

Verna L. Lehane, Notary Public
Wayne County, Michigan
My Commission Expires: Jan. 26, 2015