

**EXHIBIT F**

2005 Mich. App. LEXIS 2132, *

THE OAKLAND SAIL, d/b/a THE OAKLAND POST, Plaintiff-Appellant, v OAKLAND UNIVERSITY BOARD OF TRUSTEES, Defendant-Appellee.

No. 252391

COURT OF APPEALS OF MICHIGAN

2005 Mich. App. LEXIS 2132

August 30, 2005, Decided

**NOTICE:** **[*1]** THIS IS AN UNPUBLISHED OPINION. IN ACCORDANCE WITH MICHIGAN COURT OF APPEALS RULES, UNPUBLISHED OPINIONS ARE NOT PRECEDENTIALLY BINDING UNDER THE RULES OF STARE DECISIS.

**PRIOR HISTORY:** Oakland Circuit Court. LC No. 03-048542-CZ.

**DISPOSITION:** Affirmed.

**CORE TERMS:** session, presidential, selection committee, governing board's, open meetings, institutions of higher education, informal, lobbyist, elect, board of control, boards of trustees, board meetings, body corporate, general supervision, authority to grant, baccalaureate, supervision, expenditures, lobbying, elected

**JUDGES:** Before: Zahra, P.J., and Gage and Murray, JJ.

**OPINION**

PER CURIAM.

Plaintiff, the student newspaper at Oakland University, brought this action alleging a violation of the Open Meetings Act ("OMA"), MCL 15.261 *et seq.*, after a majority of defendant Oakland University Board of Trustees met in a closed session with its president and lobbying firm to discuss lobbying strategies in light of anticipated reductions in state funding. Plaintiff appeals as of right from the trial court's order granting summary disposition to defendant under MCR2.116(C)(10) and (I)(2). We affirm. This case is being decided without oral argument pursuant to MCR 7.214(E).

We review the trial court's decision to grant summary disposition de novo to determine whether defendant was entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich. 109, 118; 597 N.W.2d 817 (1999). **[*2]**

Plaintiff argues that the trial court erred in finding that the OMA did not govern the meeting at issue. We disagree. Const 1963, art 8, § 5, provides that the individual boards of regents of the University of Michigan ("U of M"), Michigan State University ("MSU"), and Wayne State University ("WSU") "shall constitute a body corporate" consisting of eight elected members. Additionally, it provides that the boards "shall have general supervision of its institution and the control and direction of all expenditures from the institution's funds[,]"

and that "each board shall, as often as necessary, elect a president of the institution under its supervision." *Id.* Const 1963, art 8, § 6, similarly states that "other institutions of higher education established by law having authority to grant baccalaureate degrees shall each be governed by a board of control which shall be a body corporate." In relevant part, the provisions of this section are identical to § 5, except that board members are appointed rather than elected.

Oakland University was established by the Legislature in 1970 as "a state institution of higher education having authority to grant baccalaureate degrees . . [*3] . ." MCL 390.151. Therefore, its board of control, i.e., defendant, has the powers conferred by Const 1963, art 8, § 6, which are identical to those granted by the constitution to the boards of trustees of U of M, MSU, and WSU. Thus, we reject plaintiff's argument that defendant stands on a different constitutional footing than these three universities.

In *Federated Publications, Inc v Michigan State Univ Bd of Trustees*, 460 Mich. 75, 78; 594 N.W.2d 491 (1999), our Supreme Court held that "the Legislature does not have the power to regulate open meetings for defendant [MSU] in the context of presidential searches at all, i.e., the Legislature is institutionally unable to craft an open meetings act that would not, in the context of a presidential selection committee, unconstitutionally infringe the governing board's power to supervise the institution." The Court noted that university governing boards are "constitutional corporation[s] of independent authority, which, within the scope of its functions, is coordinate with and equal to that of the legislature." *Id.* at 84 n 8, quoting *Bd of Regents of the Univ of Michigan v Auditor Gen*, 167 Mich. 444, 450; [*4] 132 NW 1037 (1911). The Legislature may not interfere with a board's constitutional authority to manage and control the university. *Federated Publications, supra* at 86-88.

Universities are not exempt from all regulation, and are subject to the Legislature's police power, so long as regulation does not invade the university's constitutional autonomy. *Id.* at 87-88. For example, a university governing board has the constitutional power to elect a president of the institution under its supervision, so the OMA cannot be applied to the board's exercise of its power to elect a president. *Id.* at 88-89.

Before 1963, it was within the board's exclusive discretion to decide whether to open board meetings to the public. *Id.* at 89-90. In 1963, that discretion was curtailed by Const 1963, art 8, § 4, requiring that formal sessions be open to the public. [1] *Id.* at 90. However, the boards retain the power to meet in closed informal sessions. *Id.* at 90. Additionally, each board is empowered to decide whether a particular meeting is considered a formal public meeting or a closed [*5] informal session. *Id.* at 90-91 and nn 13-14. The Court in *Federated Publications* concluded that, because meetings of the presidential selection committee were not formal sessions, the OMA could not be used to compel public admittance. *Id.* at 91. Public policy considerations are "irrelevant" in the face of a constitutional mandate. *Id.* at 91-92 n 15.

## FOOTNOTES

[1] Const 1963, art 8, § 4, applies to the seven universities listed therein "and to other institutions of higher education established by law."

Critical to the Court's decision in *Federated Publications* is that the presidential selection committee was exercising authority granted exclusively to the board of trustees by the constitution. In the present case, defendant's meeting with the university president and its lobbyists may similarly be characterized as an exercise of defendant's constitutional power of "general supervision of the institution and the control and direction of all expenditures from the institutions [*6] funds." Const 1963, art 8, § 6. Thus, as in *Federated Publications*, the

Legislature is constitutionally precluded from impinging on that power by requiring compliance with the OMA.

Furthermore, Const 1963, art 8, § 4, only requires that "formal" sessions be held in public. In *Federated Publications*, the presidential selection committee meetings were not "formal" board meetings. Similarly, here, plaintiff does not argue that defendant's meeting with its lobbyist firm was a "formal" session. Instead, because the meeting was informal, the Legislature is constitutionally precluded from requiring compliance with the OMA.

We therefore conclude that the trial court correctly held that defendant's meeting with its lobbyists did not violate the OMA. We decline to reach the broader question whether *Federated Publications* precludes all applications of the OMA to university governing boards, regardless of the circumstances.

Affirmed.

/s/ Brian K. Zahra

/s/ Hilda R. Gage

/s/ Christopher M. Murray

Service: **Get by LEXSEE®**
Citation: **2005 Mich. App. LEXIS 2132**
View: Full
Date/Time: Monday, January 5, 2009 - 9:27 AM EST



About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.