**EXHIBIT G**

*36 Fed. Appx. 831, \*; 2002 U.S. App. LEXIS 10860, \*\**

JERRY L. UNDERFER, Ph.D, Plaintiff-Appellant, v. UNIVERSITY OF TOLEDO, et. al., Defendants-Appellees.

No. 00-4568

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

36 Fed. Appx. 831; 2002 U.S. App. LEXIS 10860

June 5, 2002, Filed

**NOTICE:** [\*\*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO. 00-07157. Katz. 11-16-00.

**DISPOSITION:** Judgment of the district court was affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff professor sued defendants, university, research council, president, colleague, and vice president, alleging violation of his federal rights under 42 U.S.C.S. §§ 1981, 1983, 1985(3). The United States District Court for the Northern District of Ohio granted defendants motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The professor appealed.

**OVERVIEW:** The colleague submitted a grant proposal to a science foundation and listed the professor as a co-director of the proposal. The professor did not sign the proposal and alleged that he was unaware that a proposal was actually being submitted. The science foundation believed that the proposal contained plagiarism. The university organized an investigative panel that concluded that the professor probably engaged in misconduct. The professor brought the current action alleging violation of federal civil rights along with state law claims for defamation and interference with contract. The court of appeals held that the professor failed to allege that he was a member of a protected class. The university was a public-funded entity and was not considered a person under 42 U.S.C.S. § 1983 and, therefore, was immune from suit under the Eleventh Amendment. Because the professor failed to set forth in his complaint that he intended to sue the president, vice president, and colleague in their individual capacities, these claims are likewise barred under the Eleventh Amendment. Under state law, claims against state officials had to be first brought before a state court of claims.

**OUTCOME:** The judgment was affirmed.

**CORE TERMS:** state law claims, individual capacity, state official, superannuate, official capacities, protected class, plagiarism, immunity, immune, investigate, contacted,

addendum, state officials, injunctive relief, monetary relief, collectively, heightened, defamation, monetary, restore, final report, misconduct, withdrawal, revised

**LEXISNEXIS(R) HEADNOTES**
Civil Procedure > Appeals > Standards of Review > De Novo Review
*HN1* An appellate court reviews a district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6) de novo.

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
*HN2* In reviewing a complaint for its failure to state a claim for relief, an appellate court must construe the complaint in the plaintiff's favor, and accept as true all factual allegations and permissible inferences therein. Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate only where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. The purpose of Fed. R. Civ. P. 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. A reviewing court should deny a Fed. R. Civ. P. 12(b)(6) motion unless it is clear that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.

Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > Protected Parties
*HN3* In order to state a claim under 42 U.S.C.S. §§ 1981 and 1985(3), a plaintiff must allege that he is a member of a protected class.

Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > General Overview
Labor & Employment Law > Discrimination > Public Contracts > Coverage & Definitions
Labor & Employment Law > Discrimination > Public Contracts > Enforcement
*HN4* 42 U.S.C.S. § 1981 prohibits intentional race discrimination in the making and enforcing of contracts with both public and private actors.

Civil Rights Law > General Overview
*HN5* 42 U.S.C.S. § 1985(3) only covers conspiracies against: (1) classes who receive heightened protection under the Equal Protection Clause; and (2) those individuals who join together as a class for the purpose of asserting certain fundamental rights.

Civil Rights Law > General Overview
*HN6* In order to state a claim under 42 U.S.C.S. § 1983, a plaintiff must allege that: (1) a person; (2) acting under color of state law; (3) deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States.

Constitutional Law > State Autonomy > General Overview
Governments > Federal Government > Claims By & Against
Governments > State & Territorial Governments > Claims By & Against
*HN7* Because the Eleventh Amendment bars suits against state entities in federal court, the United States Court of Appeals for the Sixth Circuit holds that public-funded universities are not considered "persons" under 42 U.S.C.S. § 1983 and are immune from actions under 42 U.S.C.S. § 1983.

Civil Rights Law > General Overview
Governments > State & Territorial Governments > Claims By & Against

**HN8** With regard to a claim against a state entity under 32 U.S.C.S. § 1983, in order to overcome an Eleventh Amendment bar, a plaintiff must either seek injunctive relief against a state official in his official capacity or seek monetary relief against a state official acting in his individual capacity. When seeking monetary relief against a state official, a plaintiff must clearly state that he is suing the official in his individual capacity.

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Exclusive Jurisdiction
Governments > Courts > Courts of Claims
Governments > State & Territorial Governments > Claims By & Against

**HN9** Ohio law provides that a plaintiff may bring state law claims against a state official only where the official acts outside of the scope of his official duties. Ohio Rev. Code Ann. § 9.86 states that no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities. However, all state law claims against state officials must first be brought before the state court of claims-- that court retains original and exclusive jurisdiction over all questions regarding a state official's immunity from suit. Ohio Rev. Code Ann. § 2743.02(F).

