UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKAH FIALKA-FELDMAN,

    Plaintiff,

v.

    Case No. 08-14922
    Honorable Patrick J. Duggan

OAKLAND UNIVERSITY
BOARD OF TRUSTEES,

    Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 5, 2009.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                 U.S. DISTRICT COURT JUDGE

Plaintiff filed this lawsuit, claiming that Defendant's denial of his request for housing in one of its on-campus dormitory living spaces violates the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Presently before the Court is Plaintiff's motion for preliminary injunction, filed pursuant to 42 U.S.C.§ 3613(c)(1) and Federal Rule of Civil Procedure 65. The motion has been fully briefed and the Court held a motion hearing on January 13, 2009. For the reasons that follow, the Court denies Plaintiff's motion.

**I.      Preliminary Injunction Standard**

The Fair Housing Act authorizes a court to issue "any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate.)" 42 U.S.C. § 3613(c)(1).  A court also may issue a preliminary injunction pursuant to Federal Rule of Civil Procedure 65.  Four factors are relevant to a court's decision whether to issue a preliminary injunction:

> (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief.

*Hamad v. Woodcrest Condominiums Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003).  "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Id*.  However, a preliminary injunction may not issue where there is "simply no likelihood of success on the merits . . .." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).

**II.     Factual and Procedural Background**

Plaintiff is a twenty-four year old male with cognitive impairments that substantially limit a major life activity, specifically his ability to learn.  Plaintiff is enrolled in Oakland University's OPTIONS program.  Plaintiff has been attending classes at Oakland University (hereafter "Oakland" or "University") since 2003, and he has been

2

enrolled in the OPTIONS program since the Fall of 2007.

The OPTIONS program is part of Oakland's School of Education and Human Services. The University established the program ". . . to provide a fully inclusive, age appropriate post-secondary education experience for students with mild cognitive disabilities." (Pl.'s Mot. Ex. 2.) Participants in the program are required to take a minimum of 12 credits per semester and pay the regular University tuition rate for undergraduate students. (*Id*.) The program, however, is not a degree-granting program. (Def.'s Resp. Ex. A ¶ 4.) Additionally, participants do not receive grades for the courses they attend and they do not take exams. (*Id*.) Participants also do not apply for admission to the University as a regularly enrolled degree seeking student (for example, they do not need a high school degree or standardized test scores). (*Id*. ¶ 13.)

Oakland categorizes students participating in the OPTIONS program as continuing education students for administrative purposes. (Def.'s Resp. Ex. A ¶ 4.) Such students are not entitled to the same benefits as students enrolled in degree-granting programs. (*Id*. ¶¶ 4, 11.) For example, as relevant to this case, they are not eligible for on-campus University housing. (*Id*. ¶ 11.)

While participating in OPTIONS, Plaintiff has been living with his parents in Huntington Woods, Michigan and has been taking public transportation to Oakland's campus in Rochester, Michigan. In the Fall of 2007, Plaintiff applied for University housing on Oakland's campus. Plaintiff's father submitted a check for one hundred dollars ($100) to Oakland as a deposit on a dormitory room for Plaintiff. On November

14, 2007, an official from the University's housing department sent an e-mail to Plaintiff's father, confirming that Plaintiff was approved and could begin living in a room in one of Oakland's dormitories beginning January 6, 2008.

Approximately two weeks later, however, Plaintiff and his family received an e-mail informing them that Plaintiff in fact was not eligible to live in the dorm. (Pl.'s Mot. Ex. 6.) Oakland then refunded the deposit paid by Plaintiff's father. Plaintiff and his family thereafter met with Mary Beth Snyder, Oakland's Vice President for Student Affairs, to address Plaintiff's request for on-campus housing. On May 23, 2008, Ms. Snyder sent a letter to Plaintiff, explaining that he is not eligible for student housing because "[t]he University maintains resident halls for individuals who meet our admissions requirements and are enrolled in coursework leading to a degree. . . ." (Pl.'s Mot. Ex. 8.) Plaintiff's parents met with Ms. Snyder again in August 2008, hoping to persuade her to change her mind; however, they were unsuccessful.

