# EXHIBIT 17



FOCUS - 7 of 782 DOCUMENTS

DAVID SUTTON, JR., Plaintiff-Appellant, v. ROBERT S. PIPER ET AL., Defendants-Appellees.

No. 08-2377

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

09a0530n.06; 2009 U.S. App. LEXIS 17201; 2009 FED App. 0530N (6th Cir.)

July 30, 2009, Filed

**NOTICE:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** [*1]
ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.
Sutton v. Freedom Square Ltd., 2008 U.S. Dist. LEXIS 81600 ( E.D. Mich., Oct. 15, 2008)

**COUNSEL:** DAVID SUTTON, JR., Plaintiff - Appellant, Pro se, Farmington Hills, MI.

For ROBERT S. PIPER, Designed Officer/Agent of Piper Realty Company, SUSAN GAINES, Property Manager, MARY O'BRIEN, On Site Property Manager, FREEDOM SQUARE, LIMITED, FCA SENIOR CITIZENS HOUSING CORPORATION, PIPER REALTY, Defendants - Appellees: Beth A. Andrews, Megan K. Cavanagh, Garan Lucow Miller, Detroit, MI; Caryn A. Gordon, Esq., Garan Lucow Miller, Detroit, MI; Roger A. Smith, Garan Lucow Miller, Troy, MI.

**JUDGES:** BEFORE: GILMAN and McKEAGUE, Circuit Judges; and SARGUS, District Judge. *

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

**OPINION**

**MEMORANDUM OPINION**

PER CURIAM. David Sutton, Jr., acting pro se, appeals a grant of summary judgment in favor of the defendants on his claims of **disability** and race discrimination under the Fair Housing Amendments Act, 42 U.S.C. § 3604

2009 U.S. App. LEXIS 17201, *; 2009 FED App. 0530N (6th Cir.)

Page 2

("FHAA"), and the Americans with Disabilities Act, 42 U.S.C. § 12182. Having carefully considered the parties' briefs on appeal, the record of the proceedings below, and the applicable law, we are [*2] not persuaded that a lengthy opinion is necessary.

Sutton applied for an apartment at defendant Freedom Square, Ltd., a tax-subsidized apartment complex. Freedom Square received tax credits for renting a number of its units to individuals who were sixty-two years or older or who were fifty-five years or older with a disability. When Sutton applied for an apartment, he was fifty-five years of age and claimed he was disabled.

Defendant Mary O'Brien, the apartment manager, ran a check of Sutton's credit. The apartment complex required a minimum credit score of 160. Sutton's credit score initially came back at 67; a subsequent score came back at 59. Based on the low credit score, the apartment complex rejected his application. (The apartment complex also cited to a criminal background report of Sutton, but Sutton disputed the accuracy of the report and the defendants concede that there was some confusion about the accuracy of that report.)

In response, Sutton initially suggested that he place into escrow three months' advanced rent. If his rent was "not paid through" the vouchers that he received under the federally-funded housing program, then the apartment complex would have the right to [*3] draw funds from the escrow account and Sutton would agree to vacate the apartment upon thirty days' notice. ROA 624. After twelve months, Sutton would be released from these restrictions and any escrow funds would be returned to him. Later, Sutton suggested "the use of a co-signor or other alternative arrangements" as a reasonable accommodation to him. ROA 625. The apartment complex declined and this lawsuit ensued.

Upon de novo review, we agree with the district court that summary judgment in favor of the defendants was proper. While we affirm for many of the same reasons set forth by the district court, *Sutton v. Freedom Square Ltd.*, No. 07-14897, 2008 U.S. Dist. LEXIS 81600, 2008 WL 4601372, at *3-8 (E.D. Mich. Oct. 15, 2008) (unpublished), we briefly highlight several additional points. The FHAA requires accommodation of a person's disability when "the rule in question, if left unmodified, hurts handicapped people *by reason of their handicap,* rather than by virtue of what they have in common with other people, such as a limited amount of money to spend on housing." *Wis. Cmty. Servs. v. City of Milwaukee,* 465 F.3d 737, 749 (7th Cir. 2006) (internal quotation marks and ellipsis omitted, emphasis in original). [*4] Stated a different way, "the FHAA's accommodation requirement is limited only to lowering barriers to housing that are created by the disability itself." *Id.* at 749 n.5. If a disabled person is able to satisfy this "necessity-causality" element, then the housing entity must make a reasonable accommodation to that person and such accommodation could include some sort of economic-financial component. *Id.* at 749; *see also Howard v. City of Beavercreek,* 276 F.3d 802, 805-06 (6th Cir. 2002) ("When analyzing whether an accommodation is required under this Act, the three operative elements are 'reasonable,' 'equal opportunity' and 'necessary.'").

