UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICAH FIALKA-FELDMAN

                Plaintiff,

v.

OAKLAND UNIVERSITY BOARD
OF TRUSTEES, GARY D. RUSSI, MARY BETH
SNYDER, and LIONEL MATEN, in their
official capacity,

                Defendants.

_____/

Case Number 08-CV-14922

Hon. Patrick J. Duggan

**EXPEDITED CONSIDERATION
REQUESTED**

| | |
|---|---|
| Michigan Protection & Advocacy Service, Inc. | BUTZEL LONG |
| Chris E. Davis (P52159) | By: Robert A. Boonin (P38172) |
| Veena Rao (P2981) | Regan K. Dahle (P53975) |
| 29200 Vassar Blvd., Suite 200 | 350 S. Main Street, Suite 300 |
| Livonia, MI 48152 | Ann Arbor, MI 48104 |
| Phone: (248) 473-2990 | (734) 995-3110 |
| Email: cdavis@mpas.org | Email: boonin@butzel.com |
| Attorneys for Plaintiff | Attorneys for Defendant |

_____/

**PLAINTIFF'S MOTION FOR SUBSTITUTION OF DEFENDANT,
SUMMARY JUDGMENT AND PERMANENT INJUNCTION**

      The plaintiff, Micah Fialka-Feldman, by his attorney, Chris E. Davis of Michigan

Protection and Advocacy Service (MPAS), requests this Honorable Court to issue a declaratory

judgment and a permanent injunction, pursuant to 28 U.S.C. §§ 2201 and 2202, enforcing his

rights under the Fair Housing Act (FHA), 42 U.S.C. §1301 et seq.; the Americans With

Disabilities Act, Title II 42 U.S.C. §12131 et seq.; and Section 504 of the Rehabilitation Act of

1973, 29 U.S.C. § 794a.

For the reasons stated more fully in its attached brief, MPAS now moves for entry of summary judgment under Fed. R. Civ. P., Rule 56. Additionally, Plaintiff requests to substitute the OU Housing Director as the defendant in this matter pursuant to Fed. R. Civ. P. Rule 25(d).

Additionally, plaintiff requests expedited consideration of his motion. The winter semester starts in January 2010, and this will be the plaintiff's last semester attending Oakland University. Injunction relief will become moot by the end of the semester in May 2010.

Respectfully submitted,

Dated: November 16, 2009

s/Chris E. Davis
MICHIGAN PROTECTION &
ADVOCACY SERVICE, INC.
Attorney for Plaintiff
29200 Vassar Blvd., Suite 200
Livonia, MI  48152
(248) 473-2990
cdavis@mpas.org
P52159

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICAH FIALKA-FELDMAN                          Case Number 08-CV-14922

            Plaintiff,                          Hon. Patrick J. Duggan

v.                                           **EXPEDITED CONSIDERATION
                                             REQUESTED**

OAKLAND UNIVERSITY BOARD
OF TRUSTEES, GARY D. RUSSI, MARY BETH
SNYDER, and LIONEL MATEN, in their
official capacity,
            Defendants.
_____/

| | |
|---|---|
| Michigan Protection & Advocacy Service, Inc. | BUTZEL LONG |
| Chris E. Davis (P52159) | By: Robert A. Boonin (P38172) |
| Veena Rao (P2981) | Regan K. Dahle (P53975) |
| 29200 Vassar Blvd., Suite 200 | 350 S. Main Street, Suite 300 |
| Livonia, MI 48152 | Ann Arbor, MI 48104 |
| Phone: (248) 473-2990 | (734) 995-3110 |
| Email: cdavis@mpas.org | Email: boonin@butzel.com |
| Attorneys for Plaintiff | Attorneys for Defendant |

_____/

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUBSTITUTION OF
DEFENDANT, SUMMARY JUDGMENT AND PERMANENT INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

QUESTIONS PRESENTED ................................................................................................ v

INTRODUCTION ............................................................................................................. 1

PARTIES ........................................................................................................................... 1

FACTS ............................................................................................................................... 2

ISSUES & ARGUMENT .................................................................................................... 7

    A. Standard for Summary Judgment ............................................................................... 7
        1. The Plaintiff Is Entitled To Summary Judgment When Defendants Denied
           Plaintiff Housing Due To His Disability According To Their Own Statements
           And The Proffered Alternative Explanation Is A Mere Pretext. ............................... 7

        2. The Plaintiff Is Entitled To Summary Judgment When The Defendants Denied
           Him A Reasonable Accommodation After Failing To Do Any Analysis Of His
           Request And There Is Not Fundamental Alteration Of The Housing Program ....... 13

    B. Standard for Issuing a Permanent Injunction .................................................................. 18

        1. Plaintiff Success on the Merits .............................................................................. 18

        2. Balancing of the Equities ........................................................................................ 19

CONCLUSION .................................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505 (1986), 106 S.Ct. 2505,
91 L.Ed.2d  202.................................................................................................7,13

