UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICAH FIALKA-FELDMAN                              Case Number 08-CV-14922

        Plaintiff,                                  Hon. Patrick J. Duggan

v.

OAKLAND UNIVERSITY BOARD
OF TRUSTEES, GARY D. RUSSI, MARY BETH
SNYDER, and LIONEL MATEN, in their
official capacity,
        Defendants.
_____/

| | |
|---|---|
| Michigan Protection & Advocacy Service, Inc. | BUTZEL LONG |
| Chris E. Davis (P52159) | By: Robert A. Boonin (P38172) |
| Veena Rao (P2981) | Regan K. Dahle (P53975) |
| 29200 Vassar Blvd., Suite 200 | 350 S. Main Street, Suite 300 |
| Livonia, MI 48152 | Ann Arbor, MI 48104 |
| Phone: (248) 473-2990 | (734) 995-3110 |
| Email: cdavis@mpas.org | Email: boonin@butzel.com |
| Attorneys for Plaintiff | Attorneys for Defendant |

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

        The Plaintiff, Micah Fialka-Feldman, through his counsel, requests the Court deny Defendants' Motion for Summary Judgment for the reasons given below and those reasons more fully described in the attached brief in support.

        Defendants' Motion for Summary Judgment fails to meet the requirements of Fed. R. Civ. P 56 and the case law interpreting it, *Celotex Corp. v. Catrett*, 477 US. 317, 322-3; 106 S.Ct. 2548; 91 L.Ed.2d 265. (1986); *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct 2505, 2512, 91 L.Ed.2d

202 (1986), as to Plaintiff's reasonable accommodation and disparate treatment claims.  Plaintiff therefore respectfully requests the Defendants' motion be denied.

Plaintiff concedes that Summary Judgment would be appropriate on its disparate impact claims.

                                                 Respectfully submitted,

Dated: December 3, 2009               s/Chris E. Davis
                                                    MICHIGAN PROTECTION &
                                                    ADVOCACY SERVICE, INC.
                                                    Attorney for Plaintiff
                                                    29200 Vassar Blvd., Suite 200
                                                    Livonia, MI  48152
                                                    (248) 473-2990
                                                    cdavis@mpas.org
                                                    P52159

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICAH FIALKA-FELDMAN                            Case Number 08-CV-14922

        Plaintiff,                              Hon. Patrick J. Duggan

v.

OAKLAND UNIVERSITY BOARD
OF TRUSTEES, GARY D. RUSSI, MARY BETH
SNYDER, and LIONEL MATEN, in their
official capacity,
        Defendants.
_____/

| | |
|---|---|
| Michigan Protection & Advocacy Service, Inc. | BUTZEL LONG |
| Chris E. Davis (P52159) | By: Robert A. Boonin (P38172) |
| Veena Rao (P2981) | Regan K. Dahle (P53975) |
| 29200 Vassar Blvd., Suite 200 | 350 S. Main Street, Suite 300 |
| Livonia, MI 48152 | Ann Arbor, MI 48104 |
| Phone: (248) 473-2990 | (734) 995-3110 |
| Email: cdavis@mpas.org | Email: boonin@butzel.com |
| Attorneys for Plaintiff | Attorneys for Defendant |

_____/

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

QUESTIONS PRESENTED............................................................................................... iv

INTRODUCTION ...............................................................................................................1

PARTIES AND FACTS ......................................................................................................1

ISSUES & ARGUMENT ....................................................................................................1

       A.       Standard for Summary Judgment.................................................................1

       B.       Plaintiff's Reasonable Accommodation Request........................................1

              1.      Defendants' Failure to Conduct any Analysis of the Accommodation Requested by Plaintiff Precludes Dismissal of Plaintiff's Claim. Furthermore, Plaintiff is entitled to Summary Judgment on This Claim......................................................................................................1

              2.      The Court Should Conduct An "Individualized Inquiry" Into The Reasonableness Of An Accommodation Requested, In The Present Case doing so Demonstrates there is No Fundamental Alteration or Undue Burden...........................................................................................4

       C.       The Plaintiff's Disparate Treatment Claims...............................................9

              1.      Plaintiff Was An Enrolled Student At OU At The Time He Applied For Housing And Was "Otherwise Qualified" For The Housing Program.................................................................................................9

              2.      Defendants Changed The Housing Contract Creating The Matriculating Student Requirement In 2008 After Denying Plaintiff's Application And To Justify Their Actions............................................................................10

