# EXHIBIT 4

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3088543 (W.D.Ky.)
(Cite as: 2005 WL 3088543 (W.D.Ky.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
W.D. Kentucky.
Rodney STEWART Plaintiff
v.
Joanne BARNHART University of Louisville, Defendants
No. Civ.A. 305CV314S.

Nov. 14, 2005.

Rodney Stewart, Louisville, KY, pro se.

MEMORANDUM OPINION AND ORDER

SIMPSON, J.

I. INTRODUCTION

*1 The plaintiff, Rodney Stewart, filed this *pro se* civil action, seeking declaratory and injunctive relief. He has also filed motions to amend (DN 4) and to supplement (DNs 9 and 17), which are GRANTED.

The complaint is before the court for review under 28 U.S.C. § 1915 and *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir.1997). Reviewing the multiple documents filed in this case was no easy task. The plaintiff filed a 42-page petition, followed by a 40-page "motion to replace" the petition along with 52 pages of exhibits (DN 4). He then filed a 9-page supplement followed by a 37-page petition (DNs 9 and 10).[FN1]

> FN1. The plaintiff also filed two motions for a hearing (DNs 12 and 13), a motion for emergency relief (DN 18), and a motion for prospective injunctive relief (DN 19), which will not be considered in reviewing his claims under 28 U.S.C. §

Many of the documents contain nothing more than quotations and analyses of case law and references to important documents such as the Magna Carta without any explanation or discussion as to why the plaintiff inserted them in his various filings. Interspersed between the quotations are references to the particular situations which caused the plaintiff to file suit in this court. In an attempt to provide the plaintiff with a fair and thorough review of his claims, the court directed him to file a clarification with the court which specifically set forth the basis of this court's jurisdiction, the identity of the defendants he wanted to sue, and the particular claims he wanted to bring against each one of the defendants. Unfortunately, his response only marginally clarified the claims he sought to pursue and the identity of the persons he wanted to hold legally accountable.

What follows is this court's best attempt at unraveling the plaintiff's claims. It believes that it has arrived at the heart of the plaintiff's grievance, to wit, the Social Security Administration's decision to suspend certain benefits and recoup overpayments it made to him. The court will dismiss all other claims with the exception of that particular challenge. And because the plaintiff is challenging the decision to terminate his benefits, the court will transfer the case to the docket of the Hon. Edward H. Johnstone, Senior Judge, U.S. District Court for the Western District of Kentucky, for further review pursuant to our court's General Order No.2004-1.

II. SUMMARY OF CLAIMS

In summarizing the plaintiff's claims, the court first turns to the clarification of claims and identification of defendants as set forth in docket entries 16 and 17. It then reviews his amended petition (DN 4) and supplements (DNs 9 and 10) to fill in the factual

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3088543 (W.D.Ky.)
(Cite as: 2005 WL 3088543 (W.D.Ky.))

Page 2

contours of his claims. Though the plaintiff extensively quotes case and statutory law to support his various claims, the court primarily focuses on the factual allegations contained in those documents.

The plaintiff's document clarifying his case is divided into five sections with the following headers: Social Security Administration, University of Louisville, Fair Debt Collection Practices Act, American[s] with Disabilities Act, and Conspiracy to Deny Civil Rights. See DN 16. In his motion to supplement his clarification (DN 17), the plaintiff adds a sixth section entitled Subject Matter Jurisdiction. The court has divided its discussion of these six sections into two sections. The first outlines the claims involving the Social Security Administration and its employees; the second outlines the claims against the University of Louisville and its employees.

A. Claims involving the Social Security Administration ("SSA") and its employees

*2 The crux of the plaintiff's complaint arises from the SSA's decision to suspend his participation in the Plan for Achieving Self-Support ("PASS").[FN2] In July 1994, the plaintiff began receiving Social Security Disability Income ("SSDI"). Because the payments were too high, he was not eligible for Supplement Security Income ("SSI"). In May 2002, he applied for and was accepted into the PASS program. With this acceptance, certain SSDI benefits were not counted toward his eligibility for SSI, and any SSI benefits he received were to be used to attend the University of Louisville.

> FN2. The SSA has adopted a program under which a claimant develops and pursues a vocational plan, a PASS, aimed at eliminating or significantly reducing the claimant's reliance on disability benefits. 20 C.F.R. §§ 416.1180, 416.1181. PASS allows income that would otherwise be counted against a disabled individual's SSI eligibility to be set aside if needed to further the plan. Id.

