Fialka-Feldman v. Oakland University Board of Trustees

Doc. 43 Att. 22

Dockets.Justia.com

Fialka-Feldman v. Oakland University Board of Trustees

Doc. 43 Att. 22

# EXHIBIT 21

Dockets.Justia.com

that will welcome me, that will provide me with environments that will challenge me. If I feel it's not going to be an environment that's not going to challenge me, not just academically, I'm not going to apply. I want an environment that challenges me, and I continue to look for that here at Oakland University. It has challenged me. Micah has challenged me in many ways, and I would encourage our university to continue that process of challenging our students. Thank you.

MADAM FOREMAN: Thank you, Mr. Hanna. Has Mr. Trorig arrived? Okay. We've asked our Vice President of Housing to address the Board, Dr. Snyder.

DR. SNYDER: Thank you Trustee Long and members of the Board for giving me the opportunity to provide a fuller explanation of what went into my decision to not allow the young people in the OPTIONS program to reside in university residence halls. I think it will help if I give a brief overview of the program first, and I want to apologize for reading this and for the length of it, but I felt that I wanted to cover all the bases.

For a number of years Oakland school -- Oakland University School of Education Human Services worked with the Rochester and Waterford school districts in helping youngsters with significant cognitive disabilities move beyond high school. That program, called Transitions, currently brings 13

high school students to Oakland on a regular basis to participate in activities that promote personal independence and social development. Our school of education extended the experience of these high school students by creating a program called Postsecondary OPTION Transitions, which is also now known as OPTIONS, that started in the fall of 2007, in order to open our doors to these students after their high school years, to help them further develop the self reliance and confidence necessary to move into an area of employment. I believe that OPTIONS is the only program of its kind in the state that works closely with the students and their families in our college setting using a combination of skill-building classes, university courses, social activities, and job-related experiencing to further participants' social development.

I feel I must clarify that although they spend considerable time engaged in an array of campus programs and services, and they do pay a program fee, the participants have not qualified for admission to the university. Each semester OPTIONS participants attend two O.U. classes along with a special OPTIONS class. The intended outcome is not that they master the academic subject matter, but rather that their class involvement helps them realize personal improvement goals and further stimulates them to want to learn more. Oakland professors who teach OPTIONS members have been willing

to individualize course expectations so the students succeed at their level of confidence, including giving them special exams orally or customizing assignments to get the best effort from each individual.  Perhaps one of the best features of the OPTIONS is the peer-buddy system where our Oakland students, many of them who are here today, volunteer to spend time assisting them during and after class with note taking and study skills sessions.

Beyond class work, we also welcome these young adults at any campus event and encourage them to join a club they enjoy.  We recently placed one OPTIONS participant in an internship at our Lowry Child Center that lead to employment. We encouraged them to become active members of the recreation center, and Micah Fialka-Feldman in particular has served as an assistant in our student activities center.  All of the OPTIONS students' scheduled activities bring them into close contact with university students and faculty and begin to expose them to the world of work.

Last Fall Micah decided that a more college-like experience for him should involve living in our residence halls, and subsequently we received contract requests from him and others in the program.  In weighing the feasibility of Micah's request my staff and I met with Micah and his parents on several occasions, spoke to faculty members who teach in the program, and discussed his situation at length with the

director of Oakland's Disability Support Services, the Director of University Housing, School of Education officials, and people from other state universities. In everything I heard it was never disputed that OPTIONS was designed as an educational alternative for individuals who cannot meet university admission requirements. Were they to qualify for admissions the participants would receive every appropriate accommodation available to our current population of 400 disabled students, along with full inclusion and on-campus housing. Would families select OPTIONS for their children, we must all understand that it does not come with an entitlement to live on campus. Oakland students who choose to live in our residence halls are afforded the opportunity to pursue their academic work in a setting that provides considerable independence, plus convenient access to the support systems that help them earn a degree.

The university expects personal accountability from its residential students in exchange for allowing them to live free from excessive restrictions. As a condition of living here we require our students to acknowledge that they are responsible for knowing, understanding, and complying with all university rules as written in our publications. I have been told by professors and others that in the main OPTIONS students neither read nor write, therefore, given the inherent nature of the residential experience and the inability of the

OPTIONS participants to fully engage in the academic life of the university, it was my professional judgment that the independent living environment of the residence halls was not suitable for the young people who are not here to pursue a degree of any kind. Moreover, it was my opinion that their presence in a group living environment imposed added oversight responsibility on the staff, most of whom are students themselves. My decision also took into account the reality that most Oakland University students never leave on campus, yet they have a highly satisfying and successful experience that is not impeded by living across the street or across town. In talking with Micah about his long bus travels, I completely understand why he wishes to live closer. The administration of our school of education has offered to work with him and his family in finding housing that is closer to campus and that gives him the independence that he seeks.

In closing I want to express my appreciation to everyone we've heard from during the last month and today. The breadth of support for Micah is truly impressive. And I've come to know Micah very personally in the last year, and I agree with Miss Snow that he is certainly a positive influence on the community. His presence on campus everyday teaches us a lot about setting goals and persevering to those goals. I really do hope that he and other OPTIONS participants continue to benefit personally and academically

1  from their welcomed involvement in the OPTIONS program. Thank
2  you very much.
3      MADAM FOREMAN: Are there any other comments from
4  the board? I'll take a motion to adjourn.
5      UNIDENTIFIED SPEAKER: So moved.
6      MADAM FOREMAN: Okay. Do I have a second?
7      UNIDENTIFIED SPEAKER: Second.
8      MADAM FOREMAN: Okay. We have a motion to adjourn
9  and a second. This meeting is adjourned. Thank you.