UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKAH FIALKA-FELDMAN,

       Plaintiff,

v.                                                  Case No. 08-14922
                                                    Honorable Patrick J. Duggan

OAKLAND UNIVERSITY BOARD
OF TRUSTEES, GARY D. RUSSI,
MARY BETH SNYDER, and LIONEL
MATEN,

       Defendants.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on  December 23, 2009.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

Plaintiff initiated this lawsuit against Defendant Oakland University Board of

Trustees on November 25, 2008, claiming that Defendant's denial of his request for

housing in one of Oakland University's on-campus dormitory living spaces violates the

Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(3)(B), and § 504 of the Rehabilitation

Act of 1973, 29 U.S.C. § 794(a).  Plaintiff has since, with the Court's permission,

amended his complaint to add University officials Gary D. Russi, Mary Beth Snyder, and

Lionel Maten as defendants and the following claims:

(I) disparate impact discrimination in violation of the FHA;

(II) disparate treatment discrimination in violation of the FHA;

(III) disparate treatment discrimination in violation of the Rehabilitation Act;

(IV) denial of a reasonable accommodation in violation of the Rehabilitation Act;

(V) disparate treatment discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; and,

(VI) disparate impact discrimination in violation of the Rehabilitation Act.

Presently before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c), filed November 13, 2009 (Doc. 37). Also before the Court is Plaintiff's cross-motion for summary judgment pursuant to Rule 56(c), filed November 16, 2009 (Doc. 39). In his motion, Plaintiff also requests a permanent injunction pursuant to Federal Rule of Civil Procedure 65(d) and seeks to substitute the current Oakland University Director of Housing as a defendant for Lionel Maten, who no longer serves in that position, pursuant to Federal Rule of Civil Procedure25(d).[1] The

---

[1]Defendants oppose Plaintiff's request to substitute the new Director of Housing for Mr. Maten. (Doc. 45 at 20 n.13.) Defendants indicate that the new director (whose name is not provided by either party) had no role in the decision whether to afford Plaintiff on-campus housing. Defendants further indicate that this individual's inclusion in the case is unnecessary because Mary Beth Snyder, as Oakland University's Vice President of Student Affairs and Enrollment Management, oversees student housing and therefore is the person with the authority to direct the Housing Department to carry-out any order granting Plaintiff relief. While this may be true, Federal Rule of Civil Procedure 25(d) provides for the automatic substitution of a public officer who "ceases to
(continued...)

parties' motions have been fully briefed and the Court held a motion hearing on December 17, 2009.

## I.    Applicable Standards

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

---

[1](...continued)
hold office while the action is pending" with his or her successor.  Fed. R. Civ. P. 25(d).
Nevertheless, the Court must know the person's name to make the substitution and thus is
denying the request at this time.

3

106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

A plaintiff seeking a permanent injunction pursuant to Federal Rule of Civil Procedure 65 must demonstrate the following: "It has suffered irreparable injury, there is no adequate remedy at law, 'that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted,' and that it is in the public's interest to issue the injunction." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (quoting *eBay, Inc. v. MercExchange LLC*, 547 U.S. 388, 126 S. Ct. 1837, 1839 (2006)). Additionally, to be entitled to a permanent injunction, the plaintiff actually must succeed on the merits of his or her claim(s). *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998); *Duer Constr. Co. v. Tri-County Building Trades Health Fund*, 132 Fed. App'x 39, 45 (6th Cir. 2005) (unpublished opinion).

## II.    Factual and Procedural Background

Plaintiff is a twenty-four year old male with cognitive impairments that substantially limit a major life activity, specifically his ability to learn. Plaintiff has been attending classes at Oakland University (hereafter "Oakland" or "University") since 2003. He has been enrolled in the University's OPTIONS program since Fall 2007, when the

University established the program ". . . to provide a fully inclusive, age appropriate post-secondary education experience for students with mild cognitive disabilities." (Doc. 39, Ex. 6.)

