Fialka-Feldman v. Oakland University Board of Trustees    Doc. 57 Att. 8

Westlaw

Slip Copy, 2009 WL 2849067 (E.D.Mich.)
(Cite as: 2009 WL 2849067 (E.D.Mich.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan,
Southern Division.
Lois KRAMER, M.D., Plaintiff,
v.
PAUL REVERE LIFE INSURANCE COMPANY, et al., Defendants.
No. 04-CV-74362.

Sept. 1, 2009.

Larry W. Bennett, Giarmarco, Mullins, Troy, MI, for Plaintiff.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST AND ATTORNEY'S FEES**

ROBERT H. CLELAND, District Judge.

*1 Pending before the court is Plaintiff Lois Kramer's June 2, 2009 "Motion for Attorney Fees, Costs and Interest." [FN1] Defendant Paul Revere Life Insurance Co. filed its response to Plaintiff's motion on June 19, 2009. Plaintiff filed her reply to Defendant's response on June 26, 2009. For the reasons stated below, Plaintiff's motion will be granted in part and denied in part.

> FN1. The parties originally disputed both the attorney's fees and the amount of prejudgment interest owed to Plaintiff. They have since reached a settlement on the issue of prejudgment interest. (7/10/2009 Notice of Resolution.) This order therefore addresses only the issue of attorney's fees.

**I. BACKGROUND**

On October 8, 2004, Plaintiff filed her complaint against Defendant in the Wayne County Circuit Court. Defendant removed the case to this court on November 9, 2004.

Plaintiff, an obstetrician-gynecologist, was the holder of two long-term disability policies. The first one, through the Provident Life and Accident Insurance Co. ("Provident"), was provided by her employer, Henry Ford Health System. She purchased an additional benefits policy from the Paul Revere Life Insurance Co. ("Paul Revere"). Before termination of her policies, the companies merged with the Unum Life Insurance Co., whose adjusters terminated both of Plaintiff's policies under the previous Provident and Paul Revere entities. *Kramer v. Paul Revere Life Ins. Co.,* 571 F.3d 499, 501 (6th Cir.2009). As summarized by the Sixth Circuit:

> Both of the insurance policies at issue in this case provide long-term disability benefits in the event that the insured becomes 'totally disabled.' That term is defined by the Provident Life policy as 'not able to perform the substantial and material duties of your occupation' and by the Paul Revere Life policy as 'unable to perform the important duties of his own occupation on a full-time or part-time basis.'

*Id.* Plaintiff began suffering pain in her cervix around 1987, underwent physical therapy and eventually discovered, via a magnetic resonance imaging, a "central disk herniation at the C4-C5 level, causing mild compression of the left side of the spinal cord and mild-to-moderate spinal stenosis at the C5-C6 level." *Id.* After surgery, Plaintiff "was noted to be suffering 'weakness in the biceps, brachial radialis, triceps and finger extensions of the left hand.' " As a result, she stopped working on September 1, 1997, and applied for disability benefits a year later after her treatments proved unsuccessful. Her treating physician concluded that Plaintiff "can't deliver babies, can't do surgeries, can't perform multiple pelvic exams or colposciop-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Slip Copy, 2009 WL 2849067 (E.D.Mich.)
(Cite as: 2009 WL 2849067 (E.D.Mich.))

ies." The application was approved. *Id.* at 501-02.