**COUNSEL:** For JERRY L. UNDERFER, Ph.D., Plaintiff - Appellant: Bruce Comly French, Lima, OH.

For UNIVERSITY OF TOLEDO, Defendant - Appellee: Sue A. Sikkema, Barbara E. Machin, Bunda, Stutz & DeWitt, Toledo, OH.

**JUDGES:** BEFORE: MARTIN, Chief Judge; COLE, Circuit Judge; Sharp, District Judge. *

* The Honorable G. Kendall Sharp, United States District Judge for the Middle District of Florida, sitting by designation.

**OPINION**

[*832] **PER CURIAM.** Plaintiff Jerry L. Underfer appeals the district court's dismissal of his complaint under Fed. R. Civ. P. 12(b)(6). Underfer brought suit against the University of Toledo and the University of Toledo Research Council (collectively, "the University"), as well as [**2] University President Frank Horton, Professor Bernard W. Bopp, and Vice President James Fry (collectively, "the individual defendants") in their official capacities, alleging that the defendants violated [*833] federal civil rights law in their handling of plagiarism claims brought against him by the National Science Foundation. Because Underfer has not alleged that he is a member of a protected class under Title 42 of the United States Code, and because the remainder of his claims are barred by the Eleventh Amendment, we **AFFIRM** the decision of the district court.

**I. Background**

At all times relevant to this case, Jerry L. Underfer was a professor of education at the

University. Underfer held the title of superannuate professor, which entitled him to teach full time one term each academic year.

On April 5, 1991, Professor Bernard Bopp submitted a grant proposal ("the Proposal") to the National Science Foundation ("NSF"). Underfer was listed as co-director of the Proposal, though he alleges that he did not sign the Proposal nor was he aware that it was actually being submitted. Several months after the submission of the Proposal, Robert Bell, an offical at NSF, contacted Bopp [**3] and Underfer by letter, indicating that NSF had reason to believe that much of the Proposal was lifted from the work of a professor at Harvard University. Bell stated that NSF planned to investigate the matter further. Bell also contacted the University Administration about NSF's intention to pursue the allegations of plagiarism against Bopp and Underfer. The University convinced Bell to temporarily suspend the NSF investigation so that the University could first investigate the charges against Bopp and Underfer on its own.

Shortly thereafter, the University organized the Investigative Panel, a panel comprised of University personnel, to investigate the plagiarism charges against Bopp and Underfer. The Investigative Panel concluded that while it was clear that Bopp engaged in misconduct, "the evidence was less clear" as to Underfer's culpability. The Investigative Panel surmised that Underfer "probably engaged in misconduct" and submitted its findings to the University Research Council for its consideration of appropriate disciplinary action. The Research Council in turn concluded that *de minimus* sanctions should be imposed against Underfer. The matter appeared to be closed.

[**4] However, the Investigative Panel later added an addendum to its final report. This addendum included two sworn affidavits that "suggested a larger role was played by Dr. Underfer than [was] indicated in the Final Report." In light of this newly discovered information, the Investigative Panel revised its findings by concluding that "Dr. Underfer copied text from the Center for Astrophysics SPICA proposal into" the Proposal. The Research Council, in considering these revised findings, instituted more severe sanctions against Underfer, including the withdrawal of his status of superannuate professor.

Underfer challenged the Research Council's findings to Dr. Frank Horton, President of the University. Underfer argued that he was not able to cross-examine the testimony contained in the addendum, which was integral to the heightened sanctions placed against him. After considering Underfer's arguments, Horton determined that the matter would be remanded to the Research Council, allowing Underfer the opportunity to respond. The Research Council affirmed its prior findings and again recommended the withdrawal of Underfer's superannuate status. The University considered its examination of [**5] the matter to be complete, and notified NSF of the results of its investigation.

Underfer, through his counsel, also contacted NSF by letter, requesting that NSF "remand the findings against Dr. Underfer back to the University of Toledo for further investigation." Underfer reiterated that he did not sign the Proposal, and stated that the signature that was submitted to NSF must have been a forgery. Joseph Bordogna, Acting Deputy Director of NSF, replied that Underfer should have known that his name was associated with the Proposal, and that NSF would not take any action regarding the matter.

Underfer filed suit against the University, the Research Council, as well as Bopp, Fry, and Horton in their official capacities, bringing claims under 42 U.S.C. §§ 1981, 1983, and 1985(3), as well as state law claims for defamation and interference with contract under Ohio law. [1] In his prayer for relief, Underfer sought compensatory and punitive damages against the University and the individual defendants, and requested that the district court order the University to restore his status as superannuate professor and "to take such appropriate steps with adequate notice [**6] to restore the plaintiff to his position of

esteem with the academic and scientific community[.]" The district court dismissed Underfer's federal claims with prejudice and dismissed his state law claims without prejudice under Fed. R. Civ. P. 12(b)(6).

**FOOTNOTES**

1 Underfer also brought claims under the False Claims Act (FCA) as well as various claims against NSF; Underfer later voluntarily dismissed these claims.