At a meeting of Oakland's Board of Trustees on September 17, 2008, Plaintiff presented a petition, asking the University to change its decision and allow him to live on campus. On September 24, 2008, Ms. Snyder sent a letter to Plaintiff, informing him that, based on University housing eligibility criteria, his request for on-campus housing remained denied. Counsel for Plaintiff then contacted the University's legal counsel, requesting "a reasonable accommodation" for Plaintiff in the way of a waiver of its housing policy limiting on-campus housing to students enrolled in a degree-granting program. On November 25, 2008, after the University's legal counsel indicated that the

4

University would not grant Plaintiff's request for a waiver or modification of its housing policy, Plaintiff filed this lawsuit.

In his Complaint, Plaintiff alleges that Defendant's unwillingness to grant him an accommodation– i.e. waiving or modifying the University's housing policy that restricts on-campus housing to students enrolled in a degree-granting program– violates the Fair Housing Act, specifically 42 U.S.C. § 3604(f) (Counts I and II). Plaintiff further alleges that the University's housing policy violates § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (Counts III and IV). Plaintiff seeks a declaratory judgment that Defendant's policy is unlawful, injunctive relief in the form of an order requiring Defendant to provide Plaintiff on-campus housing, compensatory and punitive damages, and costs and attorney fees. On December 15, 2008, Plaintiff filed the pending motion for preliminary injunction.

## III. Parties' Arguments

Plaintiff relies solely on his claims under the Fair Housing Act in support of his motion for a preliminary injunction. He argues that Defendant's refusal to modify its housing policy to allow students not enrolled in degree-granting programs to live in University on-campus housing or to grant a waiver to Plaintiff allowing him to live in on-campus housing constitutes discrimination in violation of the Act. Plaintiff further argues that a preliminary injunction is necessary to avoid irreparable harm to him, specifically the health risk posed by taking two buses each day to Oakland's campus in inclement weather and the loss of time and inconvenience resulting from the long commute and

5

inefficiency of the public transportation system in Southeast Michigan. Plaintiff also argues that there is no threat of substantial harm to others if an injunction issues and that the public interest in eradicating housing discrimination is served by an injunction.

Defendant responds that Plaintiff is not entitled to a preliminary injunction because he will not prevail on the merits. First, Defendant argues that Plaintiff lacks standing because, regardless of his disability, he is ineligible for University on-campus housing based on a legitimate, nondiscriminatory requirement– i.e. enrollment in a degree-granting program. Second, Defendant argues that Plaintiff's Fair Housing Act claims fail because Defendant, as an agency of the State of Michigan, is entitled to Eleventh Amendment immunity. Lastly, Defendant maintains that Plaintiff will not prevail on the merits because the accommodation he requests is neither necessary nor reasonable, as a matter of law.

Defendant also argues that Plaintiff's request for a preliminary injunction should be denied because he cannot establish that he will suffer irreparable harm absent the injunction, yet the University will suffer harm if it is ordered to modify its housing policy.

**IV.     Likelihood of Success on the Merits**

**A.     Standing**

Standing to sue under the Fair Housing Act is "'as broad as permitted by Article III of the Constitution.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 109, 99 S. Ct. 1601, 1612 (1979)). To satisfy Article III's standing requirement, a plaintiff must establish "that he or she: (1) has suffered an injury in fact, (2) that is causally connected to the defendant['s] conduct and (3) that is likely to be redressed by a favorable ruling. *Id*. at 230-31 (citations omitted).

Relying on several cases where courts have found that the plaintiffs lacked standing to pursue discrimination claims against the defendants, Defendant argues that a favorable ruling will not redress Plaintiff's injury and that he therefore lacks standing. In the cases cited by Defendant, the courts held that the plaintiffs lacked standing because a favorable decision on their claims would not redress their alleged injuries as they still would be disqualified from obtaining the benefits sought based on lawful, nondiscriminatory requirements or qualifications. *See, e.g., Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590, 593 (10th Cir. 1996); *Woods v. Milner*, 955 F.2d 436 (6th Cir. 1992); *Bashir v. Supreme Court of Ohio*, 652 F.2d 641 (6th Cir. 1981). Defendant maintains that the court's decision in *Wilson* is most instructive in the present case.