A review of Sutton's credit report confirms that his poor credit history resulted from his own financial mismanagement and not his disability.[1] There is no question that his income was limited throughout the relevant time period--he indicated on his application that between his son and him, the two had annual income below $ 27,950. Yet, even though his combined family income was quite modest, he had a rather high outstanding credit balance of almost $ 24,000, with approximately $ 10,500 of that past due. Of the twenty or so items listed on his credit [*5] report, only three were listed

as paid; most were delinquent or sent to collection. One of the paid accounts was an auto loan through Mercedes-Benz Financial for $ 29,820. The auto loan was the largest account listed on the report and was paid off over sixty-one months. Sutton had negative credit items both before and after opening up and paying off that auto loan, confirming that his credit problems did not start after he had paid off that loan. Sutton could have afforded to keep current on some, most, or even all of his other accounts had he gone with a less expensive mode of transportation.

> 1 Although it is hardly clear from the record, we assume arguendo that Sutton was disabled prior to February 2006, when he first applied for residency at Freedom Square.

Even if his **disability** resulted in an inability to work, thereby resulting in low income that in turn caused him problems with his poor credit, Sutton also had to show that relaxing the minimum credit requirement was a reasonable accommodation to him. Again, a review of his credit history confirms that the requested accommodation was not reasonable. Sutton took out his Mercedes-Benz loan in January 2002 and it remained open for [*6] just over five years. During this time, Sutton opened several housing-related accounts, including ones for power and an apartment. Each of these accounts was sent to collections, including $ 4,971 on an account originating from The Lakes Apartments. The only inference to be drawn is that Sutton chose to pay off his Mercedes-Benz loan but not his housing-related debts.

Sutton relies in support on the Ninth Circuit's decision in *Giebeler v. M&B Associates,* 343 F.3d 1143 (9th Cir. 2003). In that case, Giebeler sought accommodation for his **disability** from an apartment complex. Before he became disabled, he had worked and earned an adequate income. After he became disabled, he supported himself through social-security **disability** and housing assistance. Giebeler had a consistent record of promptly paying his rent before and after his **disability** and "his credit record contained no negative notations." *Id.* at 1145. However, his **disability** and housing assistance was not sufficient to meet the apartment complex's minimum required income. Based on her income and an "unblemished credit record" (including paying off the mortgage on the home she lived in for twenty-seven years), Giebeler's mother [*7] did satisfy the standards, so he offered to have her cosign the lease. *Id.* at 1145, 1158. The apartment complex declined, citing its policy against cosignors. *Id.* at 1145. The Ninth Circuit concluded that the plaintiff had shown that his requested accommodation was reasonable on the particular facts of the case and that the defendant had failed to show that the accommodation would cause it to suffer undue hardship. *Id.* at 1158.

Sutton's situation differs materially from that of Giebeler's. Both persons had low income, but Sutton also had a very poor credit history while Giebeler's was good as was his mother's. Importantly, Sutton had a history of making timely payments on a relatively large auto loan while defaulting on housing-related expenses, including apartment rent. Sutton has pointed to nothing in the record to suggest that his proffered-but-unidentified cosignor had the kind of solid credit that Giebeler's mother had. His assertion in his appellate brief that his cosignor had "a good credit history," Appellant's Br. at 9, is without citation to the record and the letter in which he made the offer does not include anything about the cosignor's credit history, *see* ROA 625-26. Finally, [*8] Sutton's poor credit history involving housing-related expenses also undercuts the reasonableness of his suggested escrow arrangement, which would have lasted only one year.

Accordingly, for these reasons as well as those set forth by the district court, *Sutton,* 2008 U.S. Dist. LEXIS 81600, 2008 WL

2009 U.S. App. LEXIS 17201, \*; 2009 FED App. 0530N (6th Cir.)

Page 4

4601372, at \*3-8, we **AFFIRM** summary judgment in favor of the defendants.