*Audi AG v. D'Amato***,** 469 F.3d 534, (6th Cir.Mich.2006)..........................................18

*Buckingham v. United States,* 998 F.2d 735, (9th Cir.1993).........................................14

*Burns v. City of Columbus,* 91 F.3d 836, (6th Cir.1996)................................................8

*Celotex Corp. v. Catrett*, 477 US. 317 ; 106 S.Ct. 2548; 91 L.Ed.2d 265 (1986)....................7, 13

*Copeland v. Machulis*, 57 F.3d 476 (6th Cir.1995)........................................................7

*Cousins v. Bray*, 297 F.Supp.2d 1027 (2003)...............................................................18

*Dews v. A.B. Dick Co.,* 231 F.3d 1016  (6th Cir. 2000)..................................................11

*eBay Inc., et al. v. MercExchange, LLC,* 547 U.S. 388, 126 S.Ct. 1837,
164 L.Ed.2d 641 (2006)..........................................................................................18

*Epicenter of Steubenville, Inc. v City of Steubenville,* 924 F.Supp 845 (1996) ...........................18

*Jones v. City of Monroe*, 341 F.3d 474, 477. C.A.6 (Mich.) (2003)................................8

*Kaltenberger v. Ohio College of Podiatric Med.,* 162 F.3d 432 (6th Cir.1998)...........................8

*Knapp v. Northwestern University,* 942 F.Supp 1191 (1996)........................................18

*Larkin v. State of Mich. Dept. of Social Services*, 89 F.3d 285 (6th Cir. 1996)...............................8

*McDonnell Douglas v Green*, 411 US 792, 36 L Ed 2d 668, 93 S Ct 1817 (1973)....................7, 8

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453 (6th Cir. 1997..................8

*Oxford House-C v. City of St. Louis*, 843 F.Supp. 1556 (E.D.Mo.1994).....................................10

*Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159
(3rd Cir. 2006)....................................................................................................13

*Street v. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989)..........................................7, 13

*Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565, (2nd Cir.2003)..........................................10

*Wong v. Regents of University of California,* 192 F.3d , 807(9th Cir. 1999).........................15, 16

*Zukle v. Regents of University of California,* 166 F.3d 1041 (1999).......................................13, 15

## STATUTES AND RULES

20 U.S.C. § 1040 ...................................................................................................................9

28 C.F.R. § 35.130...............................................................................................................13

29 U.S.C. § 794.........................................................................................1, 7, 13, 17, 18

42 U.S.C. §1301....................................................................................................................1, 7

42 U.S.C. §12131..................................................................................................................1, 7

42 U.S.C. 12133 ..................................................................................................................18

MCL 390.151..........................................................................................................................1

Fed. R. Civ. P. 25..................................................................................................................2

Fed. R. Civ. P. 56..................................................................................................................7

Fed. R. Civ. P. 65 ................................................................................................................18

Pub. L. No. 110-315..............................................................................................................9

## OTHER AUTHORITIES

99 F.R.D. 465 1984)...............................................................................................................7

# QUESTIONS PRESENTED

I.   Is The Plaintiff Entitled To Summary Judgment When Defendants Denied Plaintiff Housing Due to His Disability According To Their Own Statements And The Proffered Alternative Explanation Is A Mere Pretext?

    Plaintiff's Answer is: Yes

II.  Is The Plaintiff Entitled To Summary Judgment When The Defendants Denied Him A Reasonable Accommodation After Failing To Do Any Analysis Of His Request And There Is Not Fundamental Alteration Of The Housing Program?

    Plaintiff's answer is: Yes

## INTRODUCTION

This case is about Micah Fialka-Feldman, a student in the OPTIONS program at Oakland University (OU). The program's purpose is to provide students with cognitive impairments an inclusive age-appropriate, college experience and to better prepare them for employment opportunities. Unfortunately, the university did not live up to its promise of a fully inclusive environment when it denied the plaintiff's request to live in on-campus housing. Plaintiff is requesting this honorable court grant him summary judgment in this matter. He seeks a declaratory judgment, permanent injunctive relief as well as damages, under the Fair Housing Act (FHA), 42 U.S.C. §1301 et seq.; the Americans With Disabilities Act, Title II 42 U.S.C. §12131 et seq.; and, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a, for the defendants discriminatory actions that denied him housing.

## PARTIES

Plaintiff Micah Fialka-Feldman is a student at OU located in Rochester, Michigan. Micah is a 25 year-old man with cognitive impairments which substantially limit his ability to read, write and learn. *Exhibit #1.* He is currently enrolled in the OPTIONS program at OU and has been since the fall, 2007. *Exhibit # 2.*

Defendants, Oakland University Board of Trustees, are the governing body of OU. Pursuant to state law, MCL 390.151 et. seq., the Board has full authority to make all decisions relevant to this matter.

Defendant Gary D. Russi is OU's President and has been since 1996. He also has full decision making authority for the matters in this case and is sued here in his official capacity.