              3.      Defendant Snyder's Numerous Statements Are Proof Of Her Misperceptions And Paternalistic Attitude Toward Persons With Disabilities And Her Discriminatory Intent................................................11

CONCLUSION.............................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Cruz v. Pennsylvania Interscholastic Athletic Association*, 157 F.Supp.2d 485, 498
    E.D.Pen. 2001)........................................................................................... 6

*Jones v. City of Monroe,* 341 F.3d 474 (6th Cir. 2003).........................................6

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453
    (6th Cir.1997)..........................................................................................2, 5, 6

*PGA Tour, Inc. v. Martin,* 532 U.S. 661, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001)............6

*School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123,
    94 L.Ed.2d 307 (1987)...............................................................................6

*Southeastern Community College v. Davis*, 442 US 397, 409, 99 S.Ct. 2361,
    60 L.Ed.2d 980 (1979)..........................................................................2, 5, 6

*Wong v. Regents of University of California,* 192 F.3d 807 (9th Cir. 1999).......................2

# QUESTIONS PRESENTED

I. WHETHER THE DEFENDANTS' FAILURE TO CONDUCT ANY ANALYSIS OF THE ACCOMMODATION REQUESTED BY PLAINTIFF PRECLUDES DISMISSAL OF PLAINTIFF'S CLAIM?

   **Plaintiff's Answer: Yes**

II. WHETHER THE COURT SHOULD CONDUCT AN "INDIVIDUALIZED INQUIRY INTO" THE REASONABLENESS OF AN ACCOMMODATION REQUESTED?

   **Plaintiff's Answer: Yes**

III. WHETHER PLAINTIFF WAS AN ENROLLED STUDENT AT OU AT THE TIME HE APPLIED FOR HOUSING AND WAS "OTHERWISE QUALIFIED" FOR THE HOUSING PROGRAM?

   **Plaintiff's Answer: Yes**

IV. WHETHER DEFENDANTS CHANGED THE HOUSING CONTRACT CREATING THE MATRICULATING STUDENT REQUIREMENT IN 2008 AFTER DENYING PLAINTIFF'S APPLICATION AND TO JUSTIFY THEIR ACTIONS.

   **Plaintiff's Answer: Yes**

V. WHETHER DEFENDANT SNYDER'S NUMEROUS STATEMENTS ARE PROOF OF HER MISPERCEPTIONS AND PATERNALISTIC ATTITUDE TOWARD PERSONS WITH DISABILITIES AND HER DISCRIMINATORY INTENT.

   **Plaintiff's Answer: Yes**

# INTRODUCTION

The Defendants are not entitled to summary judgment on the reasonable accommodation nor the disparate treatment claims as set forth below. Defendants' motion lacks merit both in law and in fact and Plaintiff requests that it be denied. Additionally, Plaintiff requests the court to grant him summary judgment as explained in detail in his motion. *Docket Item # 39*.

# PARTIES AND FACTS

Plaintiff Micah Fialka-Feldman, relies upon the statement of Parties and Facts sections contained in his brief in support of his *Motion for Substitution of Defendant, Summary Judgment & Permanent Injunction, Docket Item #39, pp. 1-7*.

# ISSUES & ARGUMENT

A.  **Standard for Summary Judgment**

Plaintiff Micah Fialka-Feldman, relies upon the statement of Standard for Summary Judgment section contained in his brief in support of his *Motion for Substitution of Defendant, Summary Judgment & Permanent Injunction, Docket Item #39, p. 7*.

B.  **Plaintiff's Reasonable Accommodation Request**

   **1.  Defendants' Failure to Conduct any Analysis of the Accommodation Requested by Plaintiff Precludes Dismissal of Plaintiff's Claim.  Furthermore, Plaintiff is entitled to Summary Judgment on This Claim.**

The Plaintiff, Micah Fialka-Feldman, meets the "necessary" requirements to live in the on-campus dorms at Oakland University (OU). The only requirement he does not meet is that of

being a matriculating student.[1] Micah requested this requirement be waived for him as a reasonable accommodation due to his disability. He could not meet the requirement due to his cognitive impairment. His requests however were denied. *Exhibits # 14, 17, 20 and 22.*[2]

The Rehabilitation Act, requires recipients of federal funds, like OU, to make reasonable accommodations for persons with disabilities concerning procedures, policies and requirements of the university. *Southeastern Community College v. Davis*, 442 US 397, 409-411, 99 S. Ct. 2361, 60 L.Ed.2d 980 (1979). This includes waiving and altering perquisites that are not essential or otherwise do not fundamentally alter the nature of the program. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453, 461 (6th Cir.1997).