The plaintiff notes that the SSA suspended his PASS benefits on more than one occasion. On August 21, 2004, the SSA reinstated the plaintiff's eligibility for PASS, effective August 2004 through December 2004 (DN 4, Attach.). The SSA set forth his responsibilities in order to continue receiving the benefits. Id. On November 28, 2004, the SSA terminated his SSI payments because his other Social Security benefits were increasing (DN 17, Ex. A).[FN3] On December 23, 2004, the SSA terminated his PASS benefits (DN 17, Ex. D).[FN4] It based its decision on the fact that the plaintiff failed to file the requisite documentation to show compliance with the PASS program; he sought reconsideration. On March 14, 2005, the SSA sent the plaintiff a letter in response, which reads, in part:

> FN3. Pages 2 and 4 of this exhibit are missing.

> FN4. The plaintiff provided only the first page of this letter.

You do not agree with our 12/23/04 decision that your PASS is suspended effective 01/05. The suspension of your PASS also ends your eligibility to SSI payments.

We have determined that you did not follow your PASS beginning 08/04 and that your PASS will be suspended effective 08/04. We have corrected your record to show that your PASS ends 08/04 instead of 01/05.

On 8/21/04 your PASS was reinstated effective 08/04 because you would again be working toward your work goal of Criminal Justice. You would attend school again in 08/04 and would use $1152.00 of your Social Security each month to pay for or save for your approved PASS expenses (save for a car and pay for school related expense). Vocational Rehabilitation would pay for tuition and books.

To be following your plan, you would have to both be in school making academic progress and using

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3088543 (W.D.Ky.)
(Cite as: 2005 WL 3088543 (W.D.Ky.))

Page 3

the $1152.00 from your Social Security benefit on approved PASS expenses.

On 12/21/04, we requested that you send us evidence of your school attendance for 08/04 to the present. You have not sent us any evidence to show that you attended school at any time 08/04 to the present. Therefore, we must determine that because you did not follow your PASS beginning 08/04, your PASS is suspended effective 08/04.

(DN 17, Ex. B). The SSA is also recouping what it deems to be SSI overpayments made to him for the PASS program.

The plaintiff claims that the benefits were wrongly terminated because he complied with the requirements for participating in the PASS program. He also claims that he was deprived of the benefits without the requisite due process protections. It appears, however, that he is still involved in the appeal process of this decision for his petition states that "complete exhaustion of remedies is not always necessary." And he further claims that "pursuit of further remedies would be fruitless" (DN 16, pp. 1-2). With respect to this claim, the plaintiff maintains that the court possesses subject matter jurisdiction pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 551 *et seq.* He also claims that SSA employees Cathy Miller and Randall Griffin retaliated against him by denying benefits in violation of 42 U.S.C. §§ 405(g), 1983 and 1985, and 5 U.S.C. § 551 because he complained about how they handled his case.

*3 The plaintiff wants the court to issue injunctive relief that directs the "SSA (Secretary) [to] stop the collection of unwarranted overpayments" (DN 10, p. VIII). The plaintiff lists other forms of injunctive relief he seeks, but because his language is frequently disjointed, the court cannot determine what other form of injunctive relief he may be seeking.

B. Claims involving U of L and its employees and employees of Kentucky Vocational Rehabilitation Center.[FN5]

FN5. In DN 16 (in which the plaintiff was to clarify his claims and specifically identify the defendants), on page 3 he refers to a Marian Barger as a defendant. He also bolds the names of Cathy Pathus and Dale Billingsley. However, he failed to specifically identify his claims or set forth the facts to support any particular claim against them. The court will therefore not undertake a review of claims purportedly brought against these U of L employees.

The plaintiff also brings claims against U of L and some of its employees. A collateral consequence of the plaintiff's losing PASS eligibility and benefits is his loss of university housing. He claims that it is against policy (presumably U of L's policy) for an individual to live in student housing when the individual is not a registered student (DN 16, p. 3). He states that during the spring semester, he was living in student housing notwithstanding the fact that he was not enrolled in school. He claims he was not a registered student because the SSA cancelled his PASS benefits. He sought an "accommodation" from U of L, specifically seeking permission to stay in university housing until the summer school session began. U of L denied his request. At some point, it locked him out of his apartment by changing the locks. Because U of L refused his accommodation request, he charges U of L with violating the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. He also charges the school with evicting him and taking his property in violation of the Fourteenth Amendment's guarantees of due process and equal protection of the laws.[FN6] And, he brings official capacity claims against unidentified university employees for depriving him of due process and equal protection of the laws.