Participants in the OPTIONS program are required to take a minimum of twelve credits per semester and pay the regular University tuition rate for undergraduate students; however, the program is not a degree-granting program. (*Id*.) Students in the program are categorized as "continuing-education" students. The proposal for the program developed and presented to the University by Robert Wiggins, the University's Associate Dean in the School of Education and Human Services, identified the various housing configurations available on-campus as one rationale for University involvement in the program. (Doc. 39, Ex. 3 at 2-3.) When the University approved the OPTIONS program, however, it did not consider on-campus housing as part of the program. (Doc. 45, Ex. 14 at 62-63.)

In Spring 2007, at Plaintiff's Person Centered Planning meeting, housing was discussed as a goal for the coming year. Thereafter, Plaintiff and his father, Rich Feldman, took a pre-arranged tour of Oakland's dormitory housing. At the start of the tour, they were greeted by Defendant Lionel Maten, then the Director of University Housing. Plaintiff submitted a completed housing application on November 1, 2007. (Doc. 39, Ex. 7.) The "Terms and Conditions" on the back of the application provide, with respect to "ELIGIBILITY": "To be eligible for University housing a student must be enrolled as a student at the University throughout the entire period of the Contract." (*Id*.)

In response to an inquiry from Mr. Feldman on November 8, 2007, Dean Wiggins indicated that he had spoken with Roxanne Fisher in the Housing Department and learned that Plaintiff's application "has been accepted and is being processed." (Doc. 39, Ex. 8.) Ms. Fisher is an Office Assistant in the University Housing Department who is responsible, when applications are first received by the department, for verifying that it is complete and that the required deposit has been submitted. (Doc. 37, Ex. 7.) Ms. Fisher does not determine whether applicants meet the eligibility requirements to live in on-campus housing. (*Id*.)

Mr. Feldman thereafter sent an e-mail to Ms. Fisher, inquiring as to whether there was anything more he needed to do so Plaintiff could begin living in on-campus housing in January 2008. On November 14, 2007, Ms. Fisher responded that "there is nothing else [Plaintiff] needs to do. He is all set." (Doc. 37, Ex. 8.) She then described the University's schedule for making housing assignments, the move-in procedure, and some of the personal items residents can possess in their dormitory rooms. (*Id*.) In an affidavit submitted in support of Defendants' motion, Ms. Fisher states that she did not intend to indicate that Plaintiff was qualified for on-campus housing when she wrote that he was "all set" in her e-mail to Mr. Feldman. (*Id*., Ex. 7.) Rather, she only intended to convey that Plaintiff's application was "all set" for her purposes (i.e. it was complete and a deposit had been paid). (*Id*.)

On November 29, 2007, Mr. Wiggins sent an e-mail to Mr. Feldman, indicating that he had been told that Plaintiff is not eligible for on-campus housing and that Plaintiff

would be receiving a letter informing him of this.  (Doc. 39, Ex. 9.)  In a subsequent e-mail to Mr. Feldman on January 7, 2008, Mr. Wiggins wrote that he "had a conversation with our university council and found out that it has been university practice for some time that the dorm facilities are restricted to students who are pursuing a degree" and that "they have held to this firmly . . ."  (*Id*.)  Mr. Wiggins further wrote:

> This is sort of what our VP for Student Affairs [Ms. Snyder] told me initially, but she either didn't explain it as well or I was not really hearing it.  I am surprised that the folks in the housing office didn't recognize the conflict before we got so far but Lionel [Mr. Maten] is new and perhaps the others were not aware that OPTIONS was not a degree program.

(*Id*.)

Plaintiff and his representatives lobbied University officials throughout 2008, requesting that the University waive its policy of limiting housing to students enrolled in degree-granting programs and allow Plaintiff to live on campus. Plaintiff's request was denied at various levels.  In the interim, in March 2008, the University modified the "Terms and Conditions" on the back of its "Contract for Residence Hall Services" to specify that residents are required to be enrolled as matriculating students.  (Doc. 39, Ex. 13.)  Plaintiff filed this lawsuit on November 25, 2008.