In 1999, Defendant's medical consultant reviewed Plaintiff's medical records, concluding Plaintiff's abilities had "steadily gone downhill rendering her totally incapable of performing any ob/gyn practice and procedures." *Id.* at 502. With her pain continuing, her neurologist ordered an MRI, and concluded Plaintiff "had developed a bone spur at the site of her laminectomy that 'protruded posterior into the left, abutting the spinal cord.' " *Id.* An internal review by a medical consultant to Defendant concluded "there was sufficient objective medical information to support the plaintiff's claim for disability benefits." *Id.* In the fall of 2002, an MRI showed no change in Plaintiff's condition, although she said her fingers had begun feeling numb. Defendant ordered an "additional independent medical evaluation" of Plaintiff's condition. "[T]here is no copy of the resulting report in the record, an omission the defendant said was 'due to physician negligence.' " *Id.*

*2 In 2003, an independent medical exam ordered by Defendant resulted in a finding that there was "no objective reason why [Plaintiff] should not be able to perform her function as a physician in the specialty of obstetrics/gynecology." *Id.* The Sixth Circuit further summarized:

In the meantime, the defendants had set up video surveillance of the plaintiff, watching as she went about daily activities. The initial videotape showed no reason to question Dr. Kramer's disability, but a second series of surveillance videos a year later included views of the plaintiff and her husband working on their sailboat-the defendant said for purposes of winter storage, but the plaintiff later explained that they were readying the boat for sale because she was no longer able to engage in sailing.

*Id.* When Defendant informed Plaintiff of its recent findings, she submitted a report from her neurosurgeon, who explained:
I am concerned about [Plaintiff] returning to work at her previous occupation. I believe that she may be able to perform some of the activities of her regular duties as a gynecologist for a short period of time during the day; however, it would seem to me unlikely that she could continually use her arms throughout the day doing procedures and office work. I do feel that her current symptoms are representative of the underlying cervical disk pathology and spondylosis that is noted on the most recent MRI.

I feel a bigger issue may be the safety of her patients, especially in the operating room with the necessity for her to perform surgery and the substantial duties of her specialty. This is especially in regard to surgical procedures that require traction particularly on the forearms for an extended period of time, which I feel unlikely that she would be able to perform for a prolonged amount of time. Unfortunately, I don't believe that she can return to work in her current status.

*Id.* at 503. Citing a lack of "statistical studies" rebutting its conclusion that Plaintiff was employable as an obstetrician/gynecologist, Defendant terminated Plaintiff's benefits under both the Paul Revere and Provident policies. *Id.*

Plaintiff appealed the decision internally with Defendant. She underwent further testing and analysis. An electromyogram ("EMG") and MRI found "a slight increase in the size of disc bulge or small herniation to the left at C-7 and ... there is now some deformity on the exiting nerve root sleeve complex." *Id.* at 504. One of Defendant's medical consultants reviewed these reports, concluding "they did not 'provide clinical assessment findings' to support the physicians' opinion that the plaintiff was 'totally unable to work.' " *Id.*

Another medical consultant hired by Defendant reviewed the material and found that while the records did not present objective evidence of Plaintiff's ability to work as an OB/GYN, "neuropathic pain conditions do not always have objective findings that match the patient's subject-

Page 3

Slip Copy, 2009 WL 2849067 (E.D.Mich.)
(Cite as: 2009 WL 2849067 (E.D.Mich.))

ive complaints," and he had to consider the "consistent subjective support of her limitations offered by multiple healthcare providers." *Id.* Finally, the consultant concluded:

*3 It is unclear to me how much [sic] of the tasks with which she has great difficulty represent [sic] an integral portion of her more recent work requirements. It is not uncommon for surgeons to change their type of practice over the course of their years in practice.

*Id.* Following Defendant's denial of Plaintiff's internal appeal, Plaintiff commenced this litigation. *Id.*

This court, applying a *de novo* standard of review, concluded that Defendant's termination of Plaintiff's Provident policy was erroneous because "Plaintiff's condition preclude[d] her from performing the material and substantial duties of her own occupation." *Id.* at 50. Defendant did not appeal this particular determination. *Id.* at 506.