## II. Jurisdiction and Standard of Review

On August 4, 2000, the defendants filed a motion to dismiss Underfer's complaint pursuant to Fed. R. Civ. P. 12(b)(6). On September 14, 2000, Underfer filed an opposition to the defendants' motion to dismiss. On November 11, 2000, the district court granted the defendants' motion. This court retains jurisdiction over final orders of the district court pursuant to 28 U.S.C. § 1291.

*HN1* This court reviews a district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6) *de novo*. *HN2* In reviewing a complaint for its failure to state [**7] a claim for relief, this Court must construe the complaint in the plaintiff's favor, and accept as true all factual allegations and permissible inferences therein. See *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). Dismissal under 12(b)(6) is appropriate only where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. See *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) ("The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."); *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (A reviewing court "should deny [a Rule 12(b)(6)] motion unless it is clear that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief."). We will thus consider Underfer's claims pursuant to this standard.

## III. Discussion

### A. Claims under 42 U.S.C. §§ 1981 and 1985(3)

**Underfer appeals the district court's assessment of his claims brought pursuant to 42 U.S.C. §§ 1981 [**8] and 1985(3).** *HN3* **In order to state a claim under 42 U.S.C. §§ 1981 and 1985(3), a plaintiff must allege that he is a member of a protected class.** See *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001) ("*HN4* **Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts with both public and private actors**"); *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) ("[*HN5* **Section] 1985(3) only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) 'those [*834] individuals who join together as a class for the purpose of asserting certain fundamental rights'**") (quoting *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)). Underfer has not alleged that he is a member of a protected class. He instead argues that he is a "class of one," under the Supreme Court's holding in **Willowbrook v. Olech, 528 U.S. 562, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000).** While the *Willowbrook* Court affirmed the existence of a "class of one" under an egregious set of circumstances in the equal protection context, we do [**9] not read the *Willowbrook* decision to alter the text or legislative aims of the relevant sections of Title 42. Therefore, Underfer has not alleged that he is entitled to the protections afforded by §§ 1981 and 1985(3).

### B. Claim under 42 U.S.C. § 1983

Underfer also appeals the dismissal of his § 1983 claim. *HN6* In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) a person, (2) acting under color of state law, (3) deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 531, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1987). *HN7* Because the Eleventh Amendment bars suits against state entities in federal court, *see, e.g. Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 134 L. Ed. 2d 252, 116 S. Ct. 1114 (1996), this Court has held that public-funded universities are not considered "persons" under § 1983 and are immune from actions under this section. *See Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299, 304 (6th Cir. 1984). *HN8* In order to overcome this Eleventh Amendment [**10] bar, a plaintiff must either seek injunctive relief against a state official in his official capacity or seek monetary relief against a state official acting in his individual capacity. *See Ex Parte Young,* 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908); *Wells v. Brown,* 891 F.2d 591, 592 (6th Cir. 1989). When seeking monetary relief against a state official, a plaintiff must clearly state that he is suing the official in his individual capacity. *See Wells* at 592 ("Plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacities.").

Because the University is immune from suit under the Eleventh Amendment, Underfer's claims for monetary and injunctive relief against the University are therefore barred. Furthermore, given that Underfer makes a claim for only monetary damages against Bopp, Fry, and Horton, and because Underfer failed to set forth in his complaint that he intended to sue these defendants in their individual capacities, these claims are likewise barred under the Eleventh Amendment. The University and the individual defendants are immune from [**11] § 1983 claims as they were pleaded here, and these claims must be dismissed for a lack of subject matter jurisdiction.

### C. State law claims

Underfer also brings claims against the University and the individual defendants under Ohio law for defamation and interference with contract.

As previously stated, because the Eleventh Amendment provides the University with immunity from suits in federal court, this Court is lacking in jurisdiction over these claims. *See Hall,* 742 F.2d 299. Additionally, *HN9* Ohio law provides that a plaintiff may bring state law claims against a state official only where the official acts outside of the scope of his official duties. *See* Ohio Rev. C. § 9.86 ("no officer or employee shall be liable in any civil action that arises under the law of this state for [*835] damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities[.]") However, all state law claims against state officials must first be brought before the state court of claims-- that court retains original and exclusive jurisdiction over all questions regarding [**12] a state official's immunity from suit. Ohio Rev. C. § 2743.02(F). Therefore, the district court correctly dismissed Underfer's state law claims without prejudice. Because these claims should first be considered by the state court of claims, they are improperly before this Court.

### Conclusion

For the aforementioned reasons, the judgment of the district court is **AFFIRMED.**

Service: **Get by LEXSEE®**
Citation: **2002 U.S. App. LEXIS 10860**
View: Full
Date/Time: Monday, January 5, 2009 - 9:27 AM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
◼ - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.


Service: **Get by LEXSEE®**
Citation: **2002 U.S. App. LEXIS 10860**
View: Full
Date/Time: Monday, January 5, 2009 - 9:27 AM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
◼ - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.