In *Wilson*, the plaintiffs alleged that the defendants committed gender

7

discrimination in violation of the Fair Housing Act by providing and advertising gender-segregated housing to students of Brigham Young University. The Tenth Circuit Court of Appeals held that the plaintiffs lacked standing because they were not students at the university and therefore did not otherwise qualify for the apartments reserved for students. 98 F.3d at 592-94. The court explained: "'A general denial of equal opportunity does not confer standing on a particular individual unless that individual would have had access to the benefit at stake in the absence of discrimination.'" *Id*. at 594 (quoting *NAACP, Boston Chapter v. Harris*, 607 F.2d 514, 520 (1st Cir. 1979)). "Discrimination cannot be the cause of injury to an applicant who could not have obtained the benefit even in the absence of the discrimination." *Id*.

Plaintiff replies that *Wilson* and the other cases cited by Defendant are not controlling because the plaintiffs' claims in those cases were overcome by the defendants' establishment of legitimate, non-discriminatory reasons for the challenged conduct. In comparison, Plaintiff's ability to prevail in his request for a reasonable accommodation under § 3604(f) of the Fair Housing Act is not defeated by a showing that Defendant lacked a discriminatory animus. *See, e.g., Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 561-62(7th Cir. 2003) (explaining that the defendant's rationale for the challenged action is not relevant in a reasonable accommodation case). In other words, Plaintiff can prevail on his Fair Housing Act claims even if Defendant's denial of his request for on-campus housing is based on the non-discriminatory policy of limiting such housing to students enrolled in degree-granting programs– rather than because of

8

Plaintiff's disability. As discussed *infra*, to prevail on his Fair Housing Act claims, Plaintiff need only show that an accommodation is necessary to afford him an equal opportunity to use and enjoy on-campus housing and that his requested accommodation is "reasonable." *See Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1044 (6th Cir. 2001). This Court believes that the issue of whether Plaintiff's requested accommodation is reasonable and necessary to afford him an equal opportunity to use and enjoy on-campus housing is relevant to the merits of his claims, not to whether he has standing.

The Court finds that Plaintiff has satisfied the elements necessary to establish standing under Article III. He alleges an injury in fact (i.e. the denial of his request for on-campus housing) that is the result of Defendant's refusal to make accommodations in its housing policy of limiting on-campus housing to students enrolled in degree-granting programs. Plaintiff also alleges that a favorable ruling on his claims will redress his injury.

### B. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. While the Amendment speaks of suits against a State by citizens of another State, the Supreme Court "has consistently held that an unconsenting

State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347 (1974). Further, the Court has held that the Amendment bars such suits against state agencies and state officials sued in their official capacities. *Florida Dep't of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 101 S. Ct. 1032 (1981) (holding that agencies of state government are part of the state for purposes of sovereign immunity); *Ford Motor Co. v. Dep't of the Treasury*, 323 U.S. 459, 464, 65 S. Ct. 347 (1945) (holding that suits against state officials for monetary damages are impermissible where the "action is in essence one for the recovery of money from the state" rather than against the officer in his individual capacity); *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908) (holding that suits against state officials for prospective injunctive relief are permissible because they are, in effect, suits against the officials in their individual capacities).

The University is a state agency, established under the Michigan Constitution and Michigan statutory law. MICH. CONST. Art. 8 § 6; MICH. COMP. LAW § 390.151. Defendant is established as a body corporate of the State of Michigan pursuant to the same authority. *Id*. The Sixth Circuit has held that a state university is a state agency for purposes of the Eleventh Amendment. *See, e.g., Martin v. Univ. of Louisville*, 541 F.2d 1171 (6th Cir. 1976). Several courts also have held that the governing bodies of state universities are entitled to immunity under the Eleventh Amendment. *See, e.g., Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir.

2007) (cases cited therein).

Plaintiff responds to Defendant's Eleventh Amendment argument in his reply brief, contending that by accepting federal funds, the University and Defendant waived their immunity from suits under the Rehabilitation Act pursuant to 42 U.S.C. § 2000d-7.[1] Plaintiff's motion for preliminary injunction, however, is based on his Fair Housing Act claims, not his claims under the Rehabilitation Act.[2] The Sixth Circuit has explicitly held that nothing in the Fair Housing Act suggests that Congress intended to abrogate the State's Eleventh Amendment Immunity and that nothing in Michigan law can be construed as waiving the State's immunity from suits under the Fair Housing Act. *Morris*

---

[1]Plaintiff also points out that Defendant only cites cases from outside the Sixth Circuit in support of its argument that university trustee boards are entitled to Eleventh Amendment immunity. (Pl.'s Reply Br. at 5.) Plaintiff, however, does not cite any contrary authority from the Sixth Circuit or any other court. Plaintiff nevertheless concedes that the Eleventh Amendment bars his request for money damages from Defendant. (*Id.*)