Defendant Mary Beth Snyder is Vice President of Student Affairs and Enrollment Management at OU. In that capacity, Ms. Snyder is responsible for student service programs

such as housing, the director of which reports to her. *Snyder Dep., pp. 5-6.* Defendant Snyder is sued in her official capacity.

Defendant Lionel Maten was the Director of University Housing at OU at all times relevant to this matter. In that capacity, he was responsible for the operation of the OU's dormitory and apartment facilities including the administration of its policies for student housing eligibility. He was sued in his official capacity and plaintiff seeks substitution of the current Director of University Housing to replace him as defendant, pursuant to Fed. R. Civ. P. 25(d).

## FACTS

Beginning in 2003, Micah attended classes at OU as a student in the Transitions program. This program allows students from Oakland County school districts to attend OU. The Rochester Community Schools served as the host school district for the program 2003-2006. *Fialka-Feldman Dep., p.17.* Eventually, Rochester Community Schools decided to restrict the program to only students from their own school district. *Feldman Dep., pp. 37-38.*

It was at this time that discussions began at OU to create a new program for the inclusion of students with cognitive and intellectual impairments; the OPTIONS program. *Id.* These discussions were led by Robert Wiggins, Associate Dean in the School of Education and Human Services. It was clear from the beginning; this was to be a fully inclusive program that would allow its students to experience all aspects of the university, academically and socially, with access to all of the services offered by the university. *Feldman Dep., p.39.* Dean Wiggins developed the OPTIONS Program and wrote to his superiors a proposal for the program. *Wiggins Dep., pp. 34-43. Exhibits # 3 & 4.* His proposal, which clearly alludes to the importance of housing, was accepted by the university. Additionally, early drafts of a

curriculum for the OPTIONS program included classes regarding skills for living in campus housing. *Exhibit # 5.*

The OPTIONS program is part of the School of Education and Human Services at the university. The program brochure described it as follows: "The OPTIONS Program at Oakland University is designed to provide a fully inclusive, age appropriate post-secondary education experience for students with mild cognitive disabilities. . . OPTIONS is a tuition-based program. Students are required to take a minimum of 12 credits per semester. Credits are billed at the regular OU tuition rate for undergraduate students." *Exhibit # 6.*

In the spring of 2007, at Micah's Person Centered Planning (PCP) meeting, "housing" was discussed as goal of his for the coming year. The OU Housing Director, Lionel Maten, and Assoc. Dean Wiggins attended. Micah's status as a "guest" student in the Transitions program was identified as an obstacle to university housing. *Feldman Dep., pp. 48-49; Maten Dep., pp. 36- 38.* Shortly after the PCP meeting, Micah and his father, Rich Feldman, took a pre-arranged tour of the dormitory housing at OU. Maten greeted them at the start of the tour. There were additional conversations between Mr. Feldman and Mr. Maten regarding the housing situation. *Feldman Dep., pp 53-59; Maten Dep., pp. 38-43.*

There were also discussions with Assoc. Dean Wiggins about how the students in the OPTIONS program could have access to housing as well as the services at OU. The family was led to believe that by removing the "guest" status through paying tuition and being issued a student identification card and number, the OPTIONS students would be fully enrolled students. *Feldman Dep., pp. 46-47.*

In the fall term 2007, Assoc. Dean Wiggins admitted Micah into the OPTIONS Program. *Wiggins Dep., p. 22.* Micah's parents paid his tuition to OU, which exceeds $10,000 a school

year. They do not receive assistance from any local, state or federal source to pay his tuition. *Feldman Dep., p. 41; Fialka Dep., p. 52.*

Micah signed his housing application on October 7, 2007, and the form indicates it was received on November 1, 2007. The application, "Contract for Residence Halls Services," that Micah completed listed on the backside the "Terms and Conditions." The terms and conditions did not contain a requirement that he be a matriculating student. The relevant part of the eligibility section stated: "I. ELIGIBILITY: To be eligible for University housing a student must be enrolled as a student at the University throughout the entire period of the Contract." *Exhibit # 7.*

There appears to have been a problem with Micah's application and his status as a registered student. But Assoc. Dean Wiggins resolved it along with the secretary in the housing department. *Exhibit # 8.* On November 14, 2007, Rich Feldman received an e-mail confirming Micah was approved and he could begin living in a dorm room on-campus on January 6, 2008. *Exhibit # 9.*

Then, on November 29, 2007, Micah Fialka-Feldman and his family were informed, by e-mail, that he was not eligible to live in the dorm. *Exhibit # 10.* The e-mail did not specify as to why he could not be in the dorms. Later, Micah received a letter from Lionel Maten dated, November 28, 2007, which denied his application for housing. The reason given by Mr. Maten was "you are not an admitted Oakland University student and are not registered for Winter 2008 classes." *Exhibit # 11.*

At the time of Maten's letter, Micah was a full-time OU student and was taking classes. He also intended and did in fact register for classes in the Winter 2008 term. He was in the

process of completing his registration for Winter 2008. Micah enrolled for and took classes during the Winter 2008 semester.