When determining whether an accommodation request is reasonable a recipient is required to make an informed inquiry into the reasonableness of the accommodation requested not merely rely on preconceived notions or conclusions. *Wong v. Regents of University of California,* 192 F.3d 807, 818-819 (9th Cir. 1999). For brevity Plaintiff will not repeat all of the arguments in Plaintiff's motion but instead incorporates them by reference and directs the court's attention to that brief as grounds for rejecting Defendants' motion. See Plaintiff's *Motion for Substitution of Defendant, Summary Judgment & Permanent Injunction, Docket Item #39, pp.13-17.* However, Plaintiff would point out that Vice-President, Snyder and former Housing Director, Maten testified they made no inquiry into the feasibility of the requested accommodation. Ms. Snyder in her deposition stated:

---

[1] Plaintiff for this section of the argument is assuming the court has found or may find the "matriculating student" rule is not pretext for the Defendants' otherwise discriminatory behavior. Plaintiff is NOT conceding this point in general but only for this section of the argument. Plaintiff will argue the rule is pretext in the next section of his argument.

[2] New exhibits for this Brief will be marked by a Letter (A, B, C ... etc.) but when referring to an exhibit previously used in Plaintiff's Motion for Summary Judgment it will be referenced by the exhibit number used in that brief.

> Q. What was entailed in the review that you did?
> A. The review was to ascertain whether or not his status in any way had changed with the university. Whether he had applied to the university, whether he was enrolled in a degree program at that point. And no, did I consult with anyone, I probably talked to someone in the registers office to ascertain whether or not any change had occurred.
> Q. Other than reviewing his student status, did you do any other review?
> A. No, I didn't.

*Snyder Dep. p. 60.*

Even when Vice –President Snyder was questioned by her own counsel, Mr. Boonin, she insisted she had done no analysis.

> BY MR. BOONIN:
> Q. Ms. Snyder, you testified that, about certain types of burdens that would exist if you were to allow nonmatriculated students into the dorms. I believe you said something that there could be space burdens, there could be financial burdens, there could be administrative burdens?
> A. I did.
> Q. Did you, are those all of the types of burdens?
> A. I can't say that those are all the types of burdens. I never did an analysis of the burdens because these OPTIONS people weren't students. I was never asked to do a full analysis.
> Q. And do you, never mind.

*Snyder Dep., pp. 61-62*

Mr. Maten also testified that he made no further inquiry other than to check whether Micah was in a degree granting program. The testimony of Mr. Maten and Ms. Snyder clearly demonstrates they had made up their minds and would not consider, make any inquiry or do any analysis as to whether Micah's accommodation request was reasonable. Mr. Maten stated:

> Q. You didn't make any inquiry into what that would look like, or you just pretty much said, that's the policy, it's not changing, I'm not making any further inquiry into it?
> A. I think we discussed earlier as to how that process occurred with Mary Beth and, you know, my question going to Mary Beth, and that's the process that I followed and that was the extent of the process.
> Q. Did you ever talk with anybody from disability support services in that department at all about this?
> A. Yes.

3

> Q. Who did you talk with here?
> A. Linda Sisson.
> Q. And what did you discuss with Linda?
> A. That meeting, whether or not, whether or not Micah met the enrollment, met the enrollment guidelines or policies and procedures and process to be a matriculated student at the university.
> Q. But did you discuss at all waiving that policy with her as an accommodation of a disability or anything of that nature?
> A. To the best of my knowledge at this current time I do not remember.
>
> *Maten Dep., p. 62.*

The Defendants never considered nor did they conduct any analysis regarding the Plaintiff's reasonable accommodation request. The only thing they did was to look at whether or not he was a matriculating student. They failed to evaluate the actual accommodation request. Rather they just kept repeating he is not a matriculating student. Given their failure to conduct an informed inquiry into the request by Micah, Defendants' motion for summary judgment should be denied.