FN6. The plaintiff also claims that he has lost training opportunities, Medicaid benefits, and SSI payments, and was required to spend personal funds to cover medication

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3088543 (W.D.Ky.)
(Cite as: 2005 WL 3088543 (W.D.Ky.))

Page 4

typically covered by Medicaid (DN 16, p. 2).

FN7. In an earlier pleading, DN 9, the plaintiff speaks of U of L's violating the Fair Housing Act. Because this claim was not discussed in the plaintiff's explanation of claims he seeks to pursue, the court construes it as abandoned and will not consider it in this review.

The plaintiff also charges U of L employees Pam Miller and Donald Barnett and Kentucky Vocational Rehabilitation Center employees Nina Stiglitz and Pam Jarboe, with violations of the Fair Debt Collection Practices Act, codified at 15 U.S.C. § 1692 *et seq.*, for improperly taking money from his student account that was earmarked for rent and applying it to a debt owed to the Kentucky Vocational Rehabilitation Center. And he charges that U of L conspired to deprive him of his Fourteenth Amendment right to due process "by knowingly and wantonly evicting plaintiff under the pretext of rules governing student housing."(DN 16, p. 4)

The plaintiff wants the court to direct U of L to provide him with the keys to the university apartment from which he was evicted (DN 10, p. VIII).

### III. STANDARD OF REVIEW

The federal *in forma pauperis* statute mandates that a trial court shall dismiss a civil action at any time, if the court determines that an action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke,* 490 U.S. at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.,* 289 F.3d 417, 424 (6th Cir.2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted, "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir.2000).

*4 While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions. *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir.1996); *see also Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Therefore, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988).

### IV. ANALYSIS

**A. Claims against U of L and its employees**

**1. ADA/Rehabilitation Act claims remaining in student housing**

The plaintiff claims that U of L, a state institution, violated Title II of the ADA and the Rehabilitation Act by denying his request for an accommodation to remain in student housing notwithstanding the fact that he was not a student enrolled at the university. The ADA prohibits discrimination on the basis of disability. Title II of the ADA provides: "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participa-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3088543 (W.D.Ky.)
(Cite as: 2005 WL 3088543 (W.D.Ky.))

Page 5

tion in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."42 U.S.C. § 12132. To state a claim of disability discrimination under Title II of the ADA, the plaintiff must allege that (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. *Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir.2003). A plaintiff must allege the same elements to state a claim under the Rehabilitation Act. *Mahon v. Crowell,* 295 F.3d 585, 589 (6th Cir.2002).

The facts alleged in the complaint do not establish a cognizable ADA or Rehabilitation Act claim. The plaintiff did not allege that he was denied a benefit solely because of his disability. Rather, as he admits, he was evicted from his apartment because he did not qualify for student housing because he was no longer enrolled at U of L. Accordingly, the court will dismiss these claims.

2. Fourteenth Amendment Due Process and Equal Protection claims

The plaintiff claims that U of L violated his Fourteenth Amendment rights to due process and equal protection when it evicted him from student housing and took his property without providing him a pre-deprivation hearing. He brought the same claims against university officials in their official capacities. Because he failed to identify the specific employees who purportedly violated these rights, the court can only consider the claim as asserted against U of L.

The Sixth Circuit does not recognize direct constitutional claims because 42 U.S.C. § 1983 "is the exclusive remedy for the alleged constitutional violations" by state actors. *Thomas v. Shipka,* 818 F.2d 496, 499 (6th Cir.1987) ("[I]n cases where a plaintiff states a constitutional claim under 42 U.S.C. § 1983, that statute is the exclusive remedy for the alleged constitutional violations."), *vacated and remanded on other grounds,* 488 U.S. 1036, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989); *see also Azul-Pacifico, Inc. v. City of Los Angeles,* 973 F.2d 704 (9th Cir.1992) ("[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.").