On December 15, 2008, Plaintiff filed a motion for preliminary injunction based on his FHA claims.  (Doc. 4.)  At that time, Plaintiff had only named the Oakland University Board of Trustees ("Board of Trustees") as a defendant.  In an opinion and order issued on February 5, 2009, this Court held that Plaintiff's FHA claims against the

Board of Trustees were barred by the Eleventh Amendment to the United States Constitution. (Doc. 12 at 12.) The Court also indicated that Plaintiff was not likely to succeed on his FHA claims because his requested accommodation "[was] not necessary to afford him an 'equal opportunity' to use and enjoy on-campus housing because all students not enrolled in a degree-granting program (whether they are or are not handicapped) are ineligible for such housing." (*Id*. at 13.) The Court therefore concluded "that Plaintiff's requested accommodation [was] not necessary to ameliorate the effects of his disability and to afford him an opportunity equal to non-disabled students to use and enjoy University on-campus housing." (*Id*. at 15-16.) The Court now will reevaluate its conclusions with respect to Plaintiff's FHA claims and evaluate Plaintiff's other claims pursuant to the summary judgment standard.

## III.    Applicable Law and Analysis

As indicated earlier, both parties move for summary judgment. Defendants argue that they are entitled to summary judgment with respect to all of the claims asserted in Plaintiff's Second Amended Complaint. Plaintiff argues that he is entitled to summary judgment with respect to his disparate treatment discrimination claims brought pursuant to the FHA, Rehabilitation Act, and ADA (Counts II, III, and V, respectively) and his reasonable accommodation claim under the Rehabilitation Act (Count IV). At the motion hearing, Plaintiff's counsel informed the Court that Plaintiff is no longer pursuing his disparate impact discrimination claims brought pursuant to the FHA and Rehabilitation Act (*see* Doc. 42). Therefore, the Court is dismissing those claims (Counts I and VI,

respectively).

## A.    Failure to Accommodate

Section 504(a) of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ."

29 U.S.C. § 794(a).  The Rehabilitation Act does not contain an accommodation requirement.  *See Wisconsin Cmty. Servs. v. City of Milwaukee*, 645 F.3d 737, 746 (7th Cir. 2006).  However, the federal regulations implementing the statute specifically set forth such a requirement:

> A recipient [of Federal funds] shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

28 C.F.R. § 41.53.

Defendants do not dispute that Plaintiff is disabled.  Defendants contend that Plaintiff is not an "otherwise qualified individual" with a disability because he is not enrolled at the University in a degree-granting program and only degree-granting students are eligible to live in on-campus housing. For purposes of the Rehabilitation Act, "[a]n otherwise qualified person is one who is able to meet *all* of a program's requirements in

9

spite of his handicap." *Southeastern Cmty. Coll. v. Davis*, 44 U.S. 397, 407, 99 S. Ct. 2361, 2367 (1979) (emphasis added).  The Supreme Court's subsequent decisions, however, have clarified what "all" means in this definition.  *See, Wynne v. Tufts Univ. Sch. of Med.*, 932 F.32d 19, 24 (1st Cir. 1991); *Doherty v. Southern Coll. of Optometry*, 862 F.2d 570, 574 (6th Cir. 1988) (en banc).

In *Alexander v. Choate,* the Supreme Court provided:

> . . . an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers.  The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.

469 U.S. 287, 301, 105 S. Ct. 712, 720 (1985).  As subsequently understood by lower courts:

> "After *Alexander* . . . it is clear that the phrase 'otherwise qualified' has a paradoxical quality; on the one hand, it refers to a person who has the abilities or characteristics sought by the grantee; but on the other, it cannot refer to those already capable of meeting *all* the requirements– or else no reasonable requirement could ever violate § 504, no matter how easy it would be to accommodate handicapped individuals who cannot fulfill it.  This means that we can no longer take literally the assertion of *Davis* that 'an otherwise qualified person is one who is able to meet *all* of a program's requirements.'"