This court applied an arbitrary and capricious standard to Defendant's termination of Plaintiff's Paul Revere policy. The court said at the time that while it "would disagree with the [termination] under a *de novo* review ... the court cannot find that this decision was arbitrary and capricious." (3/26/2007 Order at 32.) On appeal, the Sixth Circuit reversed, finding that the termination of the Paul Revere policy was arbitrary and capricious. *Kramer*, 571 F.3d at 500. Accordingly, the Court of Appeals entered judgment for Plaintiff on the Paul Revere claim.

On remand, Plaintiff filed a motion for attorney's fees. Defendant now opposes Plaintiff's motion and argues that an attorney fee award is not justified under the facts of this case. Defendant further argues that even if the court awards attorney fees and costs, Plaintiff is not entitled to the full amount she requests.

## II. STANDARD

Under the general American rule, unless Congress provides otherwise, parties to litigation are to bear their own attorney fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) ("Unlike Britain where counsel fees are regularly awarded to the prevailing party, it is the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney fees."). Pursuant to 29 U.S.C. § 1132(g)(1), this court has discretion to award reasonable attorney fees and costs of the action to either party. 29 U.S.C. § 1132(g)(1); *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 936 (6th Cir.2000). The district court, in exercising its discretion, generally looks to the following factors in considering the appropriateness of an award of attorney fees: 1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy an award of attorney fees; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and 5) the relative merits of the parties' positions. *Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985). No single factor is determinative, and this court must consider each factor before exercising its discretion. *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir.1998) (citing *Wells v. U.S. Steel*, 76 F.3d 731, 736 (6th Cir.1996)). There is no presumption that attorney fees and costs will be awarded in ERISA cases. *Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 919 (6th Cir.2000); *Foltice v. Guardsman Prods.*, 98 F.3d 933, 936 (6th Cir.1996).

## III. DISCUSSION

### A. Whether to Award Attorney Fees

*4 Plaintiff contends that she is entitled to an award

Page 4

Slip Copy, 2009 WL 2849067 (E.D.Mich.)
(Cite as: 2009 WL 2849067 (E.D.Mich.))

of attorney fees and costs in this ERISA case based on the five-factor analysis as set forth in *King. See* 775 F.2d at 669. After reviewing both parties' arguments, the court agrees.

### 1. The Degree of the Party's Culpability or Bad Faith

The court determines that Defendant's conduct did manifest a degree of culpability or bad faith. The court acknowledges that an arbitrary and capricious denial of ERISA benefits does not necessarily indicate culpability or bad faith. *Heffernan v. UNUM Life Ins. Co. of Am.*, 101 F. App'x 99, 109 (6th Cir.2004).

In its order finding for Defendant against Plaintiff under the Paul Revere policy, this court concluded it was not arbitrary and capricious for Defendant to terminate Plaintiff's benefits. (3/26/2007 Order at 37.) The Sixth Circuit, however, reversed this determination. As the Court of Appeals explained:

[T]here is no explanation for the decision to cancel benefits that had been paid for some five years based upon the initial determination of total disability in the absence of any medical evidence that the plaintiff's condition had improved during that time. The best that can be said of the opinions of Dr. Mayer and the other company consultants is that they support the proposition that Dr. Kramer was, in fact, never disabled from her 'own occupation.' But that conclusion flies in the face of all the other evidence in the record, and the plan administrator's reliance upon it can only be described as arbitrary and capricious.

*Kramer*, 571 F.3d at 507. In reaching that conclusion, the Sixth Circuit explained that this court's determination that the termination decision was not arbitrary and capricious "overlooks the reports of two other Unum physicians, Drs. Martin and Parke, who found that there was objective medical evidence to support Dr. Kramer's complaints of pain." *Id.* Furthermore,

[i]t apparently also completely overlooks the opinions of myriad treating physicians, including Dr. William Sanders, Dr. Richard Silbergleit, Dr. Ghaus Malik, Dr. Russ Nickels, Dr. Ravi Kodali, Dr. Surest Patel, Dr. Maria Pleskacz, Dr. Silverman, Dr. Lois Michelle Butler-Jackson, and Dr. Lasichak, who individually and collectively documented the plaintiff's condition, resulting in a record that shows conclusively that she was experiencing both substantial physical limitations and pain that was controlled only by opioids such as Vicodin, taken on a daily basis. Added to this evidence were the letters from the plaintiff's immediate supervisor and the head of her department certifying unequivocally that she was unable to perform the functions of her 'own occupation' and was additionally unemployable because, in her physical condition, she would not be able to secure medical malpractice insurance [coverage].