[2]Plaintiff requests that the Court grant his motion for a preliminary injunction pursuant to the Rehabilitation Act, if it concludes that Defendant is entitled to Eleventh Amendment immunity from his Fair Housing Act claims. (Pl.'s Reply Br. at 6.) While Defendant has not had the opportunity to address Plaintiff's Rehabilitation Act claims in response to his motion for preliminary injunction, as Plaintiff indicates, the Fair Housing Act adopted the concept of "reasonable accommodation" from § 504 of the Rehabilitation Act and thus the analysis of Plaintiff's claims under the two statutes is the same. *See Groner*, 250 F.3d at 1044. As discussed *infra*, however, the Court concludes that Plaintiff is not likely to succeed on the merits of his claims under the Fair Housing Act and therefore the Court would conclude that he is not likely to succeed on the merits of his Rehabilitation Act claims as well. Thus even if the Court granted Plaintiff's request to evaluate his preliminary injunction motion under the Rehabilitation Act and found that the Eleventh Amendment is not a bar to his claim, it still would reach the same ultimate decision– i.e. that his motion must be denied.

*v. Dehaan*, No. 90-2190, 1991 U.S. App. Lexis 22135, at *8 (6th Cir. 1991) (unpublished opinion).

Plaintiff also argues in his reply brief that he can avoid the bar of the Eleventh Amendment by seeking leave to amend his Complaint to name individual University officials, acting in their individual capacities, as defendants. Plaintiff in fact filed a proposed First Amended Complaint as an exhibit to his motion on January 9, 2009. (Doc. 11 Ex. 2). As indicated above, the Eleventh Amendment would not bar Plaintiff from pursuing injunctive relief against University officials sued in their individual capacities. Plaintiff, however, has not been granted leave to file his Amended Complaint and the individuals named in his proposed First Amended Complaint have not been served with his lawsuit. Therefore, at this time, the Court cannot grant Plaintiff's motion for preliminary injunction against those individuals and finds that his Fair Housing Act claims against the currently named Defendant are barred by the Eleventh Amendment.

### C. 42 U.S.C. § 3604(f)

As indicated in Section II *supra*, Plaintiff alleges that Defendant's refusal to modify or waive its housing policy restricting on-campus housing to students enrolled in degree-earning programs violates § 3604(f) of the Fair Housing Act. Section 3604(f)(1) of the Act makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap . . ." 42 U.S.C. § 3604(f)(1). Section 3604(f)(3) defines "discrimination" as including *inter alia* "a refusal to make reasonable accommodations in rules, policies, practices, or services,

12

when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; . . ." *Id*. § 3604(f)(3)(B).

To establish a claim under § 3604(f)(3)(B), a plaintiff must show that: (1) he suffers from a "handicap"; (2) the defendant knew of the handicap; (3) accommodation of the handicap is necessary to afford the plaintiff an equal opportunity to use and enjoy the housing in question; and (4) the defendant refused to make such an accommodation. *See Schanz v. Village Apartments*, 998 F. Supp. 784, 791 (E.D. Mich. 1998) (citing *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997). In addition, the plaintiff must show that the requested accommodation is "reasonable." *Groner*, 250 F.3d at 1044-45. "An accommodation is reasonable when it imposes no 'fundamental alteration in the nature of a program' or 'undue financial and administrative burdens.'" *Id*. at 1044 (quoting *Smith & Lee Assoc., Inc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996)). In response to Plaintiff's motion for preliminary injunction, Defendant challenges Plaintiff's ability to show that an accommodation is necessary to afford Plaintiff an "equal opportunity to use and enjoy" on-campus housing and that the requested accommodation is "reasonable."

Specifically, relying on *Schanz*, Defendant maintains that Plaintiff's requested accommodation is not necessary to afford him an "equal opportunity" to use and enjoy on-campus housing because all students not enrolled in a degree-granting program (whether they are or are not handicapped) are ineligible for such housing. Defendant also argues that Plaintiff's requested accommodation is not reasonable because it would

13

fundamentally alter the university's housing policy.