On December 3, 2007, the $100.00 deposit for housing was refunded to Rich Feldman. The check stub indicated it was from a "student" account. *Exhibit # 12.*

In March 2008, OU changed its "Contract for Residence Halls Services." The back-side of which included the "terms and conditions," which now included a requirement that residents be enrolled as matriculating students. *Exhibit # 13.*

Micah arranged a meeting with OU's Vice-President for Student Affairs, Defendant Mary Beth Snyder. *Fialka-Feldman Dep., pp. 142-144.* The meeting took place on May 22, 2008, and Defendant Snyder sent a letter the following day, which stated the reason for the denial of his application now was that; "The University maintains resident halls for individuals who meet our admissions requirements and are enrolled in coursework leading to a degree. From time to time we do house students from other universities who are earning credits for transfer to another institution. . ." *Exhibit # 14.*

OU has provided on-campus housing to students taking courses when they are not admitted to degree programs, including but not limited to, students in the English-As-A-Second-Language program. *Fialka Dep., pp.78-80; Feldman Dep., pp. 92-94.* During the Spring 2008, OU Professor Sharon Howell, who is a family friend of Micah's, spoke with Vice President Snyder on several occasions about Micah's housing application. It became clear from these conversations that Snyder did not believe the OPTIONS program could succeed and that, because of the affects of their disabilities, OPTIONS students were not capable of living in the dorms. *Exhibit # 15.*

In August 2008, Mr. Fialka-Feldman's parents met with Ms. Snyder and Mr. Maten. During this meeting Vice-President Snyder clearly indicated that the current application was the same as the one Micah had signed, which was false, and she was not open to changing her mind. *Feldman Dep., pp. 96-99; Fialka Dep., pp. 85-89.*

At a meeting of the Board of Trustees on September 17, 2008, Micah presented a petition asking the Board to change its decision and allow him to live on campus. The Board, according to the meeting's minutes, referred the matter to the administration to re-consider. *Exhibit # 16.* However, Vice-President Snyder conducted no further inquiry into the matter other than to verify Micah continued to be a non-matriculating student. *Snyder Dep., pp. 56-60 and 61-62.* In her opinion, no further inquiry was needed. On September 24, 2008, Vice-President Snyder sent a letter to Micah informing him that she would not change her decision. *Exhibit #17.*

On October 7, 2008, plaintiff's counsel sent a letter to legal counsel for OU, Victor A. Zambardi, requesting as a reasonable accommodation; specifically, that OU waive the "matriculating student" policy for Micah because he could not enroll in a program leading to a degree due to his disability. *Exhibit # 18.*

On November 5, 2008, the Board of Trustees received comments from the public regarding the housing situation. Also during this meeting, Vice-President Snyder gave the reasons for her decision. *Exhibit # 19.* One point she made in this statement was Micah's reading difficulties were a significant factor in her decision to deny Micah's housing request.

In a letter on November 7, 2008, OU's legal counsel denied the request for reasonable accommodation. *Exhibit # 20.* In a letter dated and faxed on November 14, 2008, plaintiff's counsel repeated his request for a reasonable accommodation on behalf Micah. *Exhibit # 21.*

OU's legal counsel again denied the requested reasonable accommodation by letter dated November 17, 2008. *Exhibit # 22.*

## ISSUES & ARGUMENT

### A.    Standard for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir.1995). See also, 99 F.R.D. 465, 470 (1984).   The moving party must show there is an "absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 US. 317, 322-3; 106 S.Ct. 2548; 91 L.Ed.2d 265. (1986).  The respondent must produce some evidence to raise a genuine issue to be submitted to the jury.  "The respondent must adduce more than a scintilla of evidence to over come the motion." *Street v. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989), 1479 citing *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct 2505, 2512, 91 L.Ed.2d 202 (1986).

### 1.    The Plaintiff Is Entitled To Summary Judgment When Defendants Denied Plaintiff Housing Due To His Disability According To Their Own Statements And The Proffered Alternative Explanation Is A Mere Pretext

Plaintiff moves for summary judgment, declaratory judgment and permanent injunction on Counts II, III, and V of the Second Amended Complaint for disparate treatment discrimination claims under the Fair Housing Act, Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, respectively.

Under the *McDonnell Douglas* burden shifting analysis, the plaintiff has the burden of proving his prima facie case.  If he is successful, the defendant must produce evidence of a nondiscriminatory reason for its actions.  If the defendant succeeds, the burden shifts back to the

plaintiff to prove that the proffered explanation is a pretext for the defendants' discriminatory actions. *McDonnell Douglas v. Green*, 411 US. 792, 802, 36 L.Ed.2d 668, 93 S.Ct. 1817 (1973). "To make out a *prima facie* case under Title II of the ADA, a plaintiff must establish that (1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." *Jones v. City of Monroe*, 341 F.3d 474, 477. (6th Cir.2003). relying on *Kaltenberger v. Ohio College of Podiatric Med.,* 162 F.3d 432, 435 (6th Cir.1998); and *also Burns v. City of Columbus,* 91 F.3d 836, 841 (6th Cir.1996) (setting forth the *prima facie* case under the Rehabilitation Act) The prima facie case for disparate treatment claims under each statute is the same. *Jones* at 477. citing, *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453, 459-460 (6th Cir.1997). Under the Fair Housing Act, plaintiff must show the defendants were motivated by intent to discriminate against disabled individual. *Larkin v. State of Mich. Dept. of Social Services*, 89 F.3d 285, 289 (6th Cir.1996).