**2. The Court Should Conduct An "Individualized Inquiry" Into The Reasonableness Of An Accommodation Requested, In The Present Case doing so Demonstrates there is No Fundamental Alteration or Undue Burden.**

The Defendants did not conduct an analysis of Micah's accommodation request at the point when they denied it. None of the denial letters discuss fundamental changes in the housing program, only that Micah is not a matriculating student. *Exhibits # 14, 17, 20 and 22.* Any reasons Defendants proffer regarding a fundamental alteration of the program have emerged only after this lawsuit was filed. Without conceding this point, Plaintiff will address the reasons now being proffered by Defendants and show that they fail and that Defendants violated the Rehabilitation Act.

The Defendants now argue that allowing the continuing education students into the housing program at OU would fundamentally alter the program and rely upon the *McPherson* case for their argument.[3] *Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Item # 37, pp. 14, 16.* The *McPherson* case should be limited to the unique set of facts in that case, i.e. competitive sports program, risk of injury to others, burden of doing extremely detailed analysis and evaluation of every individual applying for the waiver. In fact, the Court in *McPherson* was very concerned about the potential for injuries to others, a factor which is entirely absent in the present case. Another factual distinction is that Micah only seeks his place in line for available housing. He did not ask to take someone else's place in a dorm, unlike in *McPherson* which involved a competition sports program. Also, in *McPherson* the Court was faced with the situation of hundreds if not thousands of people applying for waivers. In our case there are only nine students in the OPTIONS program. The Court in *McPherson* also noted there was no suggestion of discrimination animus in the creation of the rule, unlike our case. *McPherson* at 14-15. (See pretext argument, *supra*.) Expanding *McPherson* beyond its unique set of facts would fundamentally change how the Rehabilitation Act of 1973 has been applied by the Supreme Court of the United States and the Sixth Circuit Court of Appeals.

The case of *Southeastern Community College v. Davis*, 442 US 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), involved an action against a school by a nurse with a hearing impairment who was denied admission to the school. The nurse requested a number of accommodations which the court found were not reasonable. The Supreme Court, in reaching its decision, defined a reasonable accommodation under Rehabilitation Act, as an accommodation which does

---

[3] Defendants' rely on a number of FHA cases for disputing the Plaintiff's 504 reasonable accommodation request. But the Court has already pointed out that there are significant distinctions between the two Acts, Docket Item #16, pp. 5-6.

5

not fundamentally alter the program and does not create an undue financial and administrative burden. *Id. at*. 410- 412.

In the case of *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), a teacher who was terminated because of her susceptibility to tuberculosis sued the school district under the Rehabilitation Act alleging discrimination based on her disability. In determining whether she could do the job with accommodations the Supreme Court held that whether an accommodation is reasonable is an "individualized inquiry" concerning the specific facts of the case. *Id. at 287*. The Court stated that such an inquiry was essential in order to protect the rights of persons with disabilities. *Id.* Furthermore, the Court reaffirmed the two part test articulated in *Davis*. *Id. n. 17*.

In the case of *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001), an ADA Title III case, the court held that reasonable accommodation requests require "an individual inquiry . . . to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work as a fundamental alteration." *Martin, at.*688. *Martin* involved a professional golfer who requested and was denied the use of a golf cart during tournament play as a reasonable accommodation.[4]

The Sixth Circuit recognized the "individual inquiry" with regard to reasonable accommodations in the case of *Jones v. City of Monroe,* 341 F.3d 474, 480 n. 9. (6th Cir.2003). The case involved a person with multiple sclerosis who received a number of parking tickets for parking the entire day in a one-hour parking zone. She used a wheelchair and needed to park

---

[4] The continued validity of the *McPherson* case has been called in to doubt in light of the Supreme Court's decision in *Martin*. See *Cruz v. Pennsylvania Interscholastic Athletic Association*, 157 F.Supp.2d 485, 498-499. (E.D.Pen. 2001)

close to work so requested, as an accommodation, to be allowed to park all day in the one-hour zone. The Court found this would defeat the very purpose of the ordinance which was designed to facilitate parking for both disabled and nondisabled shoppers in the business district. *Id.* In the case at bar, OU housing program would continue to offer housing and any educational benefit of the program would not be affected by Micah's presence. His presence certainly does not defeat the very purpose of the program rather it supports it. The purpose of on-campus housing is to provide housing for students of the university.

These cases clearly hold that when determining the reasonableness of an accommodation request an "individualized inquiry" is required. Micah requested that the matriculating student requirement be waived for him. An individual inquiry would look at the affects on the program if the rule is waived for him. In contrast, OU after failing to do any analysis at the time they rejected the accommodation request, now offers mere speculation about the affects of opening housing to <u>all continuing education students</u> and asserted it would fundamentally alter the program.