*5 To state such a claim, a plaintiff must allege that a "person" acting under color of state law deprived the plaintiff of a right secured by the Constitution or federal law. *Flagg Bros. v. Brooks,* 436 U.S. 149, 155-57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The University of Louisville is a state institution. *Martin v. Univ. of Louisville,* 541 F.2d 1171 (6th Cir.1976); *compare Hutsell v. Sayre,* 5 F.3d 996 (6th Cir.1993) (holding that the University of Kentucky is an arm of the state). States, state agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Moreover, under the Eleventh Amendment to the United States Constitution, this court is deprived of jurisdiction over claims asserted directly against the Commonwealth. *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Accordingly, the court will dismiss these claims.

3. Fair Debt Collection Practices Act

The plaintiff claims that U of L Bursars Office employees Pam Miller and Donald Barnett violated the Fair Debt Collection Practices Act ("FDCPA") by improperly deducting money from his student account to pay a debt owed to the Kentucky Vocational Rehabilitation Center. He claims that the U of L Bursar's Office refused to properly credit his account once he brought this fact to its attention. He also charges Kentucky Vocational Rehabilitation Center employees Nina Stiglitz and Pam Jarboe with this same violation.

The purpose of the FDCPA is "to eliminate abusive

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3088543 (W.D.Ky.)
(Cite as: 2005 WL 3088543 (W.D.Ky.))

Page 6

debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."15 U.S.C. § 1692(e). *Wright v. Fin. Serv. of Norwalk,* 22 F.3d 647, 650 (6th Cir.1994). The FDCPA applies only to "debt collectors," which the statute defines as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."15 U.S.C. § 1692a(6) (2000) (emphasis added); *see also* S.Rep. No. 95-382, at 3 (1977) ("[T]he term 'debt collector,' ... cover[s] all third persons who regularly collect debts for others[, and] the primary persons intended to be covered [by the FDCPA] are independent debt collectors."), reprinted in 1977 U.S.C.C.A.N. 1695, 1697. And "[t]he requirement that debt collection be done 'regularly' would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business."*Id.*

The plaintiff does not allege that the named employees of U of L, a public university, or the Kentucky Vocational Rehabilitation program, a state agency, regularly engage in the collection of debts owed to another or that the entities themselves primarily engage in collecting debts owed to another party. In fact, U of L's primary purpose is "to give instruction at the college level...."Ky. Rev. St. Ann. § 164.300. And the primary purpose of the Kentucky Department of Vocational Rehabilitation, a department within the Workforce Development Cabinet as set forth in Ky. Rev. St. Ann. § 12.020, Sec. II, (9)(c), is to "improve the vocational rehabilitation of citizens of the Commonwealth of Kentucky with physical and mental disabilities in order that they may increase their social and economic well-being and the productive capacity of the Commonwealth and the nation."Ky. Rev. St. Ann. §

151B.180. Accordingly, the court will dismiss the FDCPA claims.

4. Conspiracy to deny civil rights

*6 In response to the court's direction to clarify his claims, the plaintiff accuses U of L of conspiring to deprive him of his constitutional right to due process by evicting him without a hearing (DN 16, p. 4). He claims it did so because he registered complaints about actions taken by some of its employees.

To set forth a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must prove: 1) a conspiracy involving two or more persons; 2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; 3) and an act in furtherance of the conspiracy; and 4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Smith v. Thornburg,* 136 F.3d 1070, 1078 (6th Cir.1998); *Collyer v. Darling,* 98 F.3d 211, 223 (6th Cir.1996). The plaintiff must also show that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Smith,* 136 F.3d at 1078. Here, by the plaintiff's own admission, he claims that U of L conspired to deprive him of his constitutional rights because he registered complaints, not because it was "motivated by racial, or other class-based, invidiously discriminatory animus."The plaintiff failed to state a cognizable conspiracy claim against U of L, and the court will dismiss the claim.

B. Claims against the SSA and its employees

1. Termination of benefits

The plaintiff seeks review of the SSA's decision to terminate his PASS and SSI benefits.[FN8] Judicial review of the plaintiff's claim is governed by 42

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3088543 (W.D.Ky.)
(Cite as: 2005 WL 3088543 (W.D.Ky.))

Page 7

U.S.C. §§ 405(g) and 405(h). Section 405(g) provides, in part:

> FN8. When the SSA suspended his participation in PASS, the decision also terminated his eligibility to receive SSI (DN 17, Ex. B).

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides....
Section 405(h) specifically bars any review of the decision "by any person, tribunal, or governmental agency except as herein provided."This section, therefore, requires those contesting the decisions of the Commissioner of Social Security to present their claims to the agency and to exhaust avenues of administrative relief before filing an action in federal court. *BP Care, Inc. v. Thompson,* 398 F.3d 503, 508 (6th Cir.2005).