*Doherty*, 862 F.2d at 574-75 (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1261 (5th Cir. 1988) (emphasis in original).  The relevant question, therefore, is "'whether some

'reasonable accommodation' is available to satisfy the legitimate interests of both the grantee and the handicapped person.'" *Id.* at 575 (quoting *Brennan*, 834 F.2d at 1261-62). As a result, the "otherwise qualified" and "reasonable accommodation" inquiries merge. *Id.*

One element of the "otherwise qualified-reasonable accommodation" analysis is whether an accommodation is "necessary." *See Smith & Lee Assoc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996). An accommodation is necessary when "'the rule in question, if left unmodified, hurts handicapped people *by reason of their handicap*, rather than by virtue of what they have in common with other people, such as a limited amount of money to spend on housing.'" *Sutton v. Piper*, No. 08-2377, 2009 WL 2341491, at *1 (6th Cir. July 30, 2009) (unpublished opinion) (quoting *Wis. Cmty. Servs.*, 465 F.3d at 749); *see also Smith & Lee Assoc.*, 102 F.3d at 795 (citing *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995) ("The concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.") Stated differently, there must be a "direct nexus" or "direct correlation" between the plaintiff's handicap and the barrier to his or her equal access to the program or benefit at issue. *See Schanz*, 998 F. Supp. at 792.

In *Sutton*, the Sixth Circuit determined that an accommodation was not necessary because a federally subsidized apartment complex rejected Plaintiff's housing application due to his poor credit history– which "[a] review of [his] credit report confirm[ed]

. . . resulted from his own financial mismanagement and not his disability." *Id*. at *2; *see also Schanz v. The Village Apartments*, 998 F. Supp. 784, 791-92 (E.D. Mich. 1998) (finding no direct nexus between the plaintiff's disability and the rejection of his housing application because his financial status, not his disability, rendered him ineligible). Similarly, in *Alexander*, the Supreme Court determined that an accommodation to the proposed rule challenged by the disabled plaintiffs was not necessary because it did not impact the plaintiffs by reason of their disabilities. 469 U.S. at 302-03, 105 S. Ct. at 720-21.

The *Alexander* Court wrote:

> The new limitation does not invoke criteria that have a particular exclusionary effect on the handicapped; the reduction neutral on its face, does not distinguish between those whose coverage will be reduced and those who coverage will not on the basis of any test, judgment, or trait that the handicapped as a class are less capable of meeting or less likely of having . . .

469 U.S. at 302, 105 S. Ct. at 720-21. This reasoning, which suggests that an accommodation is not "necessary" whenever it would grant a "preference" to the disabled over the non-disabled, was applied by the district court in *Schanz* and the Second Circuit Court of Appeals in *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293 (1998). Defendants rely on these cases for that proposition. The Supreme Court, however, expressly disavowed such a rationale for rejecting an accommodation in *U.S. Airways,*

*Inc. v. Barnett*, 535 U.S. 391, 122 S. Ct. 1516 (2002).[2]

In that case, U.S. Airway argued that an accommodation under the ADA's reasonable accommodation requirement should be deemed unreasonable whenever it violates a "disability-neutral workplace" rule (such as a seniority rule) and grants a "preference" to disabled employees.[3]  The Supreme Court rejected this argument, explaining:

> While linguistically logical, this argument fails to recognize what the Act specifies, namely, that preferences will sometimes prove necessary to achieve the Act's basic equal opportunity goal.  The Act requires preferences in the form of "reasonable accommodations" that are needed for those with disabilities to obtain the *same* workplace opportunities that those without disabilities automatically enjoy.  By definition any special "accommodation" requires the employer to treat an employee with a disability differently, *i.e.*, preferentially.  And the fact that the difference in treatment violates an

---

[2]The failure to consider *Barnett* in previous decisions in this case flawed the Court's analysis.

[3]It is not significant that *Barnett* involved a failure to accommodate claim under the ADA instead of the Rehabilitation Act.  As the Sixth Circuit observed when applying ADA standards to a Rehabilitation Act claim that did not involve employment discrimination:

> It is well-established that the two statutes are quite similar in purpose and scope.  "The analysis of claims under the [ADA] roughly parallels those brought under the Rehabilitation Act" . . . Further, "by statute, the [ADA] standards apply in Rehabilitation Act cases alleging employment discrimination."

*McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459-60 (6th Cir. 1997) (internal citations omitted).

> employer's disability-neutral rule cannot by itself place the
> accommodation beyond the Act's potential reach.
> . . .
> The simple fact that an accommodation would provide a
> "preference"– in the sense that it would permit the worker
> with a disability to violate a rule that others must obey–
> cannot, *in and of itself*, automatically show that the
> accommodation is not "reasonable."

*Id*. at 397-98, 122 S. Ct. at 1521 (emphasis in original). The Sixth Circuit has applied

similar reasoning in holding that an accommodation of a city's zoning law prohibiting

more than six residents from living in property zoned for single-family use was necessary

and reasonable to provide disabled elderly individuals equal access to housing in single-

family residential neighborhoods. *Smith & Lee Assoc.*, 102 F.3d at 795-96. In that case,

the court reasoned: "[T]he phrase 'equal opportunity,' . . . is concerned with achieving

equal results, not just formal equality." *Id*. at 795.

The second element of the "otherwise qualified-reasonable accommodation"

inquiry is whether the accommodation is "reasonable." "[A]n accommodation is

reasonable unless it requires 'a fundamental alteration in the nature of a program' or

imposes 'undue financial and administrative burdens.'" *Smith & Lee Assoc.*, 102 F.3d at

795 (quoting *Davis*, 442 U.S. at 410, 412, 99 S. Ct. at 2369, 2370). The Supreme Court

has indicated that, "in most cases," determining whether an accommodation is

"reasonable" will require the district court "to conduct an individualized inquiry and

make appropriate findings of fact." *Sch. Bd. of Nassau County v. Arline*, 480 U.S. 273,

287, 107 S. Ct. 1123, 1130 (1987) "In cases involving waiver of applicable rules and

regulations, the overall focus should be on 'whether waiver of the rule *in the particular case* would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change.'" *Jones v. City of Monroe*, 341 F.3d 474, 480 (6th Cir. 2003) (emphasis added) (quoting *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838-39 (7th Cir. 2001)). The burden of proving that an accommodation is not reasonable lies with the public entity. *Id.*

Turning to the present matter, Plaintiff has requested an accommodation in the form of a waiver of the University's policy limiting on-campus housing to students enrolled in a degree-granting program. Unlike *Sutton*, the undisputed evidence indicates that this barrier to housing is created "by reason of" Plaintiff's disability (i.e., his cognitive impairments that substantially limit his ability to learn). The University may have denied Plaintiff's housing request based on a characteristic that he has in common with non-disabled students– his status as a continuing-education student and non-enrollment in a degree-granting program. However there is no dispute that, unlike other continuing-education students (except other OPTIONS program participants), it is *because of* Plaintiff's disability (not some other factor) that he is unable to enroll in a degree granting program.[4] In that sense, the Court finds Plaintiff's situation more akin to

---

[4]In its pleadings and at oral argument, Defendants repeatedly state that Plaintiff is not a "student" at the University. Clearly Defendants are using that term in a narrow sense to refer only to individuals enrolled in a degree-granting program. In fact, Plaintiff is a "student"– albeit not a matriculating student. By contending that Plaintiff is not a student at all, Defendants are trying to suggest that requiring an accommodation in this

(continued...)

the plaintiff in the case cited by his counsel at the motion hearing: *Giebeler v. M & B Associates*, 343 F.3d 1143 (9th Cir. 2003).

In *Giebeler*, the Ninth Circuit concluded that there was "a direct causal link" between the plaintiff's impairment and the barrier to housing based on the court's finding that "if [the plaintiff] were still able to work in the position he held before becoming ill, he would have met [the apartment complex]'s financial requirements." *Id*. at 1147. The court therefore held that the plaintiff was entitled to the protections of the FHA. *Id*. Similarly, this Court finds that Plaintiff's cognitive impairments prevent him from enrolling in a degree-granting program and therefore the protections of the Rehabilitation Act are necessary to provide him with an "equal opportunity" to live in the University's on-campus housing. The remaining question is whether Plaintiff's requested accommodation is reasonable.