*Id.*

Both parties have cited *Moon v. Unum Provident Corp.*, 461 F.3d 639 (6th Cir.2006) (*"Moon II"*) as authority for their respective positions. Defendant cites this case for the proposition that "arbitrary and capricious" does not necessarily equate to bad faith, and emphasizes, first, that the Sixth Circuit made no determination of bad faith, and second, that this court did initially conclude the termination was arbitrary and capricious faith. Hence, Defendant contends that it argued a reasonable position and that there are no grounds for the court to find Defendants acted in bad faith. (6/19/2009 Resp. at 7.)

*5 But, as Plaintiff correctly points out, the *Moon II* court held that a finding of bad faith "does not require [the court] to find that Defendant acted with subjective bad faith; it is sufficient to find that it selectively relied on information favorable to benefits termination." (6/26/2009 Reply at 4.) In fact,

[a]n arbitrary and capricious denial of benefits does not necessarily indicate culpability or bad faith. However, in this case, [Defendant] ignored over-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Slip Copy, 2009 WL 2849067 (E.D.Mich.)
(Cite as: 2009 WL 2849067 (E.D.Mich.))

whelming evidence of [Plaintiff's] disability, and instead denied her claim based on a theory that lacked legitimate foundation. [Defendant] then sought to defend this theory with reference to isolated snippets from the record.

*Moon II,* 461 F.3d at 643 (quoting *Heffernan,* 101 F. App'x at 109). In *Moon II,* the Sixth Circuit concluded that "UNUM'S wholesale adoption of the opinion of an interested physician, who based his findings on selective information in the administrative record and did not examine Moon, is misconduct that supports our decision to weigh this factor against UNUM." *Moon II,* 461 F.3d at 644.

While this court reached the conclusion that the termination of the Paul Revere policy was reasonable (and not arbitrary and capricious), the Sixth Circuit concluded otherwise. Furthermore, while the Court of Appeals did not state *explicitly* that Defendant acted in bad faith, the language in the opinion makes clear the strength of the panel's view that Defendant acted culpably. This court concludes that the facts in the instant case-as interpreted by the Sixth Circuit-are similar to those in *Moon II.* The Sixth Circuit concluded in this case that Defendant ignored the convincing evidence in Plaintiff's favor, including the evidence put forth by Plaintiff, her physicians and her colleagues at the Henry Ford Health System and, instead, selectively relied on conclusions whose factual underpinnings were substantially weaker.[FN2]

> FN2. The fact that *this* court found otherwise is of no avail to Defendant. *Moon II* rejects the idea that courts should lean on the presence of diverging judicial decisions (including those that have been reversed) as evidence of the reasonableness of Defendant's arguments. *Moon II,* 461 F.3d at 644. ("It is wholly inappropriate for the district court to rely on its overturned decision to support the denial of Moon's petition for attorney's fees in the instant case.").

For the foregoing reasons, this court concludes the first *King* factor weighs against Defendant.

### 2. The Opposing Party's Ability to Satisfy an Award of Attorney Fees

Defendant does not dispute its ability to satisfy an award of attorney's fees. This factor weighs against Defendant.

### 3. The Deterrent Effect of an Award on Other Persons Under Similar Circumstances

The Sixth Circuit has held that "the deterrent effect of a fee award on other plan administrators-is one that is likely to have more significance in a case where the defendant is highly culpable." *Foltice,* 98 F.3d at 937 (6th Cir.1996). "Honest mistakes are bound to happen from time to time, and fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing." *Id.*

The difficulty of resolving this factor lays in the fact that Defendant's conduct appears to constitute neither "deliberate misconduct," nor an "honest mistake," but rather something in between.