In *Schanz*, the defendant-apartment owner rejected the mentally impaired plaintiff's rental application based on the plaintiff's inability to meet the apartment owner's income and credit requirements. 998 F. Supp. at 786. Finding that the plaintiff's financial situation and not his handicap prevented him from obtaining an apartment, Judge Gadola held that an accommodation was not necessary to afford the plaintiff the opportunity to use and enjoy the dwelling equal to non-handicapped persons. *Id*. at 792. Judge Gadola reasoned that "'. . . the concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life *by ameliorating the effects of [his or her] disability*.'" *Id*. at 791 (quoting *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995)) (emphasis added). Concluding that the plaintiff was requesting an accommodation to ameliorate the effects of his financial situation, not his disability, Judge Gadola held that an accommodation was not necessary under the Fair Housing Act. *Id*. (citing *Bronk*, where the court held that a landlord was not required to waive its pet policy as a reasonable accommodation since the pet had no relation to the plaintiff's handicap of deafness: "if [the] dog had been a 'hearing dog' than a reasonable accommodation would be necessary and appropriate.")

As Defendant demonstrates, it is not Plaintiff's disability but the fact that he is not enrolled in a degree-granting program that prevents him from securing University on-campus housing. Plaintiff argues that it is "due to [his] disability that he cannot be admitted to the University through its regular admissions process or be in a program that

leads toward a degree." Judge Gadola responded to a similar argument in *Shanz*, reasoning that "such a contention is nothing more than an attempt by [the plaintiff] to transform his 'financial status' into a 'handicap' in order to secure relief under [the Fair Housing Act]. 998 F. Supp. at 792. The court concluded that "this argument . . . clearly stretches [the Fair Housing Act] beyond its intended bounds." *Id*.

The Second Circuit rejected a similar argument in *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 301 (2d Cir. 1998), where the plaintiffs argued that their economic status resulted from their being handicapped and that their landlord therefore should be required to participate in the Section 8 housing program as an accommodation under the Fair Housing Act. The court reasoned: "We think it is fundamental that the law addresses the accommodation of handicaps, not the alleviation of economic disadvantages that may be correlated with having handicaps." *Id*. at 301 The court further reasoned that the requested accommodation would do more than afford the plaintiffs an "equal opportunity" to use and enjoy a dwelling; it would elevate the rights of the handicapped poor over the rights of the non-handicapped poor. *Id*. at 302; *see also Schanz*, 998 F. Supp. at 792 n. 15 (citing *Samuelson v. Mid-Atlantic Realty Co.*, 947 F. Supp. 756 (D. Del. 1996) for the proposition that the Fair Housing Act "does not entitle a handicapped person to a preference, but merely an equal opportunity.")

Based on the same reasoning, this Court concludes that Plaintiff's requested accommodation is not necessary to ameliorate the effects of his disability and to afford him an opportunity equal to non-disabled students to use and enjoy University on-campus

housing. Moreover, all University students not enrolled in a degree-earning program, whether disabled or not disabled, are not entitled to on-campus housing. Plaintiff's request that Defendant grant him a waiver to its housing policy would elevate the rights of a handicapped, non-degree seeking student over the rights of all other non-degree seeking students. For these reasons, the Court holds that Plaintiff is not likely to succeed on his claims under § 3604(f) of the Fair Housing Act.

## V. Other Preliminary Injunction Factors

The Court also believes that Plaintiff is not likely to suffer irreparable harm absent an injunction. As Defendant points out, Plaintiff has utilized public transportation to travel from his parents' home in Huntington Woods to Oakland's Rochester campus to attend classes for several years. Plaintiff does not indicate that he has suffered any harm during his past travels and thus there is no reason to believe that a preliminary injunction is necessary to avoid any risk to Plaintiff while his lawsuit is pending.

## VI. Conclusion

As set forth above, the Court concludes that Plaintiff has not demonstrated a likelihood of success on the merits of his claims in this lawsuit. For this reason, alone, the Court believes that his request for a preliminary injunction must be denied. However, the Court also finds this conclusion supported by its finding that there is no threat of irreparable harm to Plaintiff absent an injunction.

Accordingly,

**IT IS ORDERED**, that Plaintiff's Motion for Preliminary Injunction is **DENIED**.

                                          s/PATRICK J. DUGGAN
                                          UNITED STATES DISTRICT JUDGE

Copies to:
Chris E. Davis, Esq.
Robert A. Boonin, Esq.