There is no issue of fact that Micah is an individual with a disability. *Exhibits 1, 23 & 24.* OU admitted him into a program for persons who are cognitively impaired and that have learning disabilities. *Defendants' Answer to Second Amended Complaint, Docket Item # 31.*

**Otherwise Qualified:** Micah was qualified and eligible for housing as an enrolled student at OU in the OPTIONS program, pursuant to the eligibility standard at the time he signed his application. Micah has all the attributes of a university student. He participates in class discussions and frequently asks questions. He participates in group class projects and studies after class with fellow students. Micah works with peer tutors to help with note taking. He does not receive grades but he takes quizzes and tests. *Exhibits # 15, 25 & 26. Fialka-Feldman Dep., pp. 98-99.* He is enrolled for a minimum of 12 credits and has taken up to 15 credits during a

semester. He paid tuition at the same rate as all other students enrolled in a program leading to a degree. This is all in addition to Micah's deep involvement in the campus life of OU.[1]

Additionally, the defendants' have admitted that Micah is a student on numerous occasions. Micah was issued a student identification card once he was in the OPTIONS program. *Exhibit # 27.* The university's brochure, which Micah appears in, describes the participants in the program as "students." *Exhibit # 6.* In the Defendants' answer to the Second Amended Complaint, they admit Micah is enrolled in the OPTIONS program and it is a program of OU. *Answer Docket Item #31.* Finally, Wiggins even refers to Micah as a "registered student" in his e-mail to MORC. *Exhibit # 8.* It is clear that in their minds they considered and acknowledged that Micah is an enrolled student.

It's also clear that under a recently passed federal law *Higher Education Opportunities Act[2],* which for the first time makes financial aid available to college students with intellectual and cognitive disabilities, the federal government considers the participants in programs like OPTIONS to be students. The definition section of the act is codified at 20 U.S.C. § 1040.

The foregoing facts demonstrate clearly that Mr. Maten's letter rejecting Micah's application because he was not "an admitted Oakland University Student" is factually wrong. Additionally, Maten even admits in deposition that an "enrolled student" could be someone taking as little as one class. *Maten Dep., pp. 21-28.* A requirement Micah met. In fact, as member of the OPTIONS program he was required to take 12 credits.

---

[1] As mentioned in previous motions to the court, Micah participates in numerous school activities, over 25 courses at the University, member of Alpha Phi Omega fraternity, member of Hillel student organization, member of the leadership retreats at OU, Up Until Dawn, Peace Group, active in the student government election 2008, Social Work Club (formerly) and Sociology Club. *Exhibits #2, 15, 25 & 26. Fialka-Feldman Dep., pp. 104-112.*

[2] Pub. L. No. 110-315, signed August 14, 2008

Furthermore, Micah is able to live independently in the dorms at OU and does not require any supports to do so according to an "Independent Living Assessment" conducted by Disability Network Oakland & Macomb. *Exhibit # 28.*

**Denied Housing Because Of His Disability:**  The plaintiff must prove that a motivating factor behind the defendant's actions was his disability.  *Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565. (2nd Cir. 2003). One way a plaintiff can show this is by evidence that shows the defendants decisions are motivated by "stereotypes, unfounded fears, misperceptions and archaic attitudes as well as simple prejudice" concerning persons with disabilities. *Oxford House-C v. City of St. Louis*, 843 F.Supp. 1556 (E.D.Mo.1994), reversed 77 F.3d 249, certiorari denied 117 S.Ct. 65, 519 U.S. 816, 136 L.Ed.2d 27.

Micah was denied housing he was otherwise qualified for due to his disability. Ultimately, the decision to deny Micah's admission was made by Vice-President Snyder.  In her statement to the Board of Trustees on November 5, 2008, she made clear that the effects of Micah's disability were the basis for her decision.  *Exhibit # 19.*   She repeated these statements in her deposition. *Snyder Dep., pp. 23-24.*  More disturbing are the statements she made to Professor Howell.  In these conversations, Vice President Snyder clearly demonstrates a bias in regard to the OPTIONS program and was paternalistic in her comments about admitting Micah into the dorms. *Exhibit # 15.*

The above statements show the reason she denied Micah's request to live in the dorms was her perceptions that Micah's reading difficulty would prevent him from understanding the rules and requirements of living in a dorm.  Her perceptions have no basis in fact.  Additionally, her misperceptions lead to her conclusion that OPTIONS students would increase responsibilities for staff.   Micah is capable of understanding his responsibilities in spite of his reading

difficulties. As for the other OPTIONS students, Ms. Snyder is merely speculating about "increased responsibilities" for staff. She did no analysis of the actual facts of the matter by her own admission. *Snyder Dep., pp. 61-62.* This is a perfect example of someone basing their decision on "misperceptions and archaic attitudes" toward persons with disabilities.