The primary purpose of housing is to provide housing for students at OU. The Housing Department's advertisements emphasize the social aspects and conveniences of their housing and make only a scant reference to academic aspect of housing. *Exhibit A*. Their own website offers testimonials that emphasize convenience and social aspects of housing. *Exhibit # 30.* Micah's presence in a dorm would not fundamentally change the housing program.

Micah meets all the other requirements of on-campus housing. He is a full time student, taking twelve credit-hours a semester. He pays tuition and intends to pay for housing. Micah attends academic classes on campus with non-disabled peers and does his homework. *Exhibit B*. There are absolutely no allegations that his presence has altered, burdened or disrupted any of

these classes. There is no reason to believe his presence in the dorms would be different. Micah has participated in classes and done homework. It is astounding that he is allowed to participate in academic classes without being deemed disruptive or a fundamental alteration of the program. Yet, his very presence in housing is deemed to be disruptive to his peers. Defendants' allegations have no basis in fact or reality.

The Defendants after having done no analysis at the time they denied Micah's request now claim that allowing him into housing would open the doors to all continuing education students. This novel argument ignores that OPTIONS students are fundamentally different from other continuing education students. OPTIONS students must take twelve credit-hours a semester at the full-rate of tuition. It is a condition of participation in the OPTIONS program. Other continuing education students are not required to be full-time students and can take as few classes as they choose. OU had the opportunity to make an individual inquiry into Micah's request but chooses instead to now proffer this baseless flood-gate argument.

Additionally, OU has made exceptions to the matriculating student requirement in the past. Students in the English-as-Second-Language program have lived on campus. *Feldman Dep, p. 93-94, Fialka-Feldman Dep. p. 78-79 .[5]* OU officials have admitted they have made exceptions for other programs also such as:

- Summer Camp Programs and Hostel Services. *Defendants Brief, p. 2.*
- Cooley Law School, See Application 2009-10 School Year. *Exhibit # C.*
- Other School's programs, *Maten Dep. p.63-65 .*
- Journalism programs. *Exhibit # 15.*

---

[5] The student's name is Deniz Cikis, she lived in the student apartments at OU, specifically apartment #5308B. She currently resides in Istanbul, Turkey, and Plaintiff is trying to get an affidavit from her.

Given the numerous exceptions OU has made to the matriculating student requirement, the Defendants' argument that granting the requested accommodation would fundamentally alter the program or create an undue burden is refuted by OU's current and past practices.

For the reasons stated above, Defendants' motion for summary judgment should be denied and instead Plaintiff's motion for summary judgment should be granted. In the alternative, the Court should conclude that there are "material issues of fact" in dispute that should preclude summary judgment for the Defendants.

C. **The Plaintiff's Disparate Treatment Claims**

Plaintiff Micah Fialka-Feldman, relies upon and incorporates by reference his Issues & Argument, Disparate Treatment section contained in his brief in support of his *Motion for Substitution of Defendant, Summary Judgment & Permanent Injunction, Docket Item #39, pp.7-13*.

**1. Plaintiff Was An Enrolled Student At OU At The Time He Applied For Housing And Was "Otherwise Qualified" For The Housing Program.**

There are points raised in the Defendant's motion that require some additional response but Plaintiff will be brief. First, the Defendants' claim that Micah did not meet the eligibility requirements for housing that existed at the time he filed his application. This claim is false and the undisputed facts in this case demonstrate Micah did meet the eligibility requirements before they were changed by the University officials.

Defendants claim that the term "enrolled student" is a term of art and is defined by the Integrated Postsecondary Education Data System (IPEDS). This definition has nothing to do with the housing program. Let us begin with, the common understanding of what the word "enrolled" means: "to write the name of (a person) in a roll or register; place upon a list;

register,"[6] by this definition, Micah was enrolled in classes at OU in the Fall 2007 when he applied for housing.  OU, after the fact, is attempting to assign a meaning to the word different from what it is commonly understood to mean.  OU cannot unilaterally assign a meaning to the term in the contract.  At the time of the application Micah was a full-time enrolled student in the OPTIONS program – the only set of full time students not allowed access to OU housing.