Chapter III, Title 20, of the Code of Federal Regulations ("C.F.R.") sets forth the proper administrative procedure for challenging the SSA's decision to terminate benefits. Following the initial determination, a dissatisfied claimant may seek reconsideration, which is deemed the "first step in the administrative review process."*See* 20 C.F.R. § 416.1407. After reconsideration, the claimant may request a hearing before an administrative law judge ("ALJ").20 C.F.R. § 416.1429. After the ALJ has issued a decision, further review may be sought before the Appeals Council. 20 C.F.R. § 416.1467. Only after the Appeals Council has issued a decision is there a "final decision" by the Commissioner within the meaning of § 405(g), and the claimant may seek review of that decision in a federal district court. 20 C.F.R. § 416.1481; *Willis v. Sullivan,* 931 F.2d 390, 396 (6th Cir.1991).

*7 In reviewing the plaintiff's various documents, it is clear that the plaintiff has not exhausted his remedies with the SSA. He sought reconsideration in December 2004 (DN 17, Ex. F). On March 14, 2005, the Social Security Administration issued a notice of reconsideration, which denied his request to reinstate his PASS benefits. *Id.* at Ex. B. A week later, the SSA issued a notice to the plaintiff, explaining that he was no longer eligible for SSI benefits. *Id.* at C. That notice, too, explained to the plaintiff how he could appeal this decision. It is unclear whether he has pursued those remedies. In filing this civil action, he noted that exhaustion would be futile and that he would suffer irreparable harm were he forced to exhaust before seeking redress of his grievance.

The plaintiff may be entitled to waiver of the exhaustion requirement. A court may determine that a waiver is appropriate where exhaustion of administrative remedies would be futile, *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), or the claimant's legal claims are collateral to the demand for benefits, *Oakland Med. Group v. Sec'y of Health & Human Serv.,* 298 F.3d 507 (6th Cir.2002), or that the claimant would suffer irreparable harm pending exhaustion of administrative remedies. Because the plaintiff essentially claims waiver is warranted for all three reasons, the court will allow this particular challenge to go forward at this time.

2. Retaliation claims against employees Cathy Miller and Randall Griffin

Finally, the plaintiff claims that certain SSA employees, Cathy Miller and Randall Griffin, terminated his benefits in retaliation for his complaints about their handling of his case. The plaintiff asserted his claims under 42 U.S.C. §§ 1983 and 1985. Neither of these statutes provides the basis for the causes of action the plaintiff seeks to assert.

Section 1983 provides a statutory remedy where a plaintiff claims that he was deprived of a right,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3088543 (W.D.Ky.)
(Cite as: 2005 WL 3088543 (W.D.Ky.))

privilege, or immunity secured by the Federal Constitution or laws of the United States, which was caused by a person while acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Miller and Griffin are federal officers, not state actors. As for his § 1985 claim, the primary purpose of that statute is to provide a remedy for a plaintiff who claims that two or more persons conspired to deprive him of equal protection of the laws. The plaintiff charges these defendants with retaliation, not with conspiring to deprive him of equal protection of the laws involving a class-based, invidious discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Smith v. Thornburg*, 136 F.3d 1070, 1078. (6th Cir.1998).

While the plaintiff does cite *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) to show that the court has jurisdiction over his case and possibly these claims, *see* DN 17, the Supreme Court has foreclosed a *Bivens*-type claim for a plaintiff, who has alleged that a government employee violated his due process rights in the handling of his Social Security request for benefits. *See Schweiker v. Chillcky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). There, the Supreme Court held that the remedies for violations of the Social Security Act are provided for by the elaborate scheme devised by Congress and "when the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Schweiker*, 487 U.S. at 423; *see also Bivens*, 403 U.S. at 397 (noting that a *Bivens* remedy would not be available in cases of "explicit Congressional declaration" creating an alternative scheme). Moreover, the Social Security Act itself appears to preclude a *Bivens* remedy for the plaintiff. See § 405(h) which states that "[n]o action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under [Title II]." Because the plaintiff's claims are foreclosed by statutory and case law, they will be dismissed.

*8 The court will enter orders consistent with this memorandum opinion.

W.D.Ky.,2005.
Stewart v. Barnhart
Not Reported in F.Supp.2d, 2005 WL 3088543 (W.D.Ky.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.