Defendants contend that allowing continuing-education students to live in the University's dormitories will require "a fundamental alteration in the nature of [it's housing] program." (Doc. 45 at 16.) Ms. Snyder, who oversees the University's Housing Department as the University's Vice President of Student Affairs and Enrollment Management, testified during her deposition in this matter that the housing program is "an

---

[4](...continued)
case would mean that any "non-student" can seek housing on Oakland's campus. What the Court is concluding, however, is that a student at the University whose disability prevents him or her from enrolling in a degree-granting program may be entitled to a reasonable accommodation to provide the student with access to housing equal to that of students able to enroll in such programs.

academic program" that is "focused on the purpose of moving students toward an academic degree." (Doc. 37, Ex. 6 at 9.) Ms. Snyder conveys that allowing non-degree seeking students into University housing will change the "culture" and "the entire nature of the relationship between the university and the people in housing to the point where it's, it's no longer an academic program per se." (*Id*. at 28-29.) When asked to explain how the presence of OPTIONS program students in the dormitories would affect the University's housing program, Ms. Snyder referred to some unspecified impact on "study floors" and "quiet hours." (*Id*. at 31.) She further indicated that expulsion cannot be used as a leverage with continuing-education students like it can with students in degree-granting programs and that there would be "a whole set of issues if the halls were opened to community members who weren't enrolled where the university has limited [housing] space on campus." (*Id*.)

Courts have held that deference should be extended to an educational institution's academic decisions. *See, e.g., Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1047 (9th Cir. 1999) (citing cases). As the Ninth Circuit summarized in *Zukle*:

> These courts noted the limited ability of courts, "as contrasted to that of experienced educational administrators and professionals," to determine whether a student "would meet reasonable standards for academic and professional achievement established by a university," and have concluded that "courts are particularly ill-equipped to evaluate academic performance."

*Id*. (quoting *Doe v. New York Univ.*, 666 F.2d 761, 775-76 (2d Cir. 1981)). This Court questions whether this reasoning applies equally to a university's decisions with respect

to its housing policies and therefore whether such deference should be accorded to those decisions. The Court finds it unnecessary to resolve that issue in this case, however. This is because the rationale Defendants offer for why Plaintiff's requested accommodation is not reasonable is premised on an overstatement of the accommodation the University is being asked to make, is not based on the facts presented, and reflects a failure to engage in an "individualized inquiry."

First, Plaintiff's requested accommodation would not require the University to open its on-campus housing to all continuing-education students. The Rehabilitation Act, like the ADA and FHA, only mandate reasonable accommodations to provide equal access to *disabled* individuals. The University is being asked to provide an accommodation to Plaintiff, only. The Court only is determining whether *he* is "otherwise qualified" for on-campus housing and whether allowing *him* to live in the University's dormitories would impose "a fundamental alteration in the nature of [the University's housing] program."

With respect to the latter determination, the evidence indicates that Defendants did not make an individualized inquiry to determine whether allowing Plaintiff to live in one of its dorm rooms would in some way alter the purported academic-fostering environment of its housing program. As the Supreme Court stated in *Arline*, "[s]uch an inquiry is essential if § 504 is to achieve its goal of protecting handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear . . ." 480 U.S. at 287, 107 S. Ct. at 1131. Defendants argue that an individualized analysis of Plaintiff's requested

18

accommodation was unnecessary because it was obvious, without engaging in such an inquiry, that no accommodation would render Plaintiff eligible for on-campus housing.[5] (Doc. 48 at 3-4.)  Defendants analogize Plaintiff's case to that of a blind person who seeks an accommodation of a school district's sight requirement for its bus drivers.  (*Id.*) However this analogy fails for the reason that, while sight undoubtedly is an essential requirement to drive a bus, Defendants have not shown that enrollment in a degree-granting program is an essential requirement to live in a campus dormitory.