While this court initially concluded that Defendant's decisions to terminate the policies were honest mistakes, the Sixth Circuit has viewed these decisions in a substantially less favorable light. *See Kramer,* 571 F.3d at 507. ("[T]here is no explanation for the decision to cancel benefits that had been paid for some five years based upon the initial determination of total disability in the absence of any medical evidence that the plaintiff's condition had improved during that time.").

*6 This court is bound by the Sixth Circuit's interpretation of the facts. That interpretation carries with it the implication that in terminating Plaintiff's benefits, Defendant unreasonably deprived her of income for several years. Additionally, Defendant's decision forced Plaintiff to expend a great deal of effort undergoing multiple examinations, submit-

Page 6

Slip Copy, 2009 WL 2849067 (E.D.Mich.)
(Cite as: 2009 WL 2849067 (E.D.Mich.))

ting herself to lengthy internal appellate procedures, and no doubt incurring very substantial attorney's fees in order to obtain the benefits to which she was entitled under the policy.

In light of the fact that the Sixth Circuit has concluded Defendant's decision "cannot be described as reasoned or principled," *Kramer,* 571 F.3d at 508, an award will have a deterrent effect to the extent it will discourage insurers from "engaging in dilatory and cursory claim reviews." *See Soltysiak v. Unum Provident Corp.,* No. 2:05-CV-148, 2:07-CV-116, 2008 WL 4280110, at *1 (W.D.Mich. Sept.15, 2008); *see also Kufner v. Jefferson Pilot Fin. Ins. Co.,* No. 1:06-cv-910, 2009 WL 1331089, at *3 (W.D.Mich. May 12, 2009) ("Defendant's approach ... does not reflect a reasoned consideration of plaintiff's claim ... but instead reflects arbitrary decisions to effect the desired denial of benefits. An award of fees would serve to deter such perfunctory responses to benefits claims and ensure individualized consideration of the claimant's circumstances.").

For these reasons, this factor weighs in Plaintiff's favor.

### 4. Whether the Party Requesting Fees Sought to Confer a Common Benefit on all Participants and Beneficiaries of an ERISA Plan or to Resolve Significant Legal Questions Regarding ERISA

Plaintiff did not seek to confer a common benefit on all participants and beneficiaries of an ERISA plan, nor did she seek to resolve significant legal questions regarding ERISA.[FN3]

> FN3. In weighing this factor, the court will not credit Plaintiff's unsuccessful attempt to change Sixth Circuit law relating to the standard of review in benefits-termination cases. Attempting to unsettle settled law is quite the opposite of seeking to *resolve* a legal question.

Accordingly, this factor weights against Plaintiff.

### 5. The Relative Merits of the Parties' Positions

When Plaintiff's case originally came before this court, the court conducted a *de novo* review of the Defendant's decision to terminate the Provident policy and concluded the termination was erroneous. Accordingly, the court entered judgment for Plaintiff on the Provident policy. Defendant did not appeal this decision, and thus conceded defeat in at least half of this lawsuit.

In reviewing Defendant's termination of Plaintiff's Paul Revere policy, the court utilized an arbitrary and capricious standard. The court said at the time that while it "would disagree with the [termination] under a *de novo* review ... the court cannot find that this decision was arbitrary and capricious" and entered judgment for Defendant. (3/26/2007 Order at 32.) On appeal, Plaintiff argued this court should have conducted a *de novo* review of the Paul Revere policy. The Sixth Circuit did not feel the need to consider this legal question, instead finding that, even assuming this court applied the correct standard, Defendant's decision to terminate Plaintiff's Paul Revere policy was, in fact, arbitrary and capricious.