**The Explanation Given Is A Pretext:** Defendants counter by proffering what appears to be a nondiscriminatory reason for their decision. Namely, that it's their practice and procedure that enrolled students means undergraduate students enrolled in a degree-granting program. *Snyder Dep., pp. 49-52.* A plaintiff can prove the proffered reason is a pretext, "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir.2000).[3]

The defendants' explanation has no basis in fact, beginning with the fact that they have changed the explanation numerous times. As explained above, the statement in Maten's letter of November 28, 2007, that Micah was not an enrolled student, was factually wrong. Additionally, his letter made no mention of matriculating student. See, otherwise qualified discussion. *Supra.*

The defendants then claimed Micah was not a matriculating student. The problem with this explanation is that the housing application form Micah signed did not contain a matriculating student requirement as a condition of eligibility. *Exhibit # 7.* OU then changed the application in March 2008, and claimed this was always their policy, including when Micah's parents met with V.P. Snyder and Maten in August 2008. *Feldman Dep., pp. 96-99; Fialka Dep., pp. 85-89.* OU claimed that the change in the form was merely an update of the form to have it reflect how they

---

[3] *Dews* was a Title VII, employment racial discrimination case. However, the methods for proving pretext would still be relevant to our case.

have always interpreted the form.  Both Snyder and Maten have admitted there are no policies or procedures that reflect how the form was previously interpreted.  In addition, an experienced housing department secretary, after thoroughly reviewing Micah's application and consulting with Assoc. Dean Wiggins, sent an e-mail to the family stating the application was approved and Micah was set to go on January 6, 2008. *Exhibits # 8 & 9.*  Furthermore if this was their policy, then there was no reason for Maten, the Director of Housing, to consult with Snyder before denying Micah's application.  *Maten Dep., pp. 46-48.*

Finally, defendants explain Roxanne's e-mail as a misunderstanding. They claim when she processed the application, she entered Micah's student ID# and it came up so she approved him.  Defendants claim that in the past this would not have happened.  But this was the first semester of the OPTIONS program and before this the students in the Transition Program did not receive a student ID number.  *Maten Dep., pp. 57-58.*

There are two problems with this explanation.  First, the fact the university issued Micah a student identification card is an admission on their part that they now considered Micah and the other OPTIONS students to be enrolled students at OU.  Secondly, the e-mail from Assoc. Dean Wiggins to Kim Dombrowsky, at MORC, proves that OU's initial approval of Micah's application was not a simple mistake that slipped through. The secretary did not just approve the application because it had a student ID number on it as they claim.  Assoc. Dean Wiggin's e-mail clearly states there was a "problem" with Micah's application and that he had conversations with the secretary, Roxanne, about the problem. He further stated in the e-mail, the problem was now resolved and they, the housing people, now understood Micah was a "registered student" and

there only remained a billing issue to be worked out.[4]   Far from being an error on the part of the housing department, it was an informed decision approving Micah's housing application.  It was overturned later for discriminatory reasons.

The defendants have no documentation to support their many explanations.  In contrast, plaintiff has numerous e-mails supporting our position, along with Maten's letter and the changed application forms.   Under the *Celotex-Bradford-Anderson* line of cases, to have a material issue of fact in dispute requires the defendants to produce more than their carying explanations for why they denied an otherwise qualified individual access to housing.  They have failed to produce anything and plaintiff is therefore entitled to summary judgment on this issue.

## 2.   The Plaintiff Is Entitled To Summary Judgment When The Defendants Denied Him A Reasonable Accommodation After Failing To Do Any Analysis Of His Request And There Is Not Fundamental Alteration Of The Housing Program

A school may not discriminate on the basis of a student's disability nor deny a reasonable accommodation to a disabled student. *Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 168 (3rd Cir. 2006).   Under Section 504 of Rehabilitation Act of 1973, 29 U.S.C. § 794a, a public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." *Zukle v. Regents of University of California,* 166 F.3d 1041, 1046 (1999)(quoting 28 C.F.R. § 35.130(b)(7)). "Mere speculation that a suggested accommodation is not feasible" falls short of the "reasonable accommodation" requirement; the Acts create "a duty to 'gather sufficient information from the [disabled individual] and qualified experts as needed to

---

[4] "I have been following up on this and spoke with Roxanne today. Micah's application has been accepted and is being processed. I straightened out the question of enrolled credits. They were looking at Total Credits and did not notice the entry under total CEUs. They now know that Micah is a registered student and it is a separate issue from the billing issue (which I am also pursuing). We do need to make sure Micah is registered for a winter class before January but that will be no problem." *Exhibit # 8.*

determine what accommodations are *necessary* to enable [the individual to meet the standards in question].' " *Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir.1993).