Secondly, despite what Defendants now claim, it is clear from the undisputed facts of this case that the Housing Department's staff did not use the IPEDS definition of "enrolled".  The e-mail from Associate Dean Robert Wiggins to Kim Dombrowsky and Rich Feldman proves that Micah was considered an enrolled student.  Dean Wiggins wrote:

> I have been following up on this and spoke with Roxanne today. Micah's application has been accepted and is being processed. I straightened out the question of enrolled credits. They were looking at Total Credits and did not notice the entry under total CEUs. They now know that Micah is a registered student and it is a separate issue from the billing issue (which I am also pursuing). We do need to make sure Micah is registered for a winter class before January but that will be no problem." *Exhibit # 8*

There are additional facts to support this, such as Mr. Maten providing a tour of the dorms to Micah and his father, (*Feldman Dep. p.48-49.*) and the acceptance e-mail by Roxanne Fisher at OU. *Exhibit # 10.*  Importantly, there was no confusion about what program he was enrolled in.  Micah clearly stated on his application that he was in the OPTIONS program.  *Exhibit # 7.*

**2. Defendants Changed The Housing Contract Creating The Matriculating Student Requirement In 2008 After Denying Plaintiff's Application And To Justify Their Actions.**

Defendants claim that the policy change had been planned since the summer of 2007. *Defendants' Brief, p.5.*  This claim is unsupported by any facts to date.  First, the Defendants

---

[6] Dictionary.com, http://dictionary.reference.com/browse/enrolled , accessed December 1, 2009.

have not provided any documentation to show that Vice-President Snyder approved the change in the summer of 2007. They have not presented any e-mails, memos or anything else to establish their claim. Defendants in their own brief admit the policy change was to "become effective for the 2008-2009 academic year." *Defendants' Brief, p. 5.* The Court should note that Micah applied in October 2007 and was denied in November 2007. This means that the Defendants' applied the new policy <u>retroactively</u> to Micah. The housing application was not changed to reflect the new policy until March 2008, and again, by their own admission was not to be effective until the Fall 2008. Defendants are reaching to find a "neutral" justification for their discriminatory actions.

**3. Defendant Snyder's Numerous Statements Are Proof Of Her Misperceptions And Paternalistic Attitude Toward Persons With Disabilities And Her Discriminatory Intent.**

The facts also reveal that there was a discriminatory purpose behind the Defendants' actions. Vice-President Snyder stated to the Board that due to Micah's inability to read, his presence would change the nature of the housing program. Exhibit # 19. She stated to Professor Howell "these kinds or programs [OPTIONS] never work" and that the OPTIONS students would not gain anything from the experience. She also stated she was concerned for Micah because of the potential behavior of other students toward him and she, rather paternalistically, was going to do what she thought was right. *Exhibit #15*.

Finally, pretext can also be shown by the fact they have allowed other nondisabled non-matriculating students into housing on campus. See argument, *infra*.

Micah met the requirements spelled out on the contract/application he signed in October 2007. OU changed their policy effective for the fall 2008, but retroactively applied it to Micah.

11

Ms. Snyder did this because of Micah's disability and based on her outdated perceptions and paternalistic attitude toward persons with disabilities. These are the undisputed facts in this case. Respectfully, Defendant's request for summery judgment of Plaintiff's disparate treatment claims should be denied. As demonstrated above the after-the-fact reasons Defendants now proffer for denying Micah's application were merely a pretext for their discriminatory actions.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Defendants' motion for summary judgment be denied and asks the Court instead to grant Plaintiff's motion for summary judgment and permanent injunction. In the alternative, Plaintiff requests the Court find that there are "material issues of fact" in dispute that should preclude summary judgment for the Defendants.

Respectfully submitted,

Dated: December 3, 2009

s/Chris E. Davis
MICHIGAN PROTECTION &
ADVOCACY SERVICE, INC.
Attorney for Plaintiff
29200 Vassar Blvd., Suite 200
Livonia, MI  48152
(248) 473-2990
cdavis@mpas.org
P52159

# CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2009, I electronically filed the foregoing Plaintiff's Response to Defendants' Motion for Summary Judgment with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Robert A. Boonin.

                                        s/Chris E. Davis
                                        MICHIGAN PROTECTION &
                                        ADVOCACY SERVICE, INC.
                                        29200 Vassar Blvd., Suite 200
                                        Livonia, MI  48152
                                        248-473-2990
                                        cdavis@mpas.org
                                        P52159