The undisputed evidence undermines any assumption or conclusion reached by Defendants that allowing Plaintiff to live in on-campus housing will interfere with the housing program's "purpose of moving student's toward an academic degree."  The evidence shows that Plaintiff contributes to the academic environment, has been praised by professors "for his participation and for the positive effects he had on the classroom environment," that he is not disruptive in class and abides by classroom rules, and that he participates in study groups where he works to understand the material and contributes to the group's efforts to understand the material.  (Doc. 39, Exs. 15, 25, 26.)  A fellow student at the University, Heather Sterner, states in her affidavit in support of Plaintiff's motion that Plaintiff's "level of participation and interest far exceeds that of most of his

---

[5]As it became clear at the motion hearing, Defendants are asking the Court to look at whether any accommodation would render Plaintiff qualified to enroll in a degree-granting program.  However, the benefit or program to which Plaintiff is seeking equal access is the housing program.  Thus the question is more properly framed as whether Plaintiff can qualify for *this* program with or without a reasonable accommodation.

peers," that he is "always engaged and asking questions," and "makes it clear to everyone in class that he is clearly there to learn." (*Id.*, Ex. 26 ¶ 2.) There is an absence of evidence to support Defendants' assumption that Plaintiff's presence in the dormitories will change the academic environment or that he will be incapable of following housing rules. This assessment instead appears to be grounded on prejudice, stereotypes and/or unfounded fear. As a result, Defendants fail to carry their burden of demonstrating a threat to the fundamental nature of the University's housing program if Plaintiff's request for a reasonable accommodation is granted.

For these reasons, the Court concludes that waiving the University's policy of limiting on-campus housing to students enrolled in a degree-granting program is necessary to avoid discrimination on the basis of Plaintiff's disability and reasonable. Defendants violated § 504 of the Rehabilitation Act by failing to provide Plaintiff with this requested accommodation. Plaintiff therefore is entitled to summary judgment with respect to Count IV of his Second Amended Complaint.

### B. Disparate Treatment

As set forth earlier, Plaintiff asserts disparate treatment discrimination claims under § 504 of the Rehabilitation Act, Title II of the ADA, and the FHA. The three-part burden shifting test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), applies to these claims. *Graoch Assoc. #33 v. Louisville/Jefferson County*, 508 F.3d 366, 371-72 (6th Cir. 2007) (FHA); *Jones v. City of Monroe*, 341 F.3d at 477 (Rehabilitation Act and ADA).

First, Plaintiff must demonstrate a prima facie case of discrimination by establishing that (1) he has a disability; (2) he is "otherwise qualified;" and (3) he "is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program *solely because of* [his] handicap." *Jones*, 341 F.3d at 477 (emphasis added and citations omitted). A claim under the Rehabilitation Act also requires a showing that the relevant program or activity is receiving Federal financial assistance. *Doherty*, 862 F.2d at 573. As defined in the ADA, an "otherwise qualified" individual is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131. As outlined in the preceding section, a similar definition has developed in case law interpreting the "otherwise qualified" element of a Rehabilitation Act claim.

If Plaintiff establishes a prima facie case of discrimination, Defendants must articulate "some legitimate, nondiscriminatory reason" for the University's decision to reject his housing application. Plaintiff then must demonstrate that Defendants' proffered reason is pretextual. In this case, Plaintiff's discrimination claims fail at the first step.

Plaintiff is not able to show that he was denied on-campus housing solely by reason of his disability. The evidence demonstrates that the University followed a policy of limiting on campus housing to students enrolled in degree-granting programs before Plaintiff applied for a room in one of its dormitories. In the Court's view, Mr. Wiggins'

e-mails to Mr. Feldman after the University rejected Plaintiff's application are the strongest evidence of this. As Mr. Wiggins wrote, he spoke with university council and learned that "it has been university practice for some time that the dorm facilities are restricted to students who are pursuing a degree" and that "they have held to this firmly . . ." (*Id.*) Mr. Wiggins acknowledged that Ms. Snyder also had conveyed this policy to him. Aside from overnight stays by high school students and one week or shorter stays by summer camp or journalism program participants, Plaintiff presents no evidence of the University waiving this rule. Changes made to the housing application– that the evidence shows were contemplated before Plaintiff applied– do not establish that the rule was enacted to discriminate against Plaintiff because of his handicap.