*7 In light of the decisions of both this court and the Court of Appeals, Plaintiff's positions had substantially more merit than Defendant's.[FN4] This factor weighs against Defendant.

> FN4. Again, Defendant urges the court to consider the fact that Defendant initially prevailed in the District Court on the Paul Revere claim, stating in its brief:
>
>> Where, as here, the District Court found in favor of the Defendant, and then the Sixth Circuit merely disagreed with the result reached by the District Court and the Plan Administrator, the relative merits of the parties' position do not weigh more heavily in favor of the Plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Slip Copy, 2009 WL 2849067 (E.D.Mich.)
(Cite as: 2009 WL 2849067 (E.D.Mich.))

over the Defendant.

> (Def.'s 6/19/2009 Resp.) This statement ignores the fact that Plaintiff prevailed in this court in its litigation over the termination of the Provident policy. Second, as to the Paul Revere claim, the Sixth Circuit has cautioned against considering subsequently reversed decisions in a party's favor as evidence of the reasonableness of that party's positions. See *Moon II*, 461 F.3d at 644.

The court has considered Plaintiff's motion under the five *King* factors. All but one of those factors weighs in Plaintiff's favor. An award of attorney's fees is therefore appropriate in these circumstances.

### B. The Amount of Attorney's Fees

After the court determines that fees are appropriate, the court must then arrive at a reasonable amount of fees to award. *See Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1400 (6th Cir.1995). The "lodestar" approach is considered to be the proper method for determining the amount of reasonable attorney fees. *Id.* at 1401 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). In making the "lodestar" calculation, "[t]he most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (alterations in original and citation omitted.) When "the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product *is presumed* to be the reasonable fee to which counsel is entitled." *Delaware Valley*, 478 U.S. at 564 (emphasis in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

#### 1. Hourly Rate

Plaintiff seeks attorney's fees at the rate of $330 per hour for Larry Bennett and $190 per hour for Geoffrey Wagner. Defendant argues that these rates are excessive, and suggests that Mr. Bennett should be compensated at $200 per hour and Mr. Wagner at $140. (Def.'s Resp. at 14.) Defendant provides no reasoned explanation for choosing these amounts, other than to argue that this case was not complex.

A reasonable hourly billing rate is generally calculated according to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "[T]he burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 896 n. 11. An attorney fee award must be "adequate to attract competent counsel, but ... not produce windfalls to attorneys." *Id* (internal quotations and citations omitted).

In calculating a reasonable hourly rate, the court considers "prevailing market rates in the relevant community" of metro-Detroit, Michigan. *Id.* at 897. For guidance in determining a reasonable hourly rate, Plaintiff has submitted affidavits of Troy W. Haney, and Robert B. June, who both contend the requested hourly rate is reasonable in this case. These affidavits, however, do not convince the court that the requested rate is reasonable. Indeed, the rate does not appear to be "in line with those prevailing in the community" for this type of litigation. *Blum*, 465 U.S. at 897. Rates in other fee awards granted in this district suggest a rate set at $275. *See Darbyshire v. Garrison*, No. 04-72272, 2006 WL 581032 (E.D.Mich. Mar.8, 2005) (finding reasonable attorney hourly rates of $200 and $250); *Disabled Patriots of Am. v. Romulus Nights Inc.*, No. 04-60258, 2005 WL 3132206 (E.D.Mich. Nov.22, 2005) (awarding attorneys' fees based on rates ranging from $188-$290); *Fuhr v. Sch. Dist. of Hazel Park*, 131 F.Supp.2d 947 (E.D.Mich.2002)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

Slip Copy, 2009 WL 2849067 (E.D.Mich.)
(Cite as: 2009 WL 2849067 (E.D.Mich.))