In the case at bar, Defendant Snyder advised Micah, in a letter dated May 23, 2008, that he was not eligible for housing since he was not an individual who met "admissions requirements" and was not "enrolled in coursework leading to a degree. *Exhibit # 14.* He received another letter from Defendant Snyder, dated September 24, 2008, wherein she informed him that her decision to deny him access to housing was "based on university housing eligibility criteria." *Exhibit # 17.* In a letter to university officials, Micah advised OU that due to his cognitive impairment he could not "enroll in a program or coursework leading toward a degree." *Exhibit # 18.* He then requested an accommodation from the "degree" seeking requirement so that he could be eligible for housing. Other than the "matriculating" student requirement, Micah met all the other requirements to be eligible for on-campus housing at OU. He was registered for and paid tuition for 12 to 15 credit hours. *Exhibit # 2.* OU requires twelve credit hours to be considered a full-time student and it is a requirement of the OPTIONS program as well. *Exhibit # 6.* The tuition rate for the OPTIONS program is the same as the tuition rate for students enrolled in a degree seeking program. *Exhibit # 6.* In denying his request for a reasonable accommodation, OU stated that "residency will not enable your client to be regularly admitted and enroll in coursework leading to a degree, nor is it necessary for his participation in the OPTIONS program." *Exhibit # 20.* On November 14, 2008, another letter was sent to OU stating that the reasonable accommodation being sought was waiver of the OU housing rule, "that only students enrolled in coursework leading to a degree" are eligible for on-campus housing. *Exhibit # 21.* On November 17, 2008, Oakland responded that it did not intend to grant any accommodation to Micah. *Exhibit # 22.*

The issue of the "reasonableness" of an accommodation request, depends on the individual circumstances of each case. The determination requires a "fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards." *Wong v. Regents of University of California,* 192 F.3d 807, 818 (9th Cir. 1999).

The plaintiff bears the "initial burden of producing evidence" both that a reasonable accommodation exists and that this accommodation would enable the plaintiff to "meet the essential eligibility requirements." *Zukle,* 166 F.3d at 1047. Production of such evidence shifts the burden to the defendant to produce rebuttal evidence that either (1) the suggested accommodation is not reasonable (because it would substantially alter the program), or (2) that the plaintiff is not qualified (because even with the accommodation, the plaintiff could not meet the eligibility standards). *See Id.*

In *Wong*, the Court noted that the University failed to present a record undisputedly showing that the Dean who refused to grant the plaintiff's request for an accommodation actually investigated the proposed accommodation to determine whether the School of Medicine feasibly could implement the accommodation being requested (or some alternative modification) without substantially altering the University's academic standards. *Wong*, 192 F.3d at 818 -819. The Court noted that factors such as the Dean not having responsibility for assessing appropriate accommodations, the fact that he simply passed messages to plaintiff through the registrar's office denying plaintiff's request without consulting plaintiff or any person at the University whose job it was to formulate appropriate accommodations lead it to conclude that there was a "conspicuous failure to carry out the obligation "conscientiously" to explore possible accommodations". *Wong*, 192 F.3d at 819. The *Wong* court found that none of the reasons

proffered by the University for denying the plaintiff accommodations were "relevant to the School of Medicine's curriculum or standards." The Court noted that "only in a declaration dated two months after this deposition did Dean Lewis assert that he denied the requested accommodation because it was "contrary to the purposes of the curriculum" and stated that an after-the-fact justification obviously does not satisfy the University's obligation to show that it conscientiously considered whether possible modification would fundamentally or substantially alter the school's standards when it decided that it could not reasonably accommodate the disabled student. *Id*. at 819.

In response to Micah's request for an accommodation from the "enrolled in a program or coursework leading to a degree" requirement, OU's only response was that he was not enrolled in a degree-seeking program. They did not proffer any other reasons for denying him an accommodation that would have allowed him to reside in on-campus housing. OU claimed that it would fundamentally alter the OPTIONS program. They did not review the accommodation request to see if the accommodation was reasonable in the context of the housing program. OU has never claimed that Micah was not eligible for housing in any other aspect of the program. Unlike the *Wong* case, the accommodation being sought is not an accommodation from an academic program or course-work of OU where OU is entitled to deference about its decision to deny Micah an accommodation. Rather, the accommodation being sought is an accommodation from a requirement, which would allow Micah to participate in the residential housing program. The only requirement of the housing program he cannot meet is that he cannot be admitted to a degree-seeking program at the university given the nature of his disability. Micah is enrolled in 12 to 15 credits per semester at OU in the OPTIONS program. He pays tuition at the same rate as

peers enrolled in a degree program at OU. He attends and participates in classes at OU. He intends to pay the full cost of living in on-campus housing.