Because Plaintiff fails to demonstrate a prima facie case of disability discrimination, the Court concludes that Defendants are entitled to summary judgment with respect to his disparate treatment discrimination claims (Counts II, III, and V).

### C. Permanent Injunction

In his Second Amended Complaint, Plaintiff seeks an injunction "ordering Defendants to immediately provide on-campus dormitory housing for [him]." An injunction is an available remedy for a violation of § 504 of the Rehabilitation Act. *See* 42 U.S.C. § 2000d-7. As set forth above, the Court concludes that Defendants have violated the Act's reasonable accommodation requirement.

Plaintiff will suffer irreparable harm absent an injunction because he will be denied equal access to campus housing solely by reason of his disability. The Court also

finds that there is no adequate remedy at law and therefore a remedy in equity is warranted.  Damages cannot satisfy what Plaintiff has lost as a result of Defendants' failure to grant his request for a reasonable accommodation– the opportunity to live in the University's on-campus housing.  The only remedy is to grant him a waiver of the housing policy requiring residents to be enrolled in a degree-granting program.

Balancing the equities between the parties, the Court finds that Plaintiff will suffer harm absent an injunction whereas the University will suffer little or no harm. Defendants assert that "Plaintiff completely misstates and oversimplifies the effect a favorable ruling for Plaintiff would have on OU allowing nine OPTIONS students to live in the dorms."  (Doc. 43 at 19-20.)  Actually it is Defendants who misstate and over-exaggerate the effect of a ruling for Plaintiff when they assert that such a ruling would require the University to make its on-campus housing available for all continuing-education students.  (*Id.*) In fact, as indicated earlier, the Court only is finding that *Plaintiff* must be allowed to live in the dorms.  In light of the evidence discussed above, and because spaces are available in the University's on-campus housing, the Court cannot find any harm to the University as a result of such a ruling.  In comparison, Plaintiff will suffer substantial harm if an injunction is not issued because his opportunity to live in on-campus housing soon will be lost.[6]

Lastly, the public interest is served by the enforcement of federal statutes barring

---

[6]Plaintiff indicates that the upcoming semester (which begins in January and ends in May 2010) is his last semester at the University.

disability discrimination and guaranteeing that disabled individuals are provided equal access to programs receiving Federal financial assistance.

The elements necessary for a permanent injunction to issue therefore have been satisfied.  The Court is granting Plaintiff's request for an injunction ordering Defendants to provide on-campus housing for him during his final semester at the University.

## IV.     Conclusion

Based on the above, the Court holds that Plaintiff is entitled to summary judgment with respect to his failure to accommodate claim brought under § 504 of the Rehabilitation Act.  Plaintiff also is entitled to relief in the form of a permanent injunction.  Defendants, however, are entitled to summary judgment with respect to Plaintiff's remaining claims.

Accordingly,

**IT IS ORDERED**, that Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART** in that summary judgment is granted to Defendants with respect to Counts I-III, V, and VI of Plaintiff's Second Amended Complaint;

**IT IS FURTHER ORDERED**, that Plaintiff's Motion for Substitution of Defendant, Summary Judgment and Permanent Injunction is **GRANTED IN PART AND DENIED IN PART** in that his motion for substitution of defendant is **DENIED**, his motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** in that summary judgment is granted as to Count IV of his Second Amended Complaint, and

24

his request for a permanent injunction is **GRANTED**;

**IT IS FURTHER ORDERED**, that Defendants are ordered to provide on-campus

housing for Plaintiff during the upcoming semester (beginning in January 2010).

                          s/PATRICK J. DUGGAN
                          UNITED STATES DISTRICT JUDGE

Copies to:
Chris E. Davis, Esq.
Veena Rao, Esq.
Robert A. Boonin, Esq.
Regan K. Dahle, Esq.