(finding reasonable the requested $275 hourly rate). *But see Worthing v. Reliance Standard Life Ins. Co.,* No. 08-11895, WL 1798387, * 2 (E.D. Mich. June 22, 2009) (awarding $400 per hour in an ERISA case).[FN5] Accordingly, the court will set Bennett's hourly rate at $275 per hour, but will allow Plaintiff to recover Wagner's requested hourly rate of $190 per hour for Geoffrey Wagner.

> FN5. The court is not persuaded that the rate awarded in Worthing should apply in this case. The rate of $400 in this district, and particularly in this economy, appears excessive to this court for this type of litigation.

### 2. Hours Reasonably Expended

*8 Based on the requested hourly rate of $330 per hour for Bennett and $190 per hour for Wagner, Plaintiff seeks $98,108 in attorney fees and $16,576.66 in costs for a total of $114,684.66. (Pl.'s Mot. Ex. A.) The court has already determined that it will reduce Bennett's hourly rate, which will necessarily alter the total requested amount. Additionally, Defendant argues that "some of Plaintiff's attorney fees and costs are not authorized under Sixth Circuit law." (Def.'s Br. at 11.)

First, Defendant argues that Plaintiff should not recover attorney's fees for work that was performed during the administrative claim phase. Plaintiff cites *Anderson v. Procter & Gamble Co.,* 220 F.3d 449 (6th Cir.2000). In *Anderson,* the Sixth Circuit affirmed a district court's decision to deny attorney's fees for work performed in an ERISA matter prior to the litigation "[b]ecause Section 502 of ERISA does not permit parties to recover attorneys' fees for legal work performed during the administrative phase of a benefits proceeding." *Id.* at 456. The court reasoned:

Although exhaustion of administrative remedies is a prerequisite to seeking judicial review of ERISA claims, *see, e.g., Baxter v. C.A. Muer Corp.,* 941 F.2d 451 (6th Cir.1991), exhaustion proceedings are not "intimately connected" with judicial proceedings in the manner described by the Supreme Court in its decisions awarding costs to parties who prevailed in litigation related to the administrative proceedings for which they were awarded fees.

*Id.* at 454-55.

Citing a Ninth Circuit case, *Dishman v. Unum,* 269 F.3d 974, 987 (9th Cir.2001), Plaintiff argues that attorney's fees can be recovered for work done on the lawsuit prior to the filing of the lawsuit. The court agrees, generally, that work done on pre-filing activities, such as the preparation of the complaint, can be recoverable. However, the court is not persuaded that time spent pursuing the administrative claim-including, for example, the preparation and submission of medical records, attorney work on the appeal, and obtaining affidavits from co-workers-is recoverable. Plaintiff argues that the time should be recoverable because the administrative appeal was "futile" based on "Defendant's historical illegal conduct" and that therefore a judicial proceeding was "inevitable." (Pl.'s Reply Br. at 7-8.) Plaintiff thus argues that work spent during the administrative appeal was actually spent in furtherance of the federal court litigation since it was an allegedly foregone conclusion that Defendant would deny the claim. Notwithstanding Plaintiff's vitriol, the court rejects this overly creative argument. Under Plaintiff's argument, any time a claim is denied, the time spent in the administrative proceedings would be time spent in furtherance of the litigation since the litigation is necessarily tied to the administrative record. *Anderson,* however, instructs otherwise. *See Anderson,* 220 F.3d 449. ERISA allows for recovery of attorney's fees expended in the litigation, not in the administrative proceedings. *Id.* at 456. Accordingly, Plaintiff will not recover for fees or costs expended in pursuing her administrative claim.