OU promotes the residential life program as an important part of the educational experience: "Living on campus is the best way to fully experience college life. The on-campus experience offers students convenience, a sense of community, lasting friendships and many opportunities for involvement in student life."[5]  "Residential students live, eat, study, and socialize together in residence halls allowing them to have greater opportunities to make friends and to become socially integrated into the campus community. When you make the campus your home, you'll make the most of your college experience."[6] By establishing and maintaining a residential life program as part of its educational mission, OU has an obligation to provide this program to people with disabilities on a nondiscriminatory basis. Student housing, like all aspects of the educational experience, is encompassed in the place of public accommodation.

On-campus housing facilities such as dormitories, which are an integral part of the university experience, are certainly part of the "goods, services, facilities, privileges, advantages, and accommodations" offered by schools to its students. OU is required to provide such activities in a non-discriminatory manner. 29 U.S.C. § 794a. Despite this, Vice President Snyder and Director Maten conducted no analysis of weather the requested accommodation was feasible. *Maten Dep., pp. 59-62*; *Snyder Dep., pp. 56-59 and 61-62*.

Oakland has failed to meet its burden of showing that the accommodation being sought, waiver of the degree seeking requirement, would fundamentally alter the housing program at

---

[5] http://www.oakland.edu/housing/ *Exhibit # 29*
[6] http://www.oakland.edu/?id=7278&sid=3. *Exhibit #30*

Oakland or that even if the accommodation was granted, Micah is not eligible to reside in on-campus housing.  Plaintiff is entitled to summary judgment as a matter of law.

**B.**     <u>Standard for Issuing a Permanent Injunction</u>

Pursuant to Fed. R. Civ. P. 65(d), a plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted," and that it is in the public's interest to issue the injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir.Mich.2006) citing, *eBay Inc., et al. v. MercExchange, LLC,* 547 U.S. 388, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006).  Additionally, the movant must actually succeed on the merits of its claim and cannot rest, as it may when seeking a preliminary injunction, on a mere showing of a likelihood of success.

Each of the statutes plaintiff has sued under allows for injunctive relief.  Under the Fair Housing Act, See, *Cousins v. Bray*, 297 F.Supp.2d 1027, 1041 (2003) (Plaintiffs entitled to presumption of irreparable harm. This was a race discrimination case.), and *Epicenter of Steubenville, Inc. v City of Steubenville,* 924 F.Supp 845, 852 (1996) (Granting injunction even though plaintiff would not suffer irreparable harm but handicap community would.). The ADA, Title II allows for injunctive relief under 42 U.S.C. § 12133. Section 504 allows for injunctive relief under 29 U.S.C. § 794a, see also *Knapp v. Northwestern University,* 942 F.Supp 1191, 1198-1199, (1996) (Court found that denying plaintiff participation on basketball team to be irreparable harm.)

**1.**     **Plaintiff Success on the Merits.**  The merits of the plaintiff's claims were discussed in the preceding sections and for brevity will not be repeated.  Should the court find plaintiff has

succeeded on any of its claims, this would obviously satisfy this requirement for granting a permanent injunction.

**2.      Balancing of the Equities.**   Being denied equal access on the account of one's disability is itself an irreparable harm.  It is essentially a statement by the defendant to plaintiff that you are a second class citizen in our society.  This is the main reason why an injunction is an appropriate remedy to address a continuing violation of the plaintiff's civil rights.   Additionally, Micah would be denied his only opportunity to live in a dorm at his college and he would have to continue taking buses to school and looking for rides from friends to get home.  OU claims if the injunction was issued they may be forced to build additional housing.  This statement makes no sense when the total number of participants in the OPTIONS program is nine and only Micah has even expressed interest in living on campus.  Defendants also admitted that during part of the school year, they have unused dorm space.  *Snyder Dep., pp. 43-44.*  Finally, all three statutes in this case are statement by the U.S. Congress that it is in public's interest to see an end to discrimination based on a persons disability and a desire by Congress for more inclusive society.

**CONCLUSION**

Plaintiff requests this honorable Court consider this motion on an expedited basis due to the new semester starting in January 2010; substitute the current housing director in as a defendant, grant plaintiff summary judgment, declaratory relief and damages; and, issue an injunction enjoining the defendants to admit, rent to, and otherwise make available to the Plaintiff, and others similarly situated, a space in one of its on-campus dormitory living spaces. Plaintiff further requests any additional relief the Court deems just and appropriate, and equitable under the circumstances.

Respectfully submitted,

Dated: November 16, 2009         s/Chris E. Davis
MICHIGAN PROTECTION &
ADVOCACY SERVICE, INC.
Attorney for Plaintiff
29200 Vassar Blvd., Suite 200
Livonia, MI 48152
(248) 473-2990
cdavis@mpas.org
P52159

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2009, I electronically filed the foregoing Plaintiff's Motion for and Brief in Support of Substitution of Defendant, Summary Judgment and Permanent Injunction with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Robert A. Boonin.

s/Chris E. Davis
MICHIGAN PROTECTION &
ADVOCACY SERVICE, INC.
29200 Vassar Blvd., Suite 200
Livonia, MI 48152
248-473-2990
cdavis@mpas.org
P52159