*9 Next, Defendant challenges the fees related to Plaintiff's motion for limited discovery. The court

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 9

Slip Copy, 2009 WL 2849067 (E.D.Mich.)
(Cite as: 2009 WL 2849067 (E.D.Mich.))

denied this motion and Defendant argues that the motion was unnecessary. (Def.'s Resp. at 12.) Defendant contends that because the Sixth Circuit allows only limited discovery in ERISA cases, Plaintiff's motion was brought in bad faith for purposes of harassment. (*Id.* (citing *Wilkins v. Baptist Health Care System*, 150 F.3d 609, 618 (6th Cir.1998)).) Although the court questions the *necessity* of the limited discovery motion, the court finds that it was not an unreasonable expenditure of attorney time. The Sixth Circuit does, in some circumstances, allow for limited discovery in ERISA cases and, although the court denied Plaintiff's motion in this case, the court cannot say that the time spent in pursuing the discovery was unreasonable.

Defendant also challenges the costs of the "expert witnesses" used by Plaintiff. Dr. Ancell and Dr. Leuchter were utilized prior to the initiating of the complaint, and their costs will be rejected for the reasons stated above related to activities during the administrative claims procedure.

Defendant argues the fees paid to "Disability Claims Consulting" and Mary Fuller, which Defendant contends were unreasonably expended under *Wilkins* are not recoverable. Plaintiff contends that these fees were paid in order to assist counsel in analyzing the disability policy and the claims handling so as to best weave together the evidence in this case. Similarly, Defendant challenges the $455 paid to Michelle Ross, R.N. Plaintiff explains that these fees were necessary for Ms. Ross to summarize medical records and prepare a chronology. The court is without sufficient information to determine whether these fees are recoverable. Plaintiff's description of these fees is vague enough so as to preclude the court from determining whether these expenses were incurred during and to aid in the claims process or exclusively for the litigation. If the latter, the fees are recoverable, if the former they are not. Plaintiff will be instructed to submit a revised itemization of fees, including these fees only if Fuller, "Disability Claims Consulting," and Ross were consulted or used *solely* for the litigation.[FN6] Although Defendant "questions" Plaintiff's request for $924.20 in photocopying costs, there is no evidence before the court that these costs were inappropriate. Accordingly, the court will allow this requested cost.

> FN6. Given Plaintiff's creative interpretation of whether fees expended during the claims process were actually incurred in anticipation of litigation, the court stresses that these fees will be recoverable only if they were incurred *exclusively* for the litigation. Toward that end, Plaintiff shall include in her revised itemization the dates on which Fuller, "Disability Claims Consulting," and Ross were retained, performed their services, and were paid.

## IV. CONCLUSION[FN7]

> FN7. On July 10, 2009, Plaintiff filed a "Submission of Supplemental Authority ..." in which Plaintiff "bring[s] to the attention" of the court the fact that the Sixth Circuit's opinion, which was initially unpublished, had been issued for publication. (*See* Notice at 1.) Plaintiff contends this fact somehow affects the court's analysis regarding counsel's reasonable hourly rate and the deterrent effect of this decision. The court disagrees. The case was published, not by initial decision of the panel judges, but on the motion of Plaintiff. The opinion did not otherwise change, and the court's subsequent decision to publish the opinion has no effect whatsoever on the reasonableness of counsel's rate. Moreover, the court is inclined to think that defendant insurance companies are deterred by the substance of an opinion itself, not the form in which it may be published or revealed.

IT IS ORDERED that Plaintiff's motion for attor-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

Slip Copy, 2009 WL 2849067 (E.D.Mich.)
(Cite as: 2009 WL 2849067 (E.D.Mich.))

ney fees, costs and interest [Dkt. # 49] is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to her request for attorney's fees for costs expended in furtherance of this litigation. It is DENIED with respect to her request for attorney's fees and costs expended in pursuing her administrative claim. Further, Attorney Bennett's hourly rate will be set at $275, rather than the requested $330 per hour.

*10 IT IS ORDERED that Plaintiff shall submit a revised itemization of fees, eliminating those which the court has held are not recoverable, and reducing Attorney Bennett's hourly rate, by **September 14, 2009.**

E.D.Mich.,2009.
Kramer v. Paul Revere Life Ins. Co.
Slip Copy, 2009 WL 2849067 (E.D